UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEVIN KEITT,                                        :

                       Plaintiff,             :          09 Civ. 8508 (GBD) (DF)

    -against-                                    :          **REPORT AND**
                                               **RECOMMENDATION**

NEW YORK CITY, et al.                               :

                 Defendants.         :
------------------------------------------------------------X

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

Plaintiff Devin Keitt ("Keitt"), currently incarcerated in Attica Correctional Facility

("Attica") and acting *pro se*, brings this action under the Individuals with Disabilities in

Education Act ("IDEA"), 42 U.S.C. §§ 1400 *et seq.*, Title II of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, and

the Equal Education Opportunities Act ("EEOA"), 20 U.S.C. §§ 1701 *et seq.*  He also asserts

claims under 42 U.S.C. § 1983 for violations of his rights under the First, Eighth and 14th

Amendments to the United States Constitution, and claims under 42 U.S.C. §§ 1981, 1985

and 1986.

Keitt names the City of New York and three of its agencies (the Department of

Correction ("DOC"), the Department of Education ("DOE") and the Department of Juvenile

Justice ("DJJ")), as well as Mayor Bloomberg ("Bloomberg")[1] and Dora Schriro, the

Commissioner of DOC ("Schriro") (collectively "the City Defendants").  Keitt also names the

State of New York and two of its agencies (the Department of Correctional Services ("DOCS")

and the State Education Department ("SED")), as well as Brian Fischer, Commissioner of DOCS

---

[1] Mayor Michael Bloomberg is named herein as "Mayor, New York City."  (*See* Amended
Complaint, dated June 28, 2010 (Dkt. 10) ("Amended Complaint" or "Am. Compl.").)

("Fischer"); Mark Bradt, former Superintendent of Elmira Correctional Facility ("Bradt"); and four additional Elmira employees (Douglas C. Reynolds ("Reynolds"), B. Fusco ("Fusco"), V. Livermore ("Livermore"), and T. Lepkowski ("Lepkowski")) (collectively "the State Defendants").  The City and State Defendants are collectively referred to herein as "Defendants."

Keitt alleges that he is dyslexic and that Defendants failed to accommodate his disability in the public school system through 1998, and in education programs offered in (a) juvenile detention facilities from 1995-97, (b) Rikers Island facilities operated by DOC beginning in 1998, and (c) various state facilities operated by DOCS.  Keitt also alleges that, during his detention at the Elmira Correctional Facility ("Elmira") in Chemung County, New York, Defendants failed to accommodate his dyslexia in disciplinary proceedings and retaliated against him for filing grievances regarding alleged failures to accommodate his dyslexia in both educational programs and disciplinary proceedings.  Finally, Keitt challenges Elmira's policy requiring prisoners who have not obtained a high school diploma or its equivalency to attend adult basic education programs (even if such programs are wholly unsuitable without reasonable accommodations) or else forfeit their ability to participate in other programming.  Keitt seeks compensatory and punitive damages, as well as injunctive relief.

This matter is before me on motions by both the City (Dkt. 33) and State Defendants (Dkt. 35) to dismiss the IDEA, EEOA, ADA, Rehabilitation Act and Section 1983 claims in the Amended Complaint.  The City Defendants also move to dismiss the claims under Sections 1981, 1985 and 1986.  The State Defendants move to sever the remaining claims arising at Elmira and to transfer such claims to the Western District of New York.  Keitt opposes the

motions to dismiss and brings a motion (Dkt. 49) for leave to file a Second Amended Complaint. All Defendants oppose the motion to amend.

For the reasons set forth below, I recommend that the motions to dismiss be granted in part and denied in part, the motion to sever the claims arising at Elmira be denied as moot because these are the only remaining claims, the motion to transfer to the Western District be granted as to the remaining claims, which are against only State Defendants, and the motion to amend be denied without prejudice to Keitt's renewal of his request for leave to amend in the transferee court.

## **TABLE OF CONTENTS**

BACKGROUND.................................................................................................................6

    A.    Factual Background.........................................................................................6

        1.    Keitt's Time in Public School and in Juvenile Detention................6

        2.    Detention in City (DOC) and State (DOCS) Facilities.....................7

    B.    Procedural Background...................................................................................8

DISCUSSION.................................................................................................................12

I.    Motions to Dismiss.................................................................................................12

    A.    Applicable Legal Standards..........................................................................12

    B.    EEOA Claims................................................................................................14

    C.    IDEA Claims.................................................................................................15

        1.    Exhaustion.......................................................................................15

        2.    Statute of Limitations......................................................................18

            a.    Applicable Limitations Period............................................19

            b.    Accrual of Keitt's Claims...................................................20

            c.    Potential Tolling.................................................................21

D.      Section 1981 Claims..................................................................26

E.      Section 1983, 1985 and 1986 Claims.........................................28

        1.      Statute of Limitations........................................................28

                a.      Applicable Limitations Period............................28

                b.      Accrual of Keitt's Claims....................................28

                        i.      Claims Arising Out of
                                Public School Attendance......................29

                        ii.     Claims Arising Out
                                of Juvenile Detention............................29

                        iii.    Claims Arising Out of Initial
                                Period of State Incarceration..................29

                        iv.     Claims Arising Out of Detention
                                in City Facilities (Rikers Island)............30

                c.      Potential Tolling..................................................31

        2.      Remaining Section 1983, 1985 and 1986 Claims.............34

                a.      Adequacy of Pleading.........................................34

                b.      11th Amendment Immunity and Available
                        Relief, Under Sections 1983, 1985 and 1986.......39

                        i.      Damages................................................40

                        ii.     Injunctive Relief....................................41

F.      ADA and Rehabilitation Act Claims...........................................44

        1.      Statute of Limitations........................................................44

                a.      Applicable Limitations Period............................44

                        i.      Title II of the ADA...............................45

                        ii.     Rehabilitation Act..................................47

                b.      Accrual of Keitt's Claims and Unavailability of Tolling...................47

4

        2.      Remaining ADA and Rehabilitation Act Claims...........................................49

              a.      Adequacy of Pleading.......................................................49

              b.      Potential Immunity and Available Relief
                      Under the ADA and Rehabilitation Act...................................52

                    i.      11th Amendment Immunity as to ADA.................................52

                    ii.     11th Amendment Immunity as to Rehabilitation Act.............54

                    iii.    Damages........................................................56

                      iv.    Injunctive Relief.................................................57

II.     MOTION TO SEVER AND TRANSFER CLAIMS ARISING AT ELMIRA......................58

    A.      Section 1404(a) Standards.........................................................59

    B.      Transfer Considerations in This Case.........................................60

III.    KEITT'S MOTION TO AMEND.................................................................62

    A.      Rule 15(a) Standards.................................................................62

    B.      Proposed Amendments.............................................................64

        1.      Proposed Modification of Claims Directed to City Defendants......................64

        2.      Proposed New Claims Directed to
                Existing or Newly-Named State Defendants...................................65

CONCLUSION ...............................................................................66

## BACKGROUND

### A.     Factual Background

The facts summarized herein are primarily taken from Keitt's Amended Complaint, and are taken as true for purposes of Defendants' motions to dismiss.  (*See infra,* at 13.)

### 1.     Keitt's Time in Public School and in Juvenile Detention

Devin Keitt was born on February 25, 1981.  (*See* Keitt's Individualized Education Plan ("IEP"), dated 1995 (Am. Compl., Ex. 1).)  When he was nine years old, his mother took him to a clinical psychologist, who purportedly diagnosed him with dyslexia.  (*See* Am. Compl. at ¶¶ 33, 47, 225 (alleging that he was first diagnosed at Public School 118).[2])  According to Keitt, the psychologist recommended various learning aids, including books on tape, large print books, a tape recorder, and readers.  (*See id.* at ¶ 57.)  Keitt was placed in a special education classroom in Public School 118, in Queens County, New York, for third grade.  (*See* Complaint, dated June 22, 2009 ("Compl.") (Dkt. 2) at ¶ 63;[3] Am. Compl. at ¶ 47.)  Tests and other materials were read to him, but he was not given extended time to complete tests or permitted to circle multiple choice answers.  (*See* Am. Compl. at ¶ 58.)

At some point, Keitt transferred to Intermediate School 231, in Queens.  (*See* Compl. at ¶ 78.)  Thereafter, in 1995, when he was in eighth grade, Keitt's mother enrolled him in the private Lowell School, also in Queens.  (*See* Am. Compl. at ¶ 62; Compl. at ¶¶ 82-83.)  After a

---

[2] Keitt annexes his IEP from 1995, which lists him as learning disabled and emotionally disturbed, but does not state that he is dyslexic.  (*See* Am. Compl., Ex. 1.)

[3] Although "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), the Court includes this information from Keitt's original *pro se* complaint merely to clarify the chronology of events.

school break, Keitt did not return to the Lowell School because he was arrested.  (*See* Am. Compl. at ¶ 64.)

From August 10, 1995 until February 1997, Keitt was detained in various juvenile detention centers, including the Spofford Detention Center, Tryon Division for Youth, Allen Residential Center, Adirondack Wilderness Challenge and others.  (*See id.* at ¶ 90.)  Keitt attended class throughout this 18-month period, allegedly without any accommodations for his dyslexia.  (*See id.* at ¶ 93.)  Keitt asserts that he had a second grade reading comprehension level at the time of his release in 1997.  (*See id.* at ¶ 94.)

After his release from the juvenile detention centers, Keitt attended Springfield High School, where he was placed in a special education classroom for six months.  (*See id.* at ¶ 65.)  While he was attending Springfield High School, Keitt's mother suffered a stroke and was not able to advocate for him.  (*See id.* at ¶ 67.)  Keitt alleges that, in high school, he was again not provided with accommodations, and he further alleges that he was harassed by other students, who called him "stupid," "dumb," and "retard."  (*Id.*)  Keitt eventually stopped attending school.  (*See id.*)

## 2.      Detention in City (DOC) and State (DOCS) Facilities

In 1998, not long after he left Springfield High School, Keitt was arrested and detained in a facility operated by DOC.  (*See id.* at ¶ 103.)  Further, Keitt alleges that he has been detained in DOC facilities at Rikers Island, including the Robert N. Davoren Complex ("RNDC"), the Eric M. Taylor Center ("EMTC"), and the George R. Vierno Center ("GRVC"), for much of the past decade, "from late 1998 to the present."  (*Id.*)  At these facilities, he purportedly "was not provided reasonable appropriate accommodations at any time," but, nevertheless, was "required to attend Standard/Basic educational classes."  (*Id.* at ¶ 104).

According to DOCS administrative records, though, Keitt was in *state* custody from September 28, 2000, until he was released to parole on September 10, 2003.[4]  While Keitt was again arrested by New York City police on at least June 8, 2005, *see Keitt v. City of New York,* No. 09 Civ. 5663 (PKC) (DF), 2010 WL 3466175, at *1 (S.D.N.Y. Aug. 9, 2010) (Report & Recommendation), *adopted by* 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010), and thus was presumably held in City custody for a period thereafter, it further appears that Keitt was taken into *state* custody for a second time on April 20, 2006, following a conviction and sentencing.[5] Indeed, Keitt has presumably been in the state DOCS system continuously since then, given that the sentence he received on April 4, 2006, was an aggregate term of 23 years' imprisonment. *See People v. Keitt*, 875 N.Y.S.2d 47 (1st Dep't 2009).

The Amended Complaint does not include any allegation as to when Keitt was transferred to Elmira, although Keitt did file a notice with the Court on October 23, 2009 that he had been transferred there.  *See Keitt v. City of New York*, No. 09 Civ. 5663 (Dkt. 10).  Keitt alleges generally that he was denied reasonable accommodations in the education program at Elmira.  (*See* Am. Compl. at ¶ 219.)  More specifically, he claims that Lepkowski, the education supervisor at Elmira, failed to accommodate his dyslexia.  (*See id.* at ¶¶ 261-64.)

While he was at Elmira, Keitt grieved his claim that his dyslexia was not being accommodated in the education program he was attending.  (*See* Am. Compl. at ¶ 220.) Superintendent Bradt's response to Keitt's grievance stated that Keitt had alleged that, as "a

---

[4] This information is from the DOCS website, www.docslookup.doc.state.ny.

[5] This information is also from the DOCS website, www.docslookup.doc.state.ny, although the Court notes that, in his Complaint in *Keitt v. Annetts*, No. 09 Civ. 157 (N.D.N.Y.), Keitt alleges that he was taken into state custody on May 20, 2006 (*see id.* (Dkt. 1), at ¶ 25).

dyslexia disabled prisoner, [he was] being denied necessary accommodations to participate in the [Adult Basic Education] program" and that his "grievance [was] denied [due] to age limitations." (*Id.*, Ex. 4 (Superintendent Bradt's response, dated January 27, 2010, to Keitt's grievance).) Keitt also submitted a request for accommodation under the ADA, seeking extended time for tests, to be permitted to circle multiple choice answers (rather than completing corresponding responses), to use notes from other students, and to have a reader, books on tape, or materials with large print. (*See id.* at Ex. 2). Reynolds allegedly denied the requested accommodation on the ground that Keitt had failed to establish that he was dyslexic. (*See id.* at ¶ 225.)

Beyond claiming that his dyslexia was not reasonably accommodated, Keitt also alleges that certain correction officers threatened to make false disciplinary reports because of his requests for accommodations. (*See id.* at ¶ 244.) In particular, Keitt directs such allegations at Fusco, who was his teacher in an adult basic education program at Elmira. (*See id.* at ¶ 268.) Although Keitt allegedly informed Fusco that he required accommodations because of his dyslexia, Fusco purportedly threatened to issue Keitt a misbehavior report for failing to complete assignments and falsely claimed that Keitt created disturbances in the program. (*See id.* at ¶ 269.) On May 28, 2010, Keitt was issued a misbehavior report, which Keitt claims was false. (*See id.* at ¶ 245.) Keitt alleges that he has learned that "staff ha[d] been instructed to issue him a misbehavior report at every opportunity." (*Id.* at ¶ 230.) He further alleges that he "was compelled" to sign out of the adult basic education program. (*See id.* at ¶ 270.) Thereafter, because Keitt was not attending school and did not have a general education degree ("G.E.D."), Livermore, who was a member of the Program Committee at Elmira, allegedly refused to allow Keitt to attend Elmira's strength/fitness program. (*See id.* at ¶ 274.)

Keitt alleges that he was unable to defend himself adequately on the May 28, 2010 disciplinary charges because he could not read the notice of the charges against him or explain his defenses, and he was found guilty.  (*See id.* at ¶ 245.)  He seeks compensatory damages and injunctive relief, requiring DOCS and its employees to provide accommodations to dyslexic prisoners at disciplinary hearings.  (*See id.* at ¶ 248.)

On or about October 21, 2010, after he filed the Amended Complaint, Keitt was transferred to Attica.[6]  He remains there, as of this date, and seeks to add claims about his treatment there, in his proposed Second Amended Complaint.

### B.     Procedural Background

Keitt filed his original Complaint on June 22, 2009.  (*See* Compl., at 51.)  The Court issued an Order on October 7, 2009, directing Keitt to amend his Complaint, which named more than 100 defendants and asserted claims arising in 16 different facilities, the majority of which are not in this district.  (*See* Order, dated October 7, 2009 (Dkt. 3).)  After several requests for extensions of time, Keitt submitted an Amended Complaint, which he apparently signed on June 28, 2010.  (Dkt. 10.)  Keitt also filed two actions in the Northern District of New York, one of which raises claims about the denial of reasonable accommodations for his dyslexia in facilities within that district.[7]

---

[6] Keitt filed a notice of change of address in *Keitt v. City of New York*, No. 09 Civ. 5663, stating that he had been transferred to Attica.  (*See id.* (Dkt. 32) (Notice of Change of Address filed Oct. 21, 2010).)

[7] *See Keitt v. Annetts*, No. 09 Civ. 157 (alleging that, at Clinton and Upstate Correctional facilities, DOCS violated Keitt's rights under the ADA and to procedural due process by failing to accommodate his dyslexia in connection with education and disciplinary proceedings); *Keitts v. Reverend Hawk*, No. 10 Civ. 1077 (N.D.N.Y) (asserting First Amendment, Religious Land Use and Institutionalized Persons Act, and Eighth Amendment claims arising at Upstate Correctional Facility in 2007).  Keitt also has another action pending in the Western District of

The City Defendants move to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), on grounds that:  (1) the EEOA does not apply; (2) Keitt fails to state a claim under Section 1981; (3) Keitt's claims under the IDEA, Section 1983, Rehabilitation Act and Title II of the ADA are barred by his failure to exhaust his administrative remedies under the IDEA or are untimely; (4) city agencies are not suable entities; (5) Keitt fails to state a claim against City Defendants under Sections 1985 and 1986; and (6) Keitt fails to state a claim for procedural due process or for a violation of the ADA.  (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss, dated Jan. 11, 2011 (Dkt. 34) ("City Defs. Mem.").)

The State Defendants move to dismiss on grounds that:  (1) the claims against the State of New York and it agencies are barred by the 11th Amendment to the United States Constitution, as are the claims for damages against individual officers in their official capacities; (2) the claims for injunctive relief against Elmira Officers Livermore and Lepkowski in their official capacities are moot because Keitt was transferred to Attica; (3) Keitt fails to state a claim under the ADA or Rehabilitation Act; (4) the claims against Commissioner Fischer should be dismissed for lack of personal involvement; (5) punitive damages are not available; and (6) the remaining claims should be severed and transferred to the Western District of New York.  (*See* Memorandum of Law in Support of State Defendants' Motion to Dismiss and to Sever and Transfer Venue, dated Jan. 11, 2011 (Dkt. 36) ("State Defs. Mem.").)

---

New York, asserting deliberate indifference to his serious medical needs.  *See Keitt v. Bradt*, No. 11 Civ. 438 (JJM) (W.D.N.Y.).

Keitt opposes both motions to dismiss and the motion to sever and transfer.[8]  Keitt also moved for leave to file a Second Amended Complaint, but does not explain in the moving papers what changes he seeks to make in his pleading.  (*See* Plaintiff's Motion to Amend[] the Complaint, dated Mar. 14, 2011 (Dkt 49) ("Pl. Mot.").)  The proposed Second Amended Complaint appears to add four new Attica defendants for claims arising after Keitt's transfer to that facility.  (*See id.*, attaching Proposed Section Amended Complaint ("Prop. 2d Am. Compl.").)  It also includes claims against two new Elmira defendants for failing to accommodate Keitt's disability in disciplinary proceedings in June and July 2010.  Keitt also re-identifies Bradt in the caption of the proposed Second Amended Complaint as Superintendent of Attica, where this defendant is now employed, rather than as Superintendent of Elmira, where he had been employed at the time this case commenced.  Finally, Keitt adds allegations that Defendants acted with "bad faith and gross misjudgment."  Both the State and City Defendants oppose the motion to amend.  (Dkts. 57, 58.)

## DISCUSSION

### I.   MOTIONS TO DISMISS

#### A.   Applicable Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim on the ground that the Court lacks subject matter jurisdiction.  In deciding such a motion

---

[8] In a telephone conference with the Court and all parties on April 6, 2011, Keitt stated that he had not reviewed his opposition to the motion to dismiss (Dkt. 52), which had been drafted with the assistance of another prisoner, because Keitt had been moved to solitary confinement.  The Court mailed Keitt a copy of his opposition, and on April 13, 2011, Keitt signed a statement indicating that the opposition had been read to him (Dkt. 64), and he resubmitted it without any changes.  As Keitt has submitted oppositions to both the City and State Defendants' motions, his opposition (Dkt. 69) to the City's motion is referred to herein as "Pl. (City) Opp." and his opposition (Dkt. 64) to the State's motion is referred to herein as "Pl. (State) Opp."

to dismiss, the Court must construe all ambiguities and draw all inferences in favor of the plaintiff.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.").  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), however, a district court may consider evidence outside the pleadings.  *See Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  Moreover, where subject matter jurisdiction is contested, the plaintiff has the burden of demonstrating that subject matter jurisdiction exists.  *See id*.

   A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when it is not "legally sufficient" to state a claim upon which relief may be granted. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).  In deciding a 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

   Though the Court will construe a *pro se* plaintiff's pleadings liberally and "interpret them to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the plaintiff is still required to comply with all "relevant rules of procedural substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Any "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must

13

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

 Keitt filed his motion to amend prior to the Court's issuance of a decision on Defendants' motions to dismiss.  Accordingly, to the extent the Court finds any deficiencies in the original pleading, the Court will also consider whether the proposed amendment cures the defects, and whether the amendment should thus be permitted.

## B.     EEOA Claims

All Defendants move to dismiss Keitt's claims under the EEOA for failure to state a claim on which relief can be granted.  (*See* City Defs. Mem. at 16-17; State Defs. Mem. at 13.) The EEOA provides that "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex or national origin."  20 U.S.C. § 1703.  This statute was "intended to 'specify appropriate remedies for the orderly removal of the vestiges of the dual school system.'" *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 415 (E.D.N.Y. 2009) (quoting *United States v. City of Yonkers*, 96 F.3d 600, 620 (2d Cir. 1996)).  In his Amended Complaint, Keitt alleges that he has been denied educational opportunities because of dyslexia, *not* because of his "race, color, sex or national origin," as required to state a claim under the EEOA.  20 U.S.C. § 1703.  I therefore recommend granting Defendants' motions to dismiss Keitt's claims under the EEOA.[9]

---

[9] To the extent that Keitt's proposed Second Amended Complaint alleges discrimination based on race, those allegations appear to relate solely to restrictions on his access to privileges

C.     **IDEA Claims**

All Defendants move to dismiss Keitt's claims that he did not receive a free, appropriate

public education, in violation of the IDEA, on the ground that Keitt failed to exhaust available

administrative remedies.  (*See* City Defs. Mem. at 13-15; State Defs. Mem. at 13.)  Defendants

further contend that the IDEA subjects any other federal statutory claim seeking relief available

under the IDEA to the same administrative exhaustion requirement; they therefore also move to

dismiss Keitt's ADA, Rehabilitation Act and Section 1983 claims for failure to exhaust his

IDEA remedies.  (*See id.*; *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 246

(2d Cir. 2008) (dismissing ADA and Rehabilitation Act claims, which sought relief available

under the IDEA, where plaintiff failed to exhaust IDEA remedies).)

All Defendants argue, in the alternative, that Keitt's IDEA claims should be dismissed as

time-barred.  (*See* City Defs. Mem. at 11-12; State Defs. Mem. at 12-13.)

1.     **Exhaustion**

Congress enacted the IDEA "to ensure that all children with disabilities have available to

them a free, appropriate public education that emphasizes special education and related

services," *Somoza v. New York City Dep't of Educ.*, 538 F.3d 106, 113 (2d Cir. 2008), and

included procedural safeguards that enable parents and students to challenge the local

educational agency's decisions, *Murphy v Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195,

---

at Attica Correctional Facility and, thus, would also not give rise to a claim that he was denied
educational opportunities on the basis of his race.  (*See, e.g.*, Prop. 2d Am. Compl. at ¶ 300
("Defend[a]nt then carr[i]ed out a mali[c]ious retaliation act against Keitt by placing him on
limited privil[eg]es, on phone, one h[ou]r per day in the y[a]rd, no pay, can't attend movies, on
family picnics, special shows, evening programs or law library, because of his dyslexic
disability, for refusing to attend sch[ool], and because of the color of his skin and texture of his
hair . . . .").)

197 (2d Cir. 2002). The IDEA also requires states to establish procedures whereby parents may, among other things, present a complaint "with respect to any matter relating to the . . . provision of a free appropriate public education to [their] child." 20 U.S.C. § 1415(b)(6)(A). New York's administrative review system involves two steps: a review of the child's IEP by an impartial hearing officer, N.Y. Educ. Law § 4404(1), and an appeal to a state review officer, who may modify any decision made by the impartial hearing officer. *Piazza, Jr. v. Florida Union Free Sch. Dist.*, __ F. Supp. 2d __, 2011 WL 1458100, at *7 (S.D.N.Y. Apr. 7, 2011).

Generally, a plaintiff must exhaust both steps to bring a civil action under the IDEA or under any other statutory claim seeking relief available under the IDEA. *See Coleman v. Newburgh Enlarged Sch. Dist.*, 503 F.3d 198, 208 (2d Cir. 2007) (prospective plaintiffs must await a "final" agency decision before they have the right to sue). A plaintiff should not be excused from the exhaustion requirement when "administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112-13 (2d Cir. 2004).

The IDEA's exhaustion requirement does not apply, however, "in situations in which exhaustion would be futile." *Coleman*, 503 F.3d at 205. The futility exception covers cases in which a plaintiff demonstrates that "adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* at 205. For example, the futility exception applies where "parents were not notified of the available due process remedies," *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002), the local or state education agency was itself acting contrary to law, *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992), or the defendant is alleged to have committed a "systemic" violation of the IDEA, *Cave*, 514 F.3d at 249. Plaintiffs have also been

16

allowed to avoid the exhaustion requirement when the complaint alleges that a school has failed

to implement services that were clearly stated in an IEP.  *Polera v. Bd. of Educ.*, 288 F.3d 478,

489 (2d Cir. 2002).

It is clear from the face of the Amended Complaint that Keitt has not exhausted IDEA

administrative remedies.  (*See, e.g.,* Am. Compl. at ¶ 32 ("[I]t is clear [that his mother] did not

know the rights of her son and allowed the [p]ublic [s]chool [s]ystem to go so many years

without providing her son with reasonable accommodations.").)  When a complaint, on its face,

reflects that it could not be amended to allege that the plaintiff satisfied the exhaustion

requirement, failure to exhaust is a proper ground for a motion to dismiss.  *See Levine v. Greece*

*Central Sch. Dist.*, No. 09-910-cv, 2009 WL 3765813, at *2 (2d Cir. 2009).[10]  Given that it is

clear from the Amended Complaint that Keitt has not exhausted his IDEA administrative

remedies, the IDEA claims must be dismissed for failure to exhaust, unless an exception to the

exhaustion requirement applies.  *See J.S.*, 386 F.3d at 112 (holding that plaintiff bears the burden

of establishing that the futility exception applies).

Keitt contends in his opposition to the City's motion that the futility exception to the

exhaustion requirement applies because neither he nor his parents were notified of IDEA

administrative procedures.  (Pl. (City) Opp. at 15.)  In particular, Keitt alleges in his Amended

Complaint that "it is clear [that his mother] did not know the rights of her son" (Am. Compl. at ¶

32), that "there is nothing to support that she was given educational options for her son" (*id.* at ¶

---

[10] Whether the exhaustion requirement is jurisdictional or "a claim-processing rule" that may
be waived if not raised affirmatively by defendants, remains an open question.  *See Coleman*,
503 F.3d at 209 and n.1.  The Court need not address this issue here, as it is clear from the face
of the Amended Complaint that Petitioner failed to exhaust and as all Defendants challenged the
failure to exhaust in their motions to dismiss.  *See Levine*, 2009 WL 3765813, at *2

33), and that "[i]t is clear that plaintiff's mother was not aware of [Keitt's] rights under the . . .

I.D.E.A." *(id.* at ¶ 62).  He further alleges that "plaintiff [and] his mother were not informed of

their rights and the D.O.E.'s obligations to them."  (*Id.* at ¶ 77; *see also id.* at ¶ 207 ("State

educators failed to . . . properly inform plaintiff and his parent of their rights concerning his

education.").)  The Amended Complaint thus alleges that neither Keitt nor his parents were

notified of available remedies for alleged violations of the IDEA, and the Court accepts these

factual allegations as true for purposes of the motion to dismiss.  *Jahorgy v. New York State*

*Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

The Second Circuit has excused the exhaustion requirement in such circumstances

because the failure "to notify plaintiffs of their procedural rights under the IDEA 'deprived

[them] of the opportunity to take advantage of the procedural safeguards offered by the statute.'"

*See Weixel*, 287 F.3d at 149 (citing *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 147

(2d Cir. 1983)).  Accordingly, accepting as true, at this stage of the litigation, Keitt's allegations

that Defendants failed to provide notice of the procedural safeguards available under the IDEA,

Keitt has satisfied his burden of demonstrating that the futility exception to the exhaustion

requirement applies.  I therefore recommend denying Defendants' motions to dismiss Keitt's

IDEA claims as unexhausted.  I also recommend denying, for the same reasons, Defendants'

motions to dismiss as unexhausted his claims under the ADA, Rehabilitation Act and

Section 1983.

### 2.    **Statute of Limitations**

Keitt's IDEA claims are, however, subject to dismissal as time-barred, as discussed

below.

18

### a.   Applicable Limitations Period

Prior to July 2005, the IDEA did not specify a limitations period.  Courts therefore borrowed the most analogous state statute, which some district courts had concluded was the one-year limitations period contained in Section 297(5) of the N.Y. Human Rights Law.  *See Somoza*, 538 F.3d at 11 n.7 (collecting cases).  The IDEA was amended in 2004 to include a two-year statute of limitations that became effective in July 2005, *Piazza*, 2011 WL 1458100, at *14 n.7 (citing 20 U.S.C. § 1415(f)(3)(C)), although the law is unsettled as to whether the two-year statute of limitations in the amended IDEA can be applied to claims that arose before the effective date, *see Somoza*, 538 F.3d at 114 n.7.  The City Defendants contend that a one-year limitations period applies to Keitt's IDEA claims because these claims accrued before the statute was amended (*see* City Defs. Mem. at 11), while the State Defendants contend that the two-year limitations period applies (*see* State Defs. Mem. at 13 ("the IDEA has a two-year deadline")).

By its express terms, however, the two-year period now in Section 1415(f)(3)(C) governs only the time to request an administrative due process hearing.[11]  *See Piazza*, 2011 WL 1458100, at *13.  It is therefore inapplicable to the situation where a plaintiff is excused from the administration exhaustion requirement because of futility and brings an action directly in federal court.  *See id.* at *14 (noting that "the IDEA is silent" regarding the limitations period governing unexhausted IDEA claims brought directly in federal court).

---

[11] Section 1415(f)(3)(C) provides: "A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint . . . ."  20 U.S.C. § 1415(f)(3)(C).  Once there is a final agency decision from the State Review Officer, in New York, a party must seek review in federal court within four months of the decision.  *See Piazza*, 2011 WL 1458100, at *14 (citing N.Y. Educ. Law § 4404(3)(a)).

Where a federal statute is silent, a court generally supplies the statute of limitations from the most closely analogous state statute. *Graham Cnty Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005).[12]   Contrary to the authority cited by the City Defendants, however, "[c]ourts in the Second Circuit considering IDEA claims that are permissibly unexhausted have [applied] a three-year statute of limitations borrowed from N.Y. C.P.L.R. § 214(2)," which governs "an action to recover upon a liability, penalty or forfeiture created or imposed by statute . . . ." *Piazza*, 2011 WL 1458100, at *14 (collecting cases).  A three-year limitations period would also apply to the extent Keitt is bringing his IDEA claim under Section 1983.  *See Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 147 (2d Cir. 1983) (finding right of action for IDEA violations to be available under Section 1983, where plaintiff has been denied procedural safeguards and there is no final administrative decision).

### b.    Accrual of Keitt's Claims

In the Amended Complaint, Keitt alleges that Defendants violated the IDEA by failing to provide him with an appropriate education:  (1) in the public schools through 1998; (2) in juvenile detention facilities from 1995-97; (3) at city-operated facilities at Rikers Island, where he was incarcerated at various times beginning in 1998; and (4) in state facilities operated by DOCS where he was incarcerated from 2000-03, and again beginning in 2006.

"An IDEA claim accrues on the date that a plaintiff or his parent 'knew or should have known about the alleged action that forms the basis of the complaint.'"  *Somoza*, 538 F.3d at 114 (citing 20 U.S.C. § 1415(b)(6)(B)).  Keitt's argument that his claims accrued at the time of

---

[12] The argument that the four-year federal catch-all limitations period in 28 U.S.C. § 1658 (*see infra,* at 44) applies to IDEA claims has been rejected by the Second Circuit in *dicta*.  *See E.H. v. Bd. of Educ.*, 361 Fed. App'x 156, 2009 WL 3326627, at *1 (2d Cir. Oct. 16, 2009).

"discovery that [he had] grounds for such a suit" (Pl. (City) Opp. at ¶ 5), must be rejected because accrual of the statute of limitations does not depend on plaintiff's knowledge of the law, but rather on a plaintiff's knowledge of the injury. *See Fairley v. Collins*, No. 09 Civ. 6894 (PGG), 2011 WL 1002422, at *6 (S.D.N.Y. Mar. 15, 2011) (holding that a plaintiff's ignorance about his ability to file a lawsuit is not sufficient to delay the accrual of the statute of limitations) (citing *Ormiston v. Nelson*, 117 F.3d 69, 72 n.5 (2d Cir. 1997)); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (holding that federal claims accrue "when the plaintiff knows or has reason to know of his injury"); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (explaining that the inquiry about the date of accrual "focuses on the date of the complained-of act").

The City Defendants contend that *all* of Keitt's claims accrued in 1995 when his mother removed him from public school and enrolled him in the private Lowell School because she "knew or had reason to know" that he was being denied an appropriate education at that point. (*See* City Defs. Mem. at 9-10 ("Plaintiff's IDEA claims accrued when Plaintiff was fourteen (14) years old, as it is clear from the Amended Complaint that Plaintiff's mother knew or had reason to know" that "special education services were allegedly being denied to Plaintiff.").) This may be true as to any IDEA claim arising at the public school from which Keitt was withdrawn in eighth grade. The City Defendants fail to establish, however, that Keitt's other IDEA claims – which arose in juvenile facilities between 1995-97, in high school in 1998, or in various Rikers Island facilities intermittently beginning in 1998 – accrued in 1995, before Keitt had even entered such facilities. In 1995, neither Keitt nor his mother "knew or had reason to know" that he would be denied an appropriate education when he later entered such facilities.

21

The City Defendants argue, in the alternative, that all of Keitt's IDEA claims accrued at the latest in 2002, the year he reached the age of 21; the State Defendants also make this argument.  (*See* City Defs. Mem. at 11; State Defs. Mem. at 12).  Keitt was born on February 25, 1981, and thus he reached the age of 21 on February 25, 2002.  (*See* Am. Compl., Ex. 1).  "New York law requires the DOE to provide educational services for children with disabilities until they receive a high school diploma or complete the school year following their twenty-first birthday."  *Somoza*, 538 F.3d at 113 n.6 (citing N.Y. Educ. Law § 4402(5)).  "Under New York law, a child is 'no longer entitled to the protections and benefits of the [IDEA] after the age of twenty-one and 'does not have a right to demand a public education beyond [that] age.'" *Id.*[13] Thus, Defendants are correct that Keitt's IDEA claims accrued at the latest at the end of the school year in 2002, the year he reached the age of 21.

 Having concluded that Keitt's IDEA claims accrued at the very latest at the end of the school year in 2002 and that a three-year statute of limitations applies, Keitt's IDEA claims would be untimely after 2005.  Thus, as Keitt's Complaint should be considered to have been filed on June 22, 2009,[14] his IDEA claims are untimely, unless tolling of the limitations period is available.

---

[13] Courts have granted compensatory education beyond a plaintiff's 21st birthday, however, to compensate for the deprivation of a free education to which the plaintiff was entitled for a period before he reached that age.  *See St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 169 (2d Cir. 2001).

[14] A *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

c.      **Potential Tolling**

In opposing the City Defendants' motion to dismiss the Amended Complaint as untimely,

Keitt contends that, "[e]ven if the [P]laintiff knew that his constitutional rights were violated

while in the DOCS, there [were] no policies and/or procedures in place to [e]nsure Plaintiff

[was] afforded a reasonable accommodation to participate in the law library . . . ."  (Pl. (State)

Opp. at ¶ 7.)  The Court construes this as an allegation that Keitt is entitled to equitable tolling.

Under federal law, a litigant seeking to invoke equitable tolling must establish that:  (1) he has

been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way.

*Pace v. DiGulielmo*, 544 U.S. 408, 418 (2005).

Keitt's argument fails for at least two reasons.  First, even assuming that DOCS policies

with respect to dyslexic individuals could be considered an extraordinary circumstance, Keitt

fails sufficiently to allege that DOCS policies *caused* the untimeliness of his Complaint.  *See,*

*e.g., Harper v. Ercole*, __ F.3d __, 2011 WL 3084962, at *4 (2d Cir. July 26, 2011) (explaining

that a "court may conclude that such causation is lacking where the identified extraordinary

circumstances arose and concluded early within the limitations period").  Here, Keitt's IDEA

claims accrued at the latest in 2002, and Keitt does not allege that he was in DOCS custody

throughout the period when he could have brought these claims.  Moreover, DOCS

administrative records reflect that Keitt was released from DOCS custody in September 2003,

and was not taken into DOCS custody again until April 2006.  DOCS policy therefore did not

cause the untimeliness of his Complaint because, even if he was in DOCS custody until 2003,

Keitt was released years before the statute of limitations for filing his IDEA claim expired.

Second, Keitt does not allege that he actually sought to file his IDEA claims while he was in

DOCS custody, but, rather, only that, *had he known* that he had valid legal claims and thus had

tried to file (which he did not), he would have been stymied by DOCS policies.  Keitt's

allegations regarding DOCS policies are therefore insufficient as a matter of law to satisfy his

burden on equitable tolling.

Keitt also has no basis for invoking tolling under state law.  "[F]ederal courts must

borrow a state's tolling rules unless to do so 'would defeat the goals of the federal statute at

issue.'"  *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003) (*quoting Hardin v.

Straub*, 490 U.S. 536, 539 (1989)).  New York law provides for equitable tolling where a

defendant "wrongfully deceived or misled the plaintiff in order to conceal the existence of a

cause of action."  *Kellogg v. Office of the Chief Med. Exam'r of the City of New York*, 791

N.Y.S.2d 278, 283 n.2 (Sup. Ct. Bronx Co. 2004).  Whether this is treated as a doctrine of

equitable estoppel or equitable tolling, the essence of the doctrine is that serious misconduct by

the defendant should estop the defendant from relying on the statute of limitations.  *See Keitt*,

2010 WL 3466175, at *9.  Keitt has not identified any fraud, misrepresentation or deception by

any defendant that prevented him from bringing his IDEA claims.  He has therefore failed to

demonstrate that he is entitled to equitable tolling under this doctrine of New York law.

The Court also considers whether Keitt is entitled to statutory tolling.  New York has

codified the circumstances under which a limitations period may be tolled.  *See, e.g.*, N.Y.

C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.*

at § 204 (where a dispute has been submitted to arbitration but is ultimately determined to be

non-arbitrable), *id.* at § 207(3) (where the defendant is outside New York at the time the claim

accrues), *id.* at § 208 (where the plaintiff is disabled by infancy or insanity), *id.* at § 210 (upon

the death of a plaintiff or defendant).

There is a conflict among the Circuits as to whether minority tolling provisions should be applied to the IDEA.[15]  *Piazza*, 2011 WL 1458100, at *14 n.19.  Yet, in any event, because Keitt was not a minor during the period he seeks to toll, the minority tolling provision in Section 208 does not assist him.  Nor can Keitt successfully invoke the "insanity" provision of Section 208, which extends only to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society."  *McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543, 548 (1982).  The state courts have construed this provision narrowly, requiring plaintiffs to demonstrate an extremely high degree of incapacity to invoke the provision.  *See, e.g., Burgos v. City of New York*, 742 N.Y.S. 2d 38, 40 (1st Dep't 2002) (plaintiff who suffered "dementia and psychotic disorder" "due to multiple medical conditions" that existed for many years and were permanent failed to establish a sufficient inability to function under Section 208); *Dumas v. Agency for Child Development-New York City Head Start,* 569 F. Supp. 831, 833 (S.D.N.Y. 1983) (diagnosis of "schizophrenia, paranoid, chronic with acute exacerbation" did not result in tolling because disability "was not of the severe and incapacitating nature contemplated by the tolling statute").  Keitt has not come close to showing that his claimed dyslexia rendered him unable to function in society, within the meaning of Section 208, and, indeed, this Court has previously concluded otherwise.  *See Keitt*, 2010 WL 3466175, at *7-9.

Finally, courts in this Circuit have been reluctant to apply the continuing-violation doctrine to IDEA claims.  *See Scaggs v. New York State Dep't of Educ.*, No. 06 Civ. 799, 2007 WL 1456221, at *10 (E.D.N.Y. May 16, 2007).  Courts have sometimes applied the

---

[15] Several district courts in this Circuit have reasoned that IDEA claims are almost always brought on behalf of minors and applying minority tolling provisions would be fundamentally inconsistent with the IDEA's goal of prompt presentation and resolution of educational disputes. *Id.* at *15 (relying on *M.D.*, 334 F.3d at 224).

continuing-violation theory in hostile work environment claims, which, by their very nature, involve repeated conduct rather than discrete acts. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Under this theory, "the incidents constituting a hostile work environment are part of one unlawful employment practice," and therefore "[a defendant] may be liable for all actions that are part of [a] single claim," provided that one act within the claim is timely. *Morgan*, 536 U.S. at 118. Even if the Court were to apply this theory, this would not assist Keitt because the latest that any of his IDEA claims against Defendants could have accrued was in 2002, and, thus, when the Complaint was filed in 2009, it did not include any IDEA claim that was timely and that could have been part of a continuing unlawful practice.

Accordingly, having concluded that Keitt's IDEA claims accrued at the latest at the end of the school year in 2002 (the year that he reached the age of 21), and that a three-year limitations period applies to unexhausted claims, his IDEA claims are untimely because he did not file them until June 22, 2009, and Keitt has not adequately alleged any basis for tolling the statute of limitations. I therefore recommend granting Defendants' motions to dismiss all of Keitt's IDEA claims as untimely.

### D.    Keitt's Section 1981 Claims

The City Defendants move to dismiss Keitt's claims, brought pursuant to Section 1981.[16] In order to state a claim under Section 1981, a plaintiff must allege that: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one of certain enumerated activities. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000). Those enumerated activities include the

---

[16] The State Defendants have not moved to dismiss Keitt's Section 1981 claims.

rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  *Id.*; *see also Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 300-01 (2d Cir. 2006).  The City Defendants contend that Keitt fails to state a claim on which relief can be granted under Section 1981 because, even apart from whether his pleading alleges race discrimination, he "has not alleged any contractual relationship with Defendants."  (City Defs. Mem. at 18, n.11).   Keitt does not address this in his opposition to the City Defendants' motion.  (*See* Pl. (City) Opp.)

In the Amended Complaint, Keitt alleges in the statement of jurisdiction that he asserts claims under Section 1981.  (*See* Am. Compl. at ¶ 1.)  He further alleges, without any supporting factual allegations, that his rights under Section 1981 were violated by City defendants DOC (*id.* at ¶ 102), Schriro (*id.* at ¶ 108), and Bloomberg (*id.* at ¶ 122).  Keitt also alleges, again without factual development, that his rights under Section 1981 were violated by State defendants DOCS (*id.* at ¶ 145), Fischer (*id.* at ¶ 187), Bradt (*id.* at ¶ 218), Reynolds (*id.* at ¶ 249), Lepowski (*id.* at ¶ 260), Fusco (*id.* at ¶ 266), and Livermore (*id.* at ¶ 273).

Having reviewed the Amended Complaint, the Court agrees that Keitt has failed to allege discrimination with respect to the making of a contract or any other enumerated activity under the statute.  The Proposed Second Amended Complaint also does not include allegations suggesting a contractual relationship between Keitt and any of the named Defendants or an intent by any defendant to discriminate with respect to another enumerated activity.  I therefore recommend granting the City Defendants' motion to dismiss Keitt's Section 1981 claims against them because Keitt does not allege that Defendants discriminated against him with regard to any

enumerated activities.  I also recommend dismissing the Section 1981 claims against the State

Defendants for the same reason, *sua sponte*.[17]

### E.      Section 1983, 1985 and 1986 Claims

#### 1.      Statute of Limitations

##### a.      Applicable Limitations Periods

The statute of limitations for actions brought pursuant to Sections 1983 and 1985 is three

years.  *See Paige v. Police Dept. of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001).  For

actions brought pursuant to Section 1986, the limitations period is one year.  *See id.*

##### b.      Accrual of Keitt's Claims

Defendants move to dismiss Keitt's claims under Sections 1983, 1985 and 1986 arising

during four periods:  (1) in the public schools through 1998; (2) in juvenile detention facilities

from August 1995 to February 1997; (3) in DOCS facilities where Keitt was incarcerated from

September 2000 to September 2003; and (4) at DOC facilities at Rikers Island, where Keitt was

incarcerated at various times beginning in 1998.[18]  These claims, like his IDEA claims, accrue

---

[17] The Court should not dismiss the claims of a *pro se* plaintiff *sua sponte,* without first giving the plaintiff an opportunity to address the matter.  *See Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir. 1988) (*sua sponte* dismissal of complaint for failure to state a claim is improper unless the plaintiff is given notice and an opportunity to respond).  Here, although the State Defendants did not challenge the adequacy of Keitt's Section 1981 claims in their motion, the City Defendants did, and Keitt has therefore had an adequate opportunity to address the issue discussed above. Nonetheless, if Keitt wishes to oppose this Court's recommended dismissal of his Section 1981 claims against the State Defendants, he should set forth his reasons in an objection to this Report and Recommendation.  Any such objection should be directed to Judge Daniels.  (*See infra,* at 67-68.)

[18] The State Defendants do not argue that Keitt's Sections 1983, 1985 and 1986 claims arising during Keitt's incarceration at Elmira Correctional Facility, beginning in 2006, would be time-barred. The Court does not understand Keitt to be asserting any claims against the State Defendants arising between April 20, 2006, when Keitt was transferred into state custody (*see infra*, at 32) and 2009, when he was transferred to Elmira.  During that period, Keitt was located

"when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton*, 632 F.2d at 191 (citation and quotation marks omitted).

### i.        Claims Arising Out of Public School Attendance

Keitt knew or should have known of the public school's failure to accommodate his dyslexia while he was in the public school system, even if he did not understand until later that he might have had legal rights arising from such injury.  Keitt's claims arising during his time in public school thus accrued not later than 1998, when he alleges that he dropped out of high school.  (*See* Am. Compl. at ¶ 67.)

### ii.        Claims Arising Out of Juvenile Detention

Keitt knew or should have known of the failure to accommodate his dyslexia in juvenile detention facilities, while he was in these facilities, even if he did not become aware until later that he had legal claims.   Keitt's claims arising during his time in juvenile detention facilities therefore accrued not later than 1997, when he alleges that he was released from these facilities. (*See id.* at ¶ 90.)

### iii.        Claims Arising Out of Initial
### Period of State Incarceration

It is unclear from the Amended Complaint when Keitt was first incarcerated in state DOCS custody.  (*See* Am. Compl. at ¶ 141 ("Plaintiff, at the time of his incarceration in DOCS facilities, was under the age of twenty-one"); *id.* at ¶ 146 ("[f]rom 1998 to present, plaintiff has been confined/imprisoned for [t]en and [o]ne-half years at defendants New York City and State

---

at a number of different state facilities, including Downstate Correctional Facility, Sing Sing Correctional Facility, Clinton Correctional Facility, and Upstate Correctional Facility; it appears that Keitt has asserted ADA claims regarding the alleged failure to accommodate his disability in education programs and disciplinary hearings during that period in a separate case in the Northern District of New York. *See Keitt v. Annetts*, No. 10 Civ. 157.

locations"); *id.* at ¶ 147 ("Plaintiff has been confined in nine adult New York State [DOCS] [f]acilities").)  The Court takes judicial notice of administrative records from DOCS, however, which indicate that Keitt's first period of DOCS incarceration was from September 28, 2000, when he was taken into state custody, until September 10, 2003, when he was conditionally released on parole.  *See, e.g., Ruffins v. Department of Correctional Services*, 701 F. Supp. 2d 385 (E.D.N.Y. 2010) ("[T]he Court takes judicial notice of . . . the administrative documentation of plaintiff's custody and release from DOCS").[19]  Keitt therefore knew or should have known of any failure to accommodate his disability with respect to his first period of DOCS incarceration not later than September 10, 2003, when he was released from DOCS custody, and his claims under Sections 1983, 1985 or 1986 therefore accrued not later than that date.

### iv.     Claims Arising Out of Detention in City Facilities (Rikers Island)

Keitt alleges that he has repeatedly been incarcerated from 1998 to the time of filing and that "many" of these years were spent at Rikers Island facilities, including RNDC, EMTC and GRDC, operated by the DOC.  (*See* Am. Compl. at ¶¶ 103, 146).  It is therefore not clear from the face of the Amended Complaint when Keitt was last confined in a DOC facility, but the City Defendants contend that Keitt's claims under Sections 1983, 1985 and 1986, arising at Rikers Island, accrued "in 2002, at the latest" when he reached the age of 21.  (*See* City Defs. Mem. at 3-4.)  They argue that his claims are therefore untimely, "whether brought pursuant to the IDEA, Rehabilitation Act, ADA or [Section] 1983."  (*See* Reply Memorandum of Law in Further

---

[19] *See also* www.nysdocslookup.docs.state.ny.us.

Support of Municipal Defendants' Motion to Dismiss, dated April 20, 2011 (Dkt. 56) ("City Reply"), at 4.)

To the extent Keitt's Section 1983 claims (or his Section 1985 and 1986) claims are premised on a violation of the IDEA or any other provision relating to education services for individuals under 21, his claims are indeed untimely under the same analysis applicable to his IDEA claims.[20]  Despite the City's contention, however, Keitt's Section 1983, 1985 and 1986 claims are not "*all* predicated on an alleged failure by the [City] Defendants to provide him with a free appropriate public education" to which he was not entitled after age 21.  (*See* City Reply at 3-4.)  To the contrary, Keitt asserts claims arising after he reached the age of 21 that are independent of the relief he seeks under the IDEA.  For example, Keitt alleges that, as an adult at Rikers Island, he was "required to attend Standard/Basic educational classes," and that Defendants failed to "provide[ ] reasonable appropriate accommodation."  (Am. Compl. at ¶ 104.)[21]  He also alleges that Defendants have violated his right to procedural due process by essentially providing him with no education or one that was wholly unsuitable, in violation of the property interest created in New York Corrections Law § 136.  (*See id.* at ¶¶ 111-14.)  Thus, the City Defendants' argument that all of Keitt's Section 1983, 1985 and 1986 claims, including any claims arising at Rikers Island, would have accrued no later than 2002, when he reached the

---

[20] New York Education Law Section 3202(7) provides that an individual under 21 who is incarcerated "in a correctional facility maintained by . . . the city of New York . . . is *eligible* for educational services . . . ."  The Second Circuit has held that this section does not give rise to a legitimate expectation of an educational benefit, *Handberry*, 446 F.3d at 354, and Keitt does not rely on this section as the basis for his procedural due process claim.

[21] The Court considers, *infra*, the timeliness of Keitt's claims under the ADA and the Rehabilitation Act.  The Court notes, however, that Keitt's ADA and Rehabilitation Act claims likewise do not turn on any age requirement.

31

age of 21, must be rejected, as at least some of these claims need not turn on any age

requirement.

The Court, however, takes judicial notice of DOCS administrative records reflecting that

on April 20, 2006, Keitt was taken into state DOCS custody, this time to serve an aggregate term

of 23 years' imprisonment.  *See Keitt*, 875 N.Y.S.2d 47 (noting sentencing date of April 4,

2006).  The Court therefore concludes that any claims Keitt asserts under Sections 1983, 1985

and 1986 against the City Defendants, for violations occurring at Rikers Island, accrued while

Keitt was in DOC custody, no later than April 20, 2006, when he knew or should have known of

the alleged failures to provide reasonable accommodations for his disability.

Accordingly, as Keitt did not commence this action until June 2009, his Section 1983,

1985 and 1986 claims against the City Defendants, as well as the State Defendants for the time

periods set forth above, are necessarily time-barred, unless the applicable statute of limitations

could be found to have been tolled.[22]

### c.      Potential Tolling

The Court's analysis that Keitt is not entitled to tolling for his IDEA claims based on his

dyslexia or his ignorance of the law applies equally to his Section 1983, 1985 and 1986 claims

arising in public school, juvenile detention facilities, DOCS custody through September 2003, or

DOC custody through April 2006.  Likewise, for the same reasons discussed above, Keitt's

argument that, had he known that he had a legal claim, he nonetheless would have been stymied

---

[22] In his Complaint in *Keitt v. Annetts*, No. 10 Civ. 157, Keitt alleges that he was taken into
state custody at Downstate Correctional Facility on or about May 20, 2006.  (*Id*. (Dkt. 1)
at ¶ 25).)  Even if Keitt had not been taken into DOCS custody until May 2006, this would not
alter the conclusion reached here regarding the timeliness of his claims, as his Complaint in this
action would still have been filed more than three years later.

in his ability to bring such a claim by DOCS policies, is also insufficient to satisfy his burden of demonstrating that he is entitled to tolling for his Section 1983, 1985 and 1986 claims.

Finally, the Court also considers whether tolling could be available to Keitt under the Second Circuit's recent decision holding that prisoners are entitled to tolling during the period that they are actively exhausting their administrative remedies by pursuing grievance procedures, as required by the Prison Litigation Reform Act ("PLRA").  *See Gonzalez v. Hasty,* No. 07-1787-pr, __ F.3d __, 2011 WL 2463562, at *3 (2d Cir. June 22, 2011).  PLRA exhaustion cannot assist Keitt in tolling the statute of limitations, however, because the exhaustion process could not toll the limitations period after Keitt was no longer in City custody, and, as set out above, Keitt did not commence this action until more than three years after he left such custody.  Keitt has therefore failed to satisfy his burden of demonstrating that the statute of limitations has been tolled sufficiently to make his claims timely.

Accordingly, I recommend that all of Keitt's Section 1983, 1985 and 1986 claims arising out of his time in the public school through 1998, in juvenile detention facilities from 1995-97, in DOCS incarceration from September 23, 2000 to September 10, 2003, or in Rikers Island prior to April 20, 2006, be dismissed as time-barred.[23]

---

[23] The City Defendants also moved to dismiss the Section 1985 and 1986 claims on the ground that Keitt failed to make sufficient allegations of a conspiracy.  (*See* City Defs. Mem. at 18 n.11)  The Court need not reach these arguments, as the Section 1985 and 1986 claims against the City Defendants are time-barred.

33

2.      **Remaining Section 1983, 1985 and 1986 Claims**

All that would then remain of Petitioner's currently-pleaded Section 1983, 1985, and 1986 claims would be those against the State Defendants arising during his incarceration at Elmira.[24]  (*See* n.18, *supra*.)

a.      **Adequacy of Pleading**

The State Defendants do not seek to dismiss, on the merits, the Section 1985 and 1986 claims against them, but they do move to dismiss Keitt's Section 1983 claims against DOCS Commissioner Fischer, on the ground that Keitt has failed to allege adequately that Fischer was personally involved in any violation of Keitt's constitutional rights.  (State Defs. Mem. at 15-17.)  The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations marks and citation omitted).  Mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 34 F.3d 431 (2d Cir. 2003) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).

While the fact that an official holds a supervisory position is, standing alone, insufficient to establish that official's liability for the acts of his subordinates, there are several ways in which a supervisory official may be found personally liable for violating a plaintiff's constitutionally protected rights. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  The supervisory official may be deemed to have personal involvement where he:  (1) directly

---

[24] Keitt's Section 1983, 1985 and 1986 claims against SED – which would presumably all relate to his treatment in the public schools – would all be time-barred, however, for the reasons discussed above.

participated in the infraction; (2) failed to remedy the wrong even after learning of a violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) acted in a grossly negligent manner in managing subordinates who caused the unlawful condition or event; or (5) demonstrated deliberate indifference to the constitutional rights of the plaintiff by failing to act on information demonstrating that unconstitutional practices were taking place.  *See id.*

In the Amended Complaint, Keitt alleges that Fischer "knew or should have known" of his ongoing problems because "many grievances were appealed to finality, as well as tier hearing tickets . . . ." (Am. Compl. at ¶¶ 192-94 (alleging that Fischer's "personal involvement stems from the fact [that] disciplinary appeals claiming violations, abuses were appealed to him as well as complaints and grievances appealed to finality in complete specifics").)  Moreover, in his opposition to the State Defendants' motion, Keitt contends that "[w]hen grievances are filed and sent to Commissioner Fischer, he has constantly denied plaintiff accommodations . . . and an education by upholding the decisions to deny plaintiff's grievance . . . . He has full knowledge." (Pl. (State) Opp. at 5.)[25]  Keitt further argues that Defendants have an "ongoing practice" of deliberately and intentionally excluding him from meaningfully participating in education programs.  (*Id*. at 3.)  Liberally construed, Keitt alleges that Fischer learned of the ongoing problem through appeals and failed to remedy it.  Keitt thus argues that, under the second *Colon*

---

[25] While the Court generally may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss, the requirement that a *pro se* plaintiff's allegations be construed liberally makes it appropriate for the Court to consider factual allegations made in the plaintiff's opposition memorandum, as long as they are consistent with the complaint.  *Gill v. Mooney*, 824 F.2d 192, 194-95 (2d Cir. 1987).

factor (*i.e.*, failing to remedy the wrong even after learning of a violation through a report or appeal), Fischer has been personally involved.

The State Defendants contend that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster – a supervisor is only held liable if that supervisor creates a policy or custom under which unconstitutional practices occurred."  (State Defs. Mem. at 16 (citing *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009)).  In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the plaintiffs brought equal protection and discrimination claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which requires plaintiffs to demonstrate defendants' discriminatory intent.  In that context, the Supreme Court rejected the argument that a supervisor's mere knowledge of a subordinate's discriminatory purpose amounts to the supervisor violating the Constitution.  The Second Circuit has not yet addressed whether *Iqbal* affects the five categories of conduct that give rise to supervisory liability under *Colon*.

A number of courts in this district have rejected the broad reading of *Iqbal* that the State Defendants propose, reasoning that "where the claim does not require a showing of discriminatory intent, the personal involvement analysis set forth in *Colon* should still apply." *Thomas v. Calero*, No. 09 Civ. 5209 (LTS) (MHD), 2011 WL 1532058, at *13 (S.D.N.Y. Mar. 17, 2011) (Report & Recommendation) (citing *Qasem v. Toro*, 737 F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010)), *adopted by* 2011 WL 1532061 (S.D.N.Y. Apr. 20, 2011); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 346-47 (S.D.N.Y. 2010); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)*; see also Plair v. City of New York*, No. 10 Civ. 8177, 2011 WL 2150658, at *4 (S.D.N.Y. May 31, 2011) (noting that, "following *Iqbal*, other judges in the Second Circuit have continued to cite all five of the *Colon* categories as the bases for

establishing supervisory liability in cases" where intentional discrimination is not at issue).[26]
This Court finds this reasoning persuasive.

At least some of Keitt's Section 1983 claims do not require intentional discrimination.
For example, Keitt alleges that his right to procedural due process was violated because he
received no education or one wholly unsuited to the goal of rehabilitation. *See Clarkson v.
Coughlin*, 898 F. Supp. 1019 (S.D.N.Y. 1995) (finding that N.Y. Corrections Law § 136 confers
upon New York inmates a protected property interest in an educational program, which, on the
basis of available data, seems most likely to further the process of socialization and
rehabilitation, and granting summary judgment in favor of a class of deaf prisoners because
"they effectively received no education or education grossly unsuited to the goals of
socialization or rehabilitation").[27]   Keitt also asserts that the State Defendants violated his right
to procedural due process by failing to provide accommodations for his disability in disciplinary
hearings.  (*See, e.g.,* Am. Compl. at ¶ 245.)  As neither of these due process claims requires a
showing of intentional discrimination, the Supreme Court's decision in *Iqbal* does not alter the
supervisory liability analysis established in *Colon*.

---

[26] *But see Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive
failure to train claims pursuant to [S]ection 1983 have not survived the Supreme Court's recent
decision in *Ashcroft v. Iqbal*.").

[27] Although the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), cautioned against
relying on the language in statutes and regulations to determine whether a protected interest has
been created, "*Sandin* was concerned with the proper definition of *liberty* interests, not property
interests.  Perhaps for that reason, this Circuit has continued to focus on the type of language
used in a statute that is alleged by a party to have created a property interest."  *Handberry*, 446
F.3d at 354, n.6.  To the extent Keitt asserts a procedural due process claim based on *Clarkson*,
the State Defendants have not moved to dismiss Keitt's claim on the merits.

The only question, then, is whether Keitt's allegations are actually sufficient at this stage, under the second *Colon* factor, to allege that Commissioner Fischer was personally involved in the Section 1983 violations at issue.  The State Defendants, relying on *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010), contend that the Commissioner's mere receipt of a letter or grievance is insufficient to demonstrate personal involvement.  (*See* State Defs. Mem. at 16.)[28]

"Courts in the Second Circuit are divided on whether a supervisor's 'review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act.'" *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (citing *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009)).

> Some courts have dismissed claims founded on the denial of a grievance . . . , some courts have found personal involvement where a grievance adjudicator investigated the prisoner's complaint, others have made a distinction between a *pro forma* denial and a detailed response to a grievance, and still others have decided that personal involvement may be found where the grievance alleges an ongoing constitutional violation such that the supervisory official who reviews the grievance can remedy it directly.

*Braxton v. Nichols*, No. 08 Civ. 8568, 2010 WL 1010001, at *9 (S.D.N.Y. Mar. 18, 2010) (citations and quotations omitted).  Given this "uncertainty in the law," the Court, in *Braxton,* declined to grant the defendants' motion to dismiss Corrections Office Review Committee

---

[28] In *Mateo*, the Court held that there was no sufficient allegation that Commissioner Fischer was personally involved where Fischer allegedly sent a letter to the prisoner explaining that the prisoner had provided insufficient information to support his allegations.  682 F. Supp. 2d at 430.  Because the prisoner in *Mateo* did not detail the violation in his letter to Fischer, Fischer could not have "known" about the violation from the letter.  *Id.*

("CORC") panel members for lack of personal involvement where these defendants had allegedly denied plaintiff's grievance. *Id.*

Liberally construing Keitt's Amended Complaint, Keitt's allegations that he repeatedly gave Commissioner Fischer complete details of the failure to accommodate, and that Fischer had "full knowledge" of the refusal to accommodate Keitt's disability from both grievances and disciplinary appeals, but that Fischer failed to take action to remedy the ongoing violation, suffice at this stage to plead personal involvement. I therefore recommend denying the State Defendants' motion to dismiss the claims against Fischer for lack of personal involvement.

**b.    11th Amendment Immunity and Available
Relief, Under Sections 1983, 1985 and 1986**

The 11th Amendment bars suit in federal court against a state or its agencies, unless the state has waived immunity to suit or Congress has validly abrogated its immunity. *Huang v. Johnson*, 252 F.3d 65, 69-70 (2d Cir. 2001). In this case, there has been no waiver of immunity by the state, and Section 1983 was not intended to abrogate the states' immunity. *See Quern v. Jordan*, 440 U.S. 332, 343-44 (1979). Congress has also not abrogated the 11th Amendment immunity of states under Sections 1985 and 1986. *See Qader v. Cohen & Slamowitz*, No. 10 Civ. 1664 (GBD), 2011 WL 102752, at *3 (S.D.N.Y. Jan. 10, 2011) (holding that state defendants enjoy 11th Amendment immunity from suit under Sections 1983, 1985 and 1986). Any of Keitt's remaining 1983, 1985 and 1986 claims against the State of New York and its agencies, including any claims for damages, are therefore barred by the 11th Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (holding that 11th Amendment bars claims against state "regardless of whether monetary damages, equitable relief, or retrospective declaratory relief is sought").

As to the remaining individual state defendants (Fischer, Fusco, Reynolds, Bradt, Livermore and Lepkowski), Keitt's claims under Sections 1983, 1985 and 1986 should be held to be limited, based on the type of relief he seeks, as follows:

### i.    Damages

Where a state official is sued for damages in his official capacity, such suit is deemed to be one against the state. *Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974) (holding that federal court may award an injunction that governs state official's future conduct notwithstanding the 11th Amendment, but may not award retroactive monetary relief).  Thus, to the extent that Keitt is suing the individual state defendants in their official capacities for monetary relief under Sections 1983, 1985 and 1986, such claims are also barred by the 11th Amendment.

The 11th Amendment, however, does not bar actions for damages against state officials in their personal capacities, although such actions may, of course, still be subject to dismissal on some other basis. *Jing Gan*, 996 F.2d at 529.  Thus, the 11th Amendment does not bar Keitt's claims under Sections 1983, 1985 and 1986 for damages against Fischer, Fusco, Reynolds, Bradt, Livermore and Lepkowski in their personal capacities.  In addition, Keitt's transfer to Attica does not moot his action for monetary damages for harm allegedly suffered during his prior incarceration.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).

The State Defendants move to dismiss Keitt's request for punitive damages as to his Section 1983 claims.  (State Defs. Mem. at 12.)  With respect to claims under Section 1983, punitive damages may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade,* 461 U.S. 30, 56 (1983).  "To be entitled to punitive

40

damages, a claimant must show a 'positive element of conscious wrongdoing.'" *Frank Sloup Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 147 (E.D.N.Y. 2011) (citing *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 211 (2d Cir. 2006)).  As previously set forth, Keitt has alleged "conscious wrongdoing" or "callous indifference" as to at least some of the individual defendants.  (*See, e.g.,* Am. Compl. at ¶ 270 (alleging that Fusco was "indifferent to his disability [and] willing to punish him because he could not keep up with other students").)  Given these allegations and the fact that Keitt has not yet had the benefit of any discovery, I recommend denying the State Defendants' motion to dismiss Keitt's demand for punitive damages as to his Section 1983 claims against the individual defendants, in their personal capacities.

### ii.   Injunctive Relief

Turning to Keitt's request for injunctive relief, the 11th Amendment does not bar suits against state officials in their official capacities, where those suits seek prospective injunctive or declaratory relief for violations of federal law.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that a suit challenging the constitutionality of a state official's action is not a suit against the state); *Edelman*, 415 U.S. at 666-67 (holding that a federal court may award an injunction that governs a state official's future conduct).  Keitt seeks injunctive relief under Sections 1983, 1985 and 1986 from Bradt, Lepkowski and Livermore.  (*See* Am. Compl. at 55, 59-61).[29]  Under *Ex Parte Young*, the 11th Amendment does not bar Keitt from seeking injunctive relief against these defendants.

---

[29]  Keitt names Fischer in both his individual and official capacity but seeks only damages (and not injunctive or declaratory relief) from him.  (*See* Am. Compl. at ¶ 187.)

The State Defendants argue, however, that Keitt's claims for injunctive relief against Livermore and Lepkowski are moot because Keitt has been transferred to Attica and, consequently, there is no reasonable expectation that Livermore and Lepkowski, who continue to be employed at Elmira, would cause him further injury.  (*See* State Defs. Mem. at 11.)[30]  For a federal court to retain jurisdiction over a case, an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed."  *Prins*, 76 F.3d at 506 (citing *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  A case is deemed moot where the problem sought to be remedied has ceased or where there "is no reasonable expectation that the wrong will be repeated."  *Id*.  Under this reasoning, a transfer from a prison facility moots an action for injunctive and declaratory relief against the transferring facility because the prisoner is no longer located there.  *Id.*; s*ee also Williams v. Goord*, 142 F. Supp. 2d 416, 420 n.3 (S.D.N.Y. 2001) (finding request for declaratory relief regarding practices at facility to be moot after prisoner was transferred); *Graham v. Perez*, 121 F. Supp. 2d 317, 325 (S.D.N.Y. 2000) (finding request for injunctive relief to be moot where prisoner was no longer confined at facility).

Keitt alleges that Livermore threatened him with misbehavior reports and refused to allow him to attend other programs at Elmira because Keitt could not meaningfully participate in adult basic education classes without accommodations.  (*See* Am. Compl. at ¶¶ 273-76.)  Keitt further alleges that Lepkowski, whom he describes as the "Educational Supervisor" at Elmira, discriminated against him because of his disability and refused to provide reasonable

---

[30] The State Defendants do not challenge Keitt's claims for injunctive relief against Bradt as moot, perhaps because Bradt, who was Superintendent of Elmira when Keitt was there, is now Superintendent of Attica, where Keitt is currently located.  Although Keitt was transferred to Attica after the filing of his Amended Complaint, and thus could not have pleaded any claims directed specifically to his treatment at that facility, he does seek to add such claims in his proposed Second Amended Complaint.

accommodations for his disability in education programs.  (*See id.* at ¶¶ 260-64.)  Because Keitt

is no longer at Elmira, "the relief sought can no longer be given or is no longer needed."

*Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).  Moreover, mere conjecture that Keitt

could be returned to Elmira in the future is insufficient.  *See United States v. W. T. Grant Co.*,

345 U.S. 629, 633 (1953) ( mere suggestion that plaintiff might be returned to prison will not

suffice to show that "there exists some cognizable danger of recurrent violation").  I therefore

recommend granting the State Defendants' motion to dismiss as moot Keitt's claims for

injunctive relief against Livermore and Lepkowski.

        In sum, I recommend that Keitt's Sections 1983, 1985 and 1986 claims be permitted to

proceed at this time, to the extent that Keitt is seeking damages, including punitive damages,

from defendants Fischer, Fusco, Reynolds, Bradt, Livermore and Lepkowski, in their personal

capacities.  I recommend that any other damages claims that Keitt is asserting under these

statutes be dismissed for the reasons discussed above.  I further recommend that Keitt's

Section 1983, 1985 and 1986 claims for injunctive relief against the State of New York and

DOCS be dismissed as barred by the 11th Amendment, and that these claims for injunctive relief

against defendants Livermore and Lepkowski be dismissed as moot.  As to Keitt's claim for

injunctive relief against Bradt – a claim that is not the subject of Defendants' motion (*see* n.30,

*supra*) – I recommend that the claim be dismissed *sua sponte* as moot, without prejudice to

Keitt's reasserting such a claim with regard to his present treatment at Attica, should Keitt be

granted leave to amend his pleading to include claims arising from his current incarceration

there.

F.      **ADA and Rehabilitation Act Claims**

1.      **Statute of Limitations**

a.      **Applicable Limitations Period**

Defendants contend that Keitt's claims under Title II of the ADA and Section 504 of the Rehabilitation Act are untimely.  Neither of these Acts includes an express limitations period.  As set forth previously, when Congress has not established a time limitation for a federal cause of action, "the 'settled practice [has been] to adopt a local time limitation as federal law if it [is] not inconsistent with federal law or policy to do so.'"  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004) (quoting *Wilson v. Garcia*, 471 U.S. 261 (1985)).  This practice of borrowing state limitations periods has generated "a host of issues," though, *Jones,* 541 U.S. at 378, leading Congress, on December 1, 1990, to enact 28 U.S.C. § 1658 to supply "a general 4-year limitations period for any federal statute subsequently enacted without one of its own." *Id.* at 381 n.14 (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)).[31]

In 2004, the Supreme Court held that Section 1658's four-year limitations period may also apply to a cause of action based on a post-1990 *amendment* to a pre-existing statute.  *See Jones,* 541 U.S. at 384, n.18 ("[C]ourts will have to determine whether the amendment clarified existing law or created new rights and liabilities.").  The Court therefore reversed the Seventh Circuit's holding that the state personal injury statute of limitations applied to the plaintiff's claims under 42 U.S.C. § 1981, reasoning that her particular causes of action were created by the 1991 amendments to Section 1981 and thus were governed by Section 1658. *See id.* at 383.  The

---

[31] Section 1658 provides as follows:  "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C. § 1658.

Court explained that "[a]n amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute," and concluded that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. *Id.* at 381-82.

Section 1658's four-year statute of limitations would thus apply to Keitt's Title II ADA or Rehabilitation Act claims, either if these federal statutes were enacted after December 1, 1990, or if Keitt's claims were made possible by a post-1990 amendment to these statutes.

### i.   Title II of the ADA

Title II of the ADA was *enacted* before December 1, 1990, but became *effective* after that date, leading to some uncertainty as to whether the four-year limitations period of Section 1658 should apply to claims raised under that Title. *See Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 326 (D. Vt. Sept. 28, 2007) (noting that, because of the effective date of Title II of the ADA, "some courts have suggested that [S]ection 1658's four-year period might apply") (citation omitted). The plain language of Section 1658, however, refers to Acts of Congress "enacted" after the enactment of Section 1658, *see* 28 U.S.C. § 1658, and, in light of that, courts within this Circuit that have reached the issue have generally borrowed a state three-year limitations period, to apply to ADA Title II claims. *See, e.g., Scaggs v. N.Y. Dep't of Educ.*, No. 06 Civ 799, 2007 WL 1456221, at *9 (E.D.N.Y. May 16, 2007) ("New York's three-year statute of limitations, rather than federal four-year statute of limitations, should apply to plaintiff's ADA claims."); *Maccharulo v. Gould*, 643 F. Supp. 2d 587 (S.D.N.Y. Aug. 14, 2009) ("Claims asserted under Title II of the ADA . . . [are] governed by the applicable state statute of limitations for personal injury actions") (*relying on Gardner v. Wansart*, No. 05 Civ 3351, 2006

WL 2742043 (S.D.N.Y. Sept. 26, 2006)); *see also* City Defs. Mem. at 12 (citing *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828 (S.D.N.Y. Sept. 28, 2009)).

Based on the statutory language and this persuasive case authority, New York's three-year personal injury limitations period should be found to apply to Keitt's claims under Title II of the ADA, unless his claims were "made possible" by a post-1990 amendment to the Act. *Jones,* 541 U.S. at 382.  Keitt has not argued that his claims arise under such an amendment, and, to the extent his claims are specifically premised on Section 12132 of the Act,[32] that provision has not been amended.  In fact, it appears that the only amendment to the ADA that might relate to Keitt's claims is the AMA Amendments Act of 2008 (the "ADAAA"), which was enacted on January 4, 2008 and which took effect on January 1, 2009.  Yet, that amendment (which broadened the definition of "disability" under the statute), does not apply retroactively to claims that arose before its effective date, *see Villanti v. Cold Spring Harbor Central Sch. Dist.*, 733 F. Supp. 2d 371 (E.D.N.Y. 2010); *O'Neil v. Hernandez*, No. 08 Civ. 1689, 2010 WL 1257512 (S.D.N.Y. Mar. 25, 2010); and the State Defendants have not sought dismissal on statute-of-limitations grounds of claims arising from Keitt's post-January 2009 incarceration at Elmira.

Thus, as to those ADA claims which the State Defendants contend are time-barred (*i.e.,* claims arising prior to the January 1, 2009 effective date of the ADAAA), a three-year statute of limitations should apply.

---

[32] Section 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

### ii.   Rehabilitation Act

Keitt's claims under the Rehabilitation Act are also governed by the three-year state personal-injury statute of limitations, *see Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992) ("We now hold that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions"), and no Rehabilitation Act amendment alters that analysis.  Keitt's claims appear to be premised on Section 794(a) of that Act,[33] which has not been substantively amended, and Keitt has not argued that his claims rely on any other amendment that might operate to distinguish this case from *Morse*.[34]  Thus, this Court will apply a three-year limitations period to Keitt's Rehabilitation Act claims.

### b.   Accrual of Keitt's Claims and Unavailability of Tolling

In considering Keitt's Section 1983, 1985 and 1986 claims, the Court previously concluded that such claims accrued on the following dates:  (1) claims arising in public schools accrued not later than 1998; (2) claims arising in juvenile detention facilities accrued not later than 1997; (3) claims arising during first DOCS incarceration accrued not later than September 2003; (4) claims arising at Rikers Island accrued not later than April 20, 2006.  The Court also

---

[33] Section 794(a) provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

[34] Although Section 794(d) of the Rehabilitation Act was amended in 1992, Keitt's claims do not appear to arise under that provision of the Act, and thus, in determining the appropriate statute of limitations for Keitt's claims, the Court need not consider that amendment here. *Cf. Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (noting that state personal injury limitations period applied to clams under Section 794(a) of the Rehabilitation Act, but that the plaintiff's failure-to-transfer claims were made possible by October 29, 1992 amendments to 29 U.S.C. § 794(d), and thus were governed by the longer limitations period contained in Section 1658).

concluded that Keitt's claims were therefore barred by the three-year limitations period applicable to claims under Section 1983 and 1985, and that Keitt had failed to satisfy his burden of demonstrating tolling sufficient to make his claims timely.

The same analysis applies to Keitt's claims under the ADA and Rehabilitation Act. The latest any of these claims could have accrued is April 2006, and Keitt did not file his Complaint until June 22, 2009, at which time his ADA and Rehabilitation Act claims were barred by the applicable three-year statute of limitations. The Court has previously concluded that Keitt is not entitled to equitable tolling for his Section 1983, 1985 and 1986 claims by virtue of his disability, his ignorance of the law, DOCS policies that would have stymied his ability to file these claims had he known of them, or the time required to exhaust his remedies under the PLRA. The Court likewise concludes that Keitt has not met his burden of demonstrating equitable tolling with respect to his ADA and Rehabilitation Act claims. I therefore recommend granting Defendants' motions to dismiss, as time-barred, the ADA and Rehabilitation Act claims that arose during the periods in which Keitt was in public school, juvenile detention facilities, DOCS custody through September 2003, and Rikers Island through April 2006.

To the extent, however, that Keitt's ADA and Rehabilitation Act claims arose during the time when he was at Elmira, his claims are not untimely, and the Court will therefore consider the State Defendants' remaining arguments as to such claims.[35]

---

[35] Keitt's ADA and Rehabilitation Act claims against SED would all be time-barred. (*See* n.24, *supra*.)

2.      **Remaining ADA and Rehabilitation Act Claims**

a.      **Adequacy of Pleading**[36]

The State Defendants move to dismiss Keitt's ADA claims for the denial of reasonable

accommodations in education on the ground that these statutes do not require that substantively

different services be provided to the disabled.  (*See* State Defs. Mem. at 14) (citing *Wright v.*

*Giuliani*, 31 F. Supp. 2d 301, 311 (W.D.N.Y. 1998).)  They also suggest that the ADA and

Rehabilitation Act claims should be analyzed together.  (*See id.* at 8, n.6).  The Court agrees that,

with respect to the arguments on merits, the same analysis applies to both claims.  *See*

*Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003).

In order to establish a violation under the ADA, a plaintiff must demonstrate that:  (1) he

is a qualified individual with a disability; (2) the defendants are subject to the ADA; and

(3) he was denied the opportunity to participate or benefit from defendants' services, programs

or activities, or was otherwise discriminated against by defendants by reason of his disability.

*Henrietta D.*, 331 F.3d at 272.  For purposes of their motion, the State Defendants assume that

dyslexia is a disability for purposes of the ADA, and thus the Court does not reach this

question.[37]

---

[36] "While courts normally consider Eleventh Amendment issues before the merits, in the
ADA context, an examination of the merits is the first step of the Eleventh Amendment
analysis." *Elbert v. New York State Dep't of Corr.*, 751 F. Supp. 2d 590, 598 n.5 (S.D.N.Y.
Sept. 30, 2010) (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

[37] In *Keitt v. Annetts*, No. 10 Civ. 157, the Court held that the severity of the dyslexia
determines whether it constitutes a disability for purposes of the ADA.  The Court held that Keitt
had sufficiently alleged in that matter that he had a disability because he had alleged that he was
unable to read or write.  (*Id.* (Order, dated July 25, 2011), at 18; *see also Shaywitz v. American*
*Bd. of Psychiatry and Neurology*, 675 F. Supp. 2d 376, 389 (S.D.N.Y. 2009) (holding, pre-
ADAAA, that "[d]yslexia, a learning disability, clearly falls under the rubric of disability as that
term is defined by the ADA").)

The State Defendants argue that the ADA does not require them to provide additional or different substantive benefits.  (*See* State Defs. Mem. at 14.)  "The central purpose of the ADA is to assure that disabled individuals receive evenhanded treatment in relation to the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998).  To that end, the proper inquiry is whether the modifications plaintiff seeks "serve the purpose of leveling the playing field." *Id.* at 83.  "The statutes do not require that substantial changes be made to [a] program itself," *Zahran v. N.Y. Dept. of Educ.*, 306 F. Supp. 2d 204, 213 (N.D.N.Y 2004), and "the ADA does not establish an obligation to meet a disabled person's particular needs," *Leocata v. Wilson-Coker*, 148 Fed. App. 64 (2d Cir. 2005).  "The ADA requires only that a particular service provided to some not be denied to disabled people." *Wright*, 230 F.3d at 548 (citing *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

The Court of Appeals has "distinguished between (i) making reasonable accommodations to assure access to an existing program, and (ii) providing additional or different substantive benefits." *Wright*, 230 F.3d at 548.  Disabled individuals must be "provided meaningful access through reasonable accommodations . . . without otherwise fundamentally or substantially altering the underlying benefit or program." *Leocata*, 148 Fed. App. at 64.  Put another way:

> Where the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit.  By contrast, where the plaintiffs seek to expand the substantive scope of a program or benefit, they likely seek a fundamental alteration to the existing program or benefit and have not been denied meaningful access.

*Wendel v. State of New York*, 547 F. Supp. 2d 290, 304 (E.D.N.Y. July 23, 2008) (citing *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008)).  As for accommodations, the ADA requires only "reasonable accommodations," not necessarily the

particular accommodations an individual would prefer.  *Jaramillo v. Prof'l Examination Serv.*, 544 F. Supp. 2d 126, 131 (D. Conn. 2008).

Some of the relief Keitt seeks in his Amended Complaint may substantively expand the scope of the adult basic education program.  *See, e.g., Keitt v. Annetts*, No. 10 Civ. 157 (Order, dated July 25, 2011), at 18 (finding that Keitt's request for "creation of new programs," like that of the plaintiff in *Shaw v. New York State Dep't of Corr. Servs.*, No. 09 Civ. 2463 (DLC), 2010 WL 2143672, at *2 (S.D.N.Y. May 27, 2010), who sought a "specialized educational program tailored to inmates with dyslexia," failed to state a claim because the ADA does not require different substantive benefits for the disabled).

Yet the Court cannot agree that all of the accommodations that Keitt has requested at Elmira – including allowing him to have more time to complete a test, to circle multiple choice answers rather than fill in a corresponding bubble, to have another prisoner read material to him or to listen to an audiobook to cover the same material being taught in the adult basic education class – would "fundamentally alter" or "substantially expand the scope" of the adult basic education classes.  (*See* Am. Compl., Ex. 2 (Keitt's Request for Reasonable Accommodation at Elmira dated February 2, 2010) ("The accommodation requested is:  large print, books on tape, note taker, reader, computer, to circle multiple choices in test books, extended time for test taking.").)[38]  Indeed, DOCS has specifically defined similar requests as "reasonable accommodations" in its directive relating to inmates with vision or hearing impairments.  (*See* Compl., Ex. H (Directive No. 2612, dated Nov. 16, 2007 ("Reasonable accommodations might

---

[38] In *Shaw*, where the Court reached a different result, there is no indication that the Court considered the particular accommodations requested here.  *See* 2010 WL 2143672, at *2 (noting that the plaintiff sought "a specialized education program tailored to individuals with dyslexia").

include the following:  . . . providing readers, interpreters, note takers" and "the following

assistive devices will be made available as needed:  . . . large print books, books on tape").)  At

the pleading stage, Keitt has sufficiently alleged that at least some of the accommodations he

sought at Elmira would allow him to overcome obstacles to his meaningful participation in

existing programs without fundamentally altering the program.  I therefore recommend denying

the State Defendants' motion to dismiss the ADA claim on this basis.  Given that the same

analysis applies to Keitt's claims under the Rehabilitation Act for failure to accommodate him in

existing educational service, I also recommend denying the State Defendants' motion to dismiss

the Rehabilitation Act claims on the merits.

### b.     Potential Immunity and Available Relief Under the ADA and Rehabilitation Act

#### i.     11th Amendment Immunity as to ADA

In the text of the ADA, Congress unambiguously purported to abrogate states'

11th Amendment immunity for claims under Title II of that Act.  *See* 42 U.S.C. § 12202 ("A

State shall not be immune under the eleventh amendment to the Constitution of the United States

from an action in Federal or State court . . . for a violation of this chapter.").  Nonetheless,

relying on *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2d Cir. 2001),

the State Defendants argue that they are entitled to 11th Amendment immunity with respect to

Keitt's ADA claims (*see* State Defs. Mem. at 9).  In *Garcia*, after an extensive examination of

the scope of Congressional authority to abrogate the states' 11th Amendment immunity from

ADA claims, the Second Circuit concluded that, for a plaintiff to be able to maintain a monetary

claim against a state for a Title II violation, the plaintiff would need to establish that the

violation "was motivated by discriminatory animus or ill-will based on the plaintiff's disability."

52

280 F.3d at 111.  The State Defendants argue that Keitt's ADA claims against them lack

allegations of such discriminatory animus or ill-will.  (*See* State Defs. Mem. at 9.)

On this point, this Court notes that, while *Garcia* rested on decisions of the Supreme

Court, including *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001), and *City

of Boerne v. Flores,* 521 U.S. 507 (1997), more recent Supreme Court decisions may cast some

doubt on *Garcia*'s continued viability, *see Tennessee v. Lane*, 541 U.S. 509, 522–23 (2004)

(finding Congress's abrogation of 11th Amendment immunity was constitutional with respect to

ADA claims implicating the right of access to the courts); *United States v. Georgia*,

546 U.S. 151 (2006) 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) (finding abrogation of

immunity permissible for Title II claims where conduct underlying the ADA violation also

implicated a prisoner's Eighth Amendment rights); *see also Goonewardena v. New York*,

475 F. Supp. 2d 310, 323 n.2 (S.D.N.Y. 2007) ("[I]t is far from clear whether the discriminatory

animus requirement [set forth in *Garcia*] remains in place following the Supreme Court's

decisions in *Lane* and *Georgia*.").  Yet, regardless of the direction of the law's development in

this area, which may serve to weaken the State Defendants' immunity defense, this Court finds

that Keitt's allegations would, in any event, suffice at this stage to meet the *Garcia* criteria.

Keitt alleges, for example, that defendant Fusco, his teacher at Elmira, "instructed [him]

to quit requesting . . . aids and accommodations because the prison do[es] not provide such to

learning disabled [dyslexic] inmates," and "threatened to issue him a misbehavior report for . . .

offenses he never committed."  (Am. Compl. at ¶ 269.)  Keitt further alleges that Fusco was

"indifferent to his disability and willing to punish him because he could not keep up with other

students . . . ." (*Id.* at ¶ 270.)  More generally, Keitt alleges that he was "threatened with

misbehavior reports because he [could not] do the class work projects" (*id.* at ¶ 274) and that he

"has suffered disciplinary sanctions for not being able to read, write or do assignments and [as a result was] confined to a cell for approximately thirty (30) days" (*id.* at ¶ 154). As these allegations suggest discriminatory animus against Keitt because of his alleged disability, I recommend rejecting the State Defendants' argument that, under the 11th Amendment, the State of New York, its agencies, and it employees in their official capacities, should be found immune from Keitt's damages claims brought pursuant to Title II of the ADA.

### ii. 11th Amendment Immunity as to Rehabilitation Act

Congress enacted the Rehabilitation Act pursuant to its authority under the Spending Clause, U.S. Const. art. I, 8, cl. 1. *See Garcia*, 280 F.3d at 113. When acting pursuant to the Spending Clause, Congress may require states to waive their immunity from suit as a condition of accepting such funds. *See id.* As to claims under the Rehabilitation Act, Congress intended acceptance of federal funds by states to constitute a waiver of the states' 11th Amendment immunity. *Id.*

A state may only effectively waive its sovereign immunity, however, through an "intentional relinquishment or abandonment of a known right or privilege." *Id.* at 114 (*quoting College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)). In 2001, the Supreme Court, in *Garrett*, called into question Congress's purported abrogation of the states' 11th Amendment immunity under Title II of the ADA; later that year, the Second Circuit, in *Garcia,* went farther down that path, as noted above. (*See supra*, at 52-53.) Prior to these decisions, New York's acceptance of federal funds could not have constituted a knowing waiver of its sovereign immunity from claims under the Rehabilitation Act, as it would have appeared, at that time, that the state's 11th Amendment immunity from claims under Title II of the ADA had already been abrogated by Congress, and the "proscriptions

54

of Title II and Section 504 [of the Rehabilitation Act] [were] virtually identical."[39]  *Garcia,* 280 F.3d at 113-15.  Where a state could reasonably have believed that its sovereign immunity had already been lost, its acceptance of federal funds could not be deemed an intentional relinquishment of its immunity.  *See id.*

After the 2001 decisions in *Garrett* and *Garcia*, however, New York State's continued acceptance of federal funds would constitute a valid waiver of sovereign immunity, as the state could no longer rely on the belief that the Congressional dictates in Title II of the ADA and Section 504 of the Rehabilitation Act necessarily abrogated state immunity for all such claims. *See Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006) (finding that the state's continued acceptance of funds constituted valid waiver of sovereign immunity for Rehabilitation Act claims after either September 25, 2001, when *Garcia* was decided, or February 25, 2001, when *Garrett* was decided).

This Court has already recommended, above, that all of Keitt's Rehabilitation Act claims that arose prior to 2001, when *Garrett* and *Garcia* were decided, should be dismissed as time-barred.  All of Keitt's remaining Rehabilitation Act claims arose at Elmira and postdate both of those decisions.  New York State's continued acceptance of federal funds waives its sovereign immunity with respect to these later Rehabilitation Act claims (arising at Elmira) because there can be no argument that, during that period, the state's continued acceptance of federal funds was not a knowing relinquishment of its 11th Amendment immunity.  I therefore recommend the

---

[39] In *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), the Supreme Court held that states were entitled to 11th Amendment immunity from suit under the Rehabilitation Act.  In response, in 1986, Congress amended the Rehabilitation Act to provide that a state "shall not be immune under the [11]th Amendment . . . from suit in Federal court for a violation of Section 504 of the Rehabilitation Act of 1973."  42 U.S.C. 2000d-7.

rejection of the State Defendants' argument that it is entitled to 11th Amendment immunity with respect to Keitt's Rehabilitation Act claims that arose during the period of his incarceration at Elmira.

### iii.   Damages

Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that "[t]he real party in interest in an official-capacity suit is the government entity"); *Andino v. Fischer*, 698 F. Supp. 2d 362 (S.D.N.Y. 2010) ("[B]ecause the ADA targets public entities, individuals cannot be named as defendants in their individual capacities."); *Mabry v. Neighborhood Defender Service*, 769 F. Supp. 2d 381 (S.D.N.Y. 2011) ("[T]he ADA does not provide for personal liability on the part of non-employer individuals, except in the case of claims under Title II of the ADA asserted against individuals in their official capacity."). Keitt therefore cannot pursue personal capacity claims against defendants Fischer, Bradt, Reynolds, Fusco, Livermore and Lepkowski under the ADA or Rehabilitation Act. In the absence of 11th Amendment immunity, however (*see supra*), Keitt should be permitted to proceed with his ADA and Rehabilitation Act claims for monetary damages against the State of New York, DOCS, and these individual defendants, in their official capacities.

The State Defendants properly seek to dismiss Keitt's claims for punitive damages under the ADA and the Rehabilitation Act. It is clear that punitive damages "may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act,"[40] *Barnes v. Gorman*,

---

[40] Section 202 of the ADA prohibits discrimination against the disabled by public entities; Section 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients

536 U.S. 181, 190 (2002); s*ee also Andino*, 698 F. Supp. 2d at 383 ("Punitive damages are not available under the ADA."), and I therefore recommend that the State Defendants' motion in this regard be granted.

### iv.    **Injunctive Relief**

Keitt seeks injunctive relief, under the ADA and Rehabilitation Act, (1) enjoining Bradt, named in the Amended Complaint in his now-former capacity as Superintendent of Elmira, from (a) refusing to provide reasonable accommodations in educational programs and disciplinary hearings, and (b) barring prisoners from attending certain programs unless they have a high school diploma or its equivalency, or are enrolled in school, (2) requiring Lepkowski to provide reasonable accommodations for his dyslexia, and (3) requiring Livermore to allow him to attend other programming without regard to his participation in adult basic education until he is provided meaningful accommodations in education.  (*See* Am. Compl. at 55, 59, 61.)[41]

Keitt's ADA and Rehabilitation Act claims for injunctive relief against these individual defendants, in their official capacities, would ordinarily be allowed to proceed.  Once again, however, the State Defendants argue that Keitt's injunctive claims should be dismissed as moot, given his transfer to Attica.  (State Defs. Mem. at 10-11.)  That argument is again persuasive, as Keitt appears to seek injunctive relief relating to the treatment he was allegedly receiving at Elmira, at the time he filed his Amended Complaint.  *See Martin-Trigona*, 702 F.2d at 386 (a claim is moot when the relief sought "can no longer be given or is no longer needed").

---

of federal funding.  *Barnes*, 536 U.S. at 185.

[41] Keitt has not sought injunctive relief against Commissioner Fischer.  (*See* Am. Compl. at 41, ¶ 187.)

I therefore recommend that Keitt's ADA and Rehabilitation Act claims for injunctive relief against defendants Lepkowski and Livermore be dismissed as moot, and that Keitt's claims for injunctive relief against defendant Bradt (claims as to which, again, Defendant's have not moved) be dismissed *sua sponte* as moot, with leave to reassert such a claim against Bradt, in his official capacity, should Keitt be granted leave to amend his pleading to add claims regarding his treatment at Elmira, where Bradt is apparently now employed.  To the extent Keitt is asserting ADA or Rehabilitation Act claims for injunctive relief directly against the State of New York or DOCS, I similarly recommend that those claims be dismissed as moot, although without prejudice to Keitt's reassertion of such claims, should he be granted leave to plead claims arising out of his current incarceration at Attica.

Overall, this Court recommends that Keitt's ADA and Rehabilitation Act claims against the State Defendants be permitted to proceed, only to the extent Keitt seeks compensatory damages, but not punitive damages, against the State of New York and DOCS, as well as Fischer, Bradt, Reynolds, Fusco, Livermore and Lepkowski, all in their official capacities.  I recommend that Keitt's ADA and Rehabilitation against the State Defendants claims otherwise be dismissed, as set forth above.

## II.    MOTION TO SEVER AND TRANSFER CLAIMS ARISING AT ELMIRA

The State Defendants move to sever the remaining claims arising at Elmira, in Chemung County, New York, after Keitt was transferred there on or about October 23, 2009, and to

transfer those claims to the Western District of New York.  (*See* State Defs. Mem. at 17-20.)[42]  If this Court's Report and Recommendation is adopted, however, there would be no claims for the Court to sever because, as set forth above, the only claims that this Court believes should remain, following resolution of Defendants' motions to dismiss, are those arising during Keitt's incarceration at Elmira.  Thus, the State Defendants' motion to sever the claims arising at Elmira should be denied as moot, and the Court should proceed to consider whether the remaining claims should be transferred to the Western District of New York.

A.      **Section 1404(a) Standards**

When venue lies in the district in which the action has been brought, the proper analysis for determining whether to transfer is set forth in 28 U.S.C. § 1404(a).  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[43]  In determining whether transfer to another district would be appropriate, courts should consider a number of factors, including:  (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to

---

[42] A motion to sever is governed by Rule 21 of the Federal Rules of Civil Procedure.  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.

[43] Section 1404(a) and the common-law doctrine of *forum non conveniens* both provide potential legal bases for transfer of cases to another district.  *See Farmanfarmaian v. Gulf Oil Corp.*, 437 F. Supp. 910, 916 (S.D.N.Y. 1977) (noting the distinction between Section 1404 and *forum non conveniens*), *aff'd*, 588 F.2d 880 (2d Cir. 1978).  Because district courts have greater discretion to transfer cases under Section 1404 than they do under the doctrine of *forum non conveniens, see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)), the Court only need analyze the merits of transfer under Section 1404.

sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the

governing law; (8) the weight accorded to plaintiff's choice of forum; (9) trial efficiency; and

(10) the interest of justice, based on the totality of the circumstances. *DealTime.com, Ltd. v.

McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000).

### B.      Transfer Considerations in This Case

As an initial matter, venue is proper in this district because at least one of the named

defendants resides in this district and all Defendants reside in the same state. *See* 28 U.S.C.

§ 1391(b)(1); *Cain v. New York State Bd. of Elec.*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986)

("'Residence' for venue purposes is where the officials involved perform their duties").[44]  It is

clear that Keitt also could have brought this suit in the Western District of New York because

other named defendants (*e.g.*, the individual defendants that work at Elmira) reside in that

district. *See* 28 U.S.C. § 1391(b)(1); *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408,

432 (2d Cir. 2005) (venue can be proper in more than one district; venue is not restricted to the

district with the "most substantial" connection to the events or omissions related to a claim).

Of the factors that should be considered in determining whether transfer would be

appropriate, pursuant to 28 U.S.C. § 1404(a), a few do not weigh strongly in favor of either the

Southern or Western District.  There would be little, if any, difference, between these districts

with respect to the availability of process to compel the attendance of unwilling witnesses (given

that, under applicable law, compulsory process would be available throughout New York State,

---

[44] Venue is determined based upon the parties and allegations at the time the operative complaint is filed, not subsequent events. *See* 28 U.S.C. § 1391(b) (defining proper venue as the judicial district in which "[a] civil action . . . may . . . be brought"); *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 600 (D. Conn. 1986) (explaining that venue must be analyzed based on the state of affairs at the time the action was filed) (citing cases).

*see* Fed. R. Civ. P. 45(b)(2)(C)), the relative means of the parties (given that the incarcerated plaintiff would presumably be transported to any forum requiring his presence for trial), and the forum's familiarity with the governing law.

Moreover, the fact that Keitt has chosen to litigate in this district does not weigh against transfer in this instance.  In general, a plaintiff's choice of forum should be disturbed only if the balance of factors weighs heavily in favor of a transfer.  *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F. Supp. 918, 936 (S.D.N.Y. 1989).  A plaintiff's choice of forum is accorded less deference, though, where plaintiff does not reside in the chosen forum and the operative facts did not occur there.  *See Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994). At the time of filing this action, Keitt was confined at Upstate Correctional Facility in Franklin County, New York, within the Northern District, *see* 28 U.S.C. § 112(a), and he is now confined at Attica, which is within the Western District.  He therefore did not reside in this forum at the time of filing this action and does not reside here now.  Moreover, the operative facts of the remaining claims at Elmira did not occur in this district.  Accordingly, the fact that this action is currently pending in this Court does not militate against its transfer.

The remaining factors all favor transfer to the Western District.  That district would afford a more convenient venue for those involved with litigation of the claims arising at Elmira, as witnesses and many of the individual defendants reside there.  The Western District is also where the operative facts occurred, and, accordingly, it is likely also the location of relevant documents and other sources of proof.  Trial of this case in the Western District would also be more efficient because relevant witnesses and parties, including the *pro se* plaintiff, are located closer to the courthouse there.

In his opposition to the State's motion, Keitt contends that "most nearly all defendants are located within the Southern District of New York." (Pl. (State) Opp. at 13). Of the Defendants named in the Amended Complaint, some are certainly within this District; yet, if the recommendations made in Section I of this Report and Recommendation are adopted, then the claims against many defendants would be dismissed, and none of the remaining defendants would be in this District. Rather, all remaining defendants would be in the Western District. Under those circumstances, the totality of the circumstances would strongly favor transfer of the remaining claims against the State Defendants arising at Elmira to the Western District of New York "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). I therefore recommend that, in conjunction with the other recommendations made above, the State Defendants' motion to transfer be granted.

## III.   KEITT'S MOTION TO AMEND

### A.   Rule 15(a) Standards

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of complaints and provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Although Rule 21 governs the addition of new defendants, in deciding whether to allow joinder under that Rule, the Court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980) (internal quotation and citation omitted); *see Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.") (internal quotation and citation omitted), *aff'd*, 199 F.3d 1321 (2d Cir.1999); *Sheldon v. PHH Corp.*, No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3

(S.D.N.Y. Mar. 4, 1997) ("While plaintiffs' motion [to add a new defendant] properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction. . . . To the extent the limited case law under Rule 21 permits a conclusion, the standard under that rule is the same as under Rule 15."), *aff'd*, 135 F.3d 848 (2d Cir. 1998).

A "motion to amend should be denied if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss, either for failure to state a cause of action, or on another ground. *See Milanese v. Rust-oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Thus, if a proposed amendment would be subject to "immediate dismissal" on some ground, the Court will not permit the amendment. *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999). If, however, the party seeking to amend "has at least colorable grounds for relief, justice . . . require[s]" that its motion be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted). A *pro se* litigant, in particular, should be afforded a reasonable opportunity to amend his complaint to demonstrate the existence of a valid claim. *See, e.g., Satchell*, 745 F.2d at 785 ("A *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint.") (quoting *Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982)).

### B.    Proposed Amendments

By way of his proposed amendment, Keitt seeks:  (1) to add that Defendants "acted with bad faith and gross misjudgment"; (2) to add new claims arising at Elmira after the Amended Complaint was filed, and to join new defendants on those claims (defendants S. Wendevlich and C. Smith); (3) to add new claims arising at Attica after the Amended Complaint was filed, and to add new defendants on the Attica claims (defendants J. Goodrich, J. Whiteford, S. Dolce and P. Chappius); and (4) to re-name Bradt as Superintendent of Attica, instead of Elmira, because Bradt has changed positions.

### 1.    Proposed Modification of Claims Directed to City Defendants

The City Defendants contend that the only amendment that would relate to them is the proposed addition of the allegation that Defendants "acted with bad faith and gross misjudgment." (*See* Memorandum of Law in Opposition to Plaintiff's Motion Seeking Leave to Amend the Complaint, dated April 20, 2011 (Dkt. 57) at 2-3 (citing Pl. Mot. at 2)).  This proposed new allegation appears to be intended to buttress Keitt's claim that the City Defendants violated the Rehabilitation Act, by denying him a free, appropriate public education to which he was entitled under the IDEA.  In order to recover under the Rehabilitation Act, a plaintiff must demonstrate that (1) he is a disabled person under the Act; (2) he has been excluded from benefits of a federally funded program or special services; and (3) the exclusion is because of his disability.  *See Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1990).  Where the plaintiff endeavors to satisfy the second prong for a Rehabilitation Act claim by showing a denial of a free, appropriate public education under the IDEA, he cannot merely show a violation of the IDEA; he must also prove "bad faith or gross misjudgment."  *Gabel ex rel. L.G. v. Bd. of Educ.*, 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005).

This Court, however, has recommended that Keitt's claims under the IDEA, as well as any Section 1983, Rehabilitation Act, or ADA claims premised solely on a violation of the IDEA, be dismissed as untimely.  It would be futile for Keitt to amend his pleading to add that Defendants acted with "bad faith or gross misjudgment," as such an allegation would apparently be directed to claims that would still be untimely, and thus still subject to dismissal on that ground.  *See, e.g., Lucente v. Int'l Bus. Machines Corp.*, 310 F. 3d 243, 258 (2d Cir. 2002) ("An amendment to pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").  I therefore recommend, as to Keitt's proposed amendment relating to the City Defendants, that his request for leave to amend be denied, with prejudice.

### 2. Proposed New Claims Directed to Existing or Newly-Named State Defendants

The State Defendants make a number of arguments as to why, in their view, Keitt's motion to amend to add new claims against them (or against newly-named State officers) should also be denied.  (*See* State Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint, dated April 20, 2011 (Dkt. 58).)  Yet, given this Court's recommendation that Keitt's claims relating to Elmira be transferred to the Western District of New York, and given that all of Keitt's proposed new claims relate either to his incarceration at Elmira or his incarceration at Attica (which is also in the Western District), it would serve the interests of judicial economy to allow the court in that District to consider the viability of those proposed new claims.

Accordingly, I recommend that Keitt's motion to amend to add new claims against the State Defendants, or to add claims against additional State officers at either Elmira or Attica, be

denied, without prejudice to renew, upon transfer of this action to the Western District of New

York.

## <u>CONCLUSION</u>

For the foregoing reasons, I hereby respectfully recommend that:

1.      the City Defendants' motion (Dkt. 33) to dismiss the Amended Complaint as to

defendants City of New York, Department of Correction, Department of Education, Department

of Juvenile Justice, Mayor Bloomberg and Dora Schriro be granted, and all claims asserted

against those defendants be dismissed in their entirety;

2.      the State Defendants' motion (Dkt 35) to dismiss the Amended Complaint be

granted in part and denied in part, as follows:

   a.      all claims asserted under the EEOA, the IDEA, and 42 U.S.C. § 1981

should be dismissed;

   b.      all claims asserted under 42 U.S.C. §§ 1983, 1985 and 1986, the ADA,

and the Rehabilitation Act should be dismissed, to the extent those claims arose prior to

Keitt's incarceration at Elmira;

   c.      Keitt's Section 1983, 1985 and 1986 claims, arising out of his

incarceration at Elmira, should be permitted to proceed, to the extent he seeks damages,

including punitive damages, from defendants Fischer, Fusco, Reynolds, Bradt, Livermore

and Lepkowski, in their personal capacities, but, to the extent he seeks injunctive relief,

these claims should be dismissed as moot, without prejudice to his reassertion of such

claims against Bradt, should he be granted leave to plead claims arising out of his current

incarceration at Attica;

        d.      Keitt's ADA and Rehabilitation Act claims, arising out of his incarceration at Elmira, should be permitted to proceed, to the extent he seeks compensatory, but not punitive damages, against the State of New York and DOCS, as well as defendants Fischer, Fusco, Reynolds, Bradt, Livermore and Lepkowski, in their official capacities, but to the extent he seeks injunctive relief, these claims should be dismissed as moot, without prejudice to his reassertion of such claims against the State of New York, DOCS and Bradt, should he be granted leave to plead claims arising out of his current incarceration at Attica;

        3.      the claims that should remain in this action, as set out in paragraph 2(c) and (d) above, be transferred to the Western District of New York, in the interest of justice, pursuant to 28 U.S.C. § 1404; and

        4.      Keitt's motion for leave to file a Second Amended Complaint (Dkt. 49) be denied, without prejudice to renew in the Western District of New York, upon transfer.

        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).  If Keitt does not have access to cases cited herein that are

reported on Westlaw, he may request copies from Defendants' counsel.  *See* L.R. 7.2 ("Upon

request, counsel shall provide the pro se litigant with copies of such unpublished cases and other

authorities as are cited in a decision of the Court and were not previously cited by any party.").

Dated:   New York, New York
        August 26, 2011

                           Respectfully submitted,

                           DEBRA FREEMAN
                           United States Magistrate Judge

Copies to:

Hon. George B. Daniels, U.S.D.J.

Mr. Devin Keitt
# 06-A-2122
Attica Correctional Facility
639 Exchange Street
Attica, NY 14011

Fredeick H. Wen, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271

Mark Galen Toews, Esq.
New York City Law Department
100 Church Street, Room 2-305
New York, NY 10007