UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEVIN KEITT, (06A2122),

                      Plaintiff,

JOHN/JANE DOE, et al.,

                      Defendants.

_____

**REPORT AND RECOMMENDATION**

11-CV-00855(A)(M)

        This action has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings [105].[1] Before me is defendants' motion pursuant to Fed. R. Civ. P. ("Rule") 41(b) to dismiss this action for failure to prosecute [101]. Oral argument was held on September 16, 2013 [114]. For the following reasons, I recommend that the motion be denied, without prejudice.

**BACKGROUND**

        This action was commenced in the Southern District of New York by *pro se* Complaint filed October 7, 2009 [2]. Defendants allege that plaintiff commenced a similar action in the Northern District of New York (Keitt v. Annetts, et al., (10-CV-157)) approximately four months after the commencement of this action. Defendants' Memorandum of Law [112], p. 4 of 10.

        In connection with being granted *in forma pauperis* status while his case was venued in the Southern District of New York, plaintiff was directed to file an Amended Complaint within 60 days [3]. In January of 2010 plaintiff requested and was granted an

---

[1]     Bracketed references are to the CM/ECF docket entries.

additional 45 days to file an Amended Complaint [6]. Instead of filing an Amended Complaint, plaintiff moved for appointment of counsel [7]. That motion was denied, and plaintiff was granted an additional 30 days to file an Amended Complaint [8]. Again, he moved for appointment of counsel and for an extension of time to file an Amended Complaint, alleging that his Dyslexia prevented him from prosecuting the action without the assistance of counsel. [9], p. 4 of 8. On May 6, 2012, he was granted a final 60-day extension to file an Amended Complaint, and cautioned that if he failed to do so, the action would be dismissed. Id., p. 5 of 8. Heeding this warning, he filed the Amended Complaint on July 8, 2010 [10], which alleges, *inter alia*, that while at the Elmira Correctional Facility defendants failed to accommodate plaintiff's dyslexia and retaliated against him for filing grievances about this conduct.

With the Marshals' assistance, the defendants were eventually served with the Amended Complaint in October of 2010, and were granted an extension until January 11, 2011 to answer or otherwise move against the Amended Complaint [24]. Defendants moved for partial dismissal of the Amended Complaint, and to sever and transfer to this District the remaining claims arising from his incarceration at Elmira [35]. After being granted an extension of time to respond [42], plaintiff opposed that motion [52] and cross-moved for leave to file a Second Amended Complaint [49]. By decision dated September 29, 2011 [74], District Judge George B. Daniels granted defendants' motion and denied plaintiff's motion for leave to file a Second Amended Complaint, which sought to add claims arising from his incarceration at Attica Correctional Facility, without prejudice to renewal in this District. See Keitt v. New York City, 882 F.Supp.2d 412, 422 (S.D.N.Y. 2011).

Upon the transfer of plaintiff's remaining claims to this District, I scheduled a preliminary pretrial conference, which was held on December 7, 2011 [78, 81]. At that time, the parties agreed to the deadlines of a Case Management Order [82], which required all motions to amend pleadings and join other parties to be filed by January 23, 2012. A day after the deadline to amend pleadings expired, defendants moved to amend the caption of the Amended Complaint to include only those defendants remaining in the case and for an extension of time to respond to the Amended Complaint [84]. On January 30, 2012, I received a proposed Second Amended Complaint from plaintiff, and at the February 9, 2012 conference, I advised plaintiff that any amended pleading must be accompanied by a motion for leave to amend.[2]

On March 22, 2012, I appointed James Greco, Esq. to represent plaintiff [90]. At the May 2, 2012 conference defendants withdrew their motion to amend the caption [84], without prejudice, and the parties agreed that plaintiff would file a Second Amended Complaint, with defendants reserving their right to answer or otherwise move against it [94].[3] At that time, it was contemplated that the Second Amended Complaint would be filed before the next conference, which was originally scheduled for June 20, 2012, and then adjourned to July 19, 2012 [95]. When plaintiff failed to do so, the parties agreed, and I ordered, that plaintiff's Second Amended Complaint be filed by August 31, 2012 [96]. With defendants' consent, that deadline was extended to October 8, 2012, based upon Mr. Greco's representation that he had been unable to

---

[2] This is reflected in the digital audio recording of the February 9, 2012 conference.

[3] Defendants allege that their agreement was premised on Mr. Greco's representation "that he intended to significantly reduce the number of defendants and the number of claims". Defendants' Memorandum of Law [102], p. 8.

discuss the amendment with plaintiff due to plaintiff's transfer to another facility [98, 99]. At Mr. Greco's request, and with defendants' consent, I further extended that deadline to October 31, 2012 [100], which lapsed without any request for an extension or Second Amended Complaint being filed.

On November 23, 2012, defendants filed their motion to dismiss for failure to prosecute [101] and I gave plaintiff until December 14, 2012 to respond [104], but this deadline also lapsed without a request for an extension or response to the motion. Concerned that plaintiff may have been abandoned by Mr. Greco, I issued an Order to Show Cause [106] requiring plaintiff and Mr. Greco to each demonstrate in writing why defendants' unopposed motion to dismiss for failure to prosecute [101] should not be granted. Mr. Greco responded to my Order to Show Cause with a motion to withdraw as counsel [111].[4] According to Mr. Greco, he initially had "often-pleasant conversations" with plaintiff. Id., ¶8.[5] This changed when, as a result of his conversations with plaintiff concerning a December 3, 2012 Report and Recommendation issued in Keitt v. Annetts, 2012 WL 7151333 (N.D.N.Y. 2012),[6] which was unfavorable to plaintiff, "it became apparent that [they] had a conflict between [them] regarding the direction of this action". Greco Affirmation [111], ¶13. Thereafter, according to Mr. Greco,

---

[4] I granted this motion at the September 16, 2013 proceeding.

[5] Mr. Greco's Affirmation[111] in support of his motion to withdraw was not submitted *in camera*.

[6] The Report and Recommendation was later adopted. *See* 2013 WL 599942 (N.D.N.Y. 2013). The Second Circuit issued a Mandate on August 7, 2013 dismissing plaintiff's appeal "because it lack[ed] an arguable basis in law or fact." Keitt v. Annetts et al., 10-cv-00157-TJM-CFH, Document 110.

plaintiff advised him that he no longer wanted his representation and intended to seek someone else to represent him. Id., ¶14.

In March of 2013 Mr. Greco contacted my chambers and was advised to file a motion to withdraw as counsel. Id., ¶15. However, at that time Mr. Greco was attempting to relocate his practice to another firm, and concedes that he "did not afford the motion to withdraw the attention it deserved". Id., ¶16. Therefore, he argues that plaintiff "should not suffer due to [his] employment transition and relocation" and "should be afforded an opportunity to litigate this action". Id., ¶17.

Plaintiff responded to my Order to Show Cause [106] by moving for a conference [107], stating that he "did not know Mr. . . . Greco walked away from law practice". Keitt Affirmation [107], p. 4 of 8, ¶6. Relying heavily on the dismissal of plaintiff's claims in Keitt v. Annetts, supra, defendants continue to seek dismissal for failure to prosecute, arguing that

> "[a]ffording plaintiff a renewed opportunity to litigate an already addressed and defeated issue serves no purpose, wastes valuable judicial resources, prejudices defendants, and, on balance, weighs overwhelmingly in favor of dismissal. This is especially so, given that Keitt's repeated delays in this case - including 9 extensions while this case was venued in the Southern District of New York and nearly as many extensions here - resulted in another Court reaching and deciding the issue first. Having commenced two separate actions four months apart in different federal courts, which raised the same issue, plaintiff risked that one court's decision would have preclusive effect over the other. As such, plaintiff cannot blame his volunteer attorney for the result he brought on himself." Defendants' Memorandum of Law [112], pp. 2-3 of 10.

## ANALYSIS

In seeking to dismiss plaintiff's action with prejudice under Rule 41(b), defendants rely on plaintiff's alleged inaction "both before and after counsel was appointed". Defendants' Memorandum of Law [102], p. 2. According to defendants, "[o]ther than his request for counsel and several extensions, plaintiff has taken no action whatsoever to prosecute his case." Id.

Rule 41(b) provides that an action may be dismissed "[i]f the plaintiff fails to prosecute or to comply with . . . a court order". "A pattern of dilatory tactics, such as repeated requests for extensions and the missing of deadlines, may warrant a dismissal for failure to prosecute under Rule 41(b)." Abreu v. City of New York, 208 F.R.D. 526, 529 n.4 (S.D.N.Y. 2002).

Although dismissal for failure to prosecute "is an important tool for preventing undue delays and avoiding docket", it is "one of the harshest sanctions at a trial court's disposal . . . . [and] is reserved for use only in the most extreme circumstances." U.S. ex rel. Drake v. Norden Systems, Inc., 375 F.3d 248, 250-51 (2d Cir. 2004). *See* Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) ("The remedy [of a Rule 41(b) dismissal] is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions"). Where the sanction is dismissal with prejudice, "it must be supported by clear evidence of misconduct and a high degree of specificity in the factual findings." Estate of Jaquez v. City of New York, ___Fed. Appx.___, 2013 WL 5645779, *1 (2d Cir. 2013) (Summary Order).

In determining whether dismissal is warranted, I must consider the following factors: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." Lucas v. Miles, 84 F. 3d 532, 535 (2d Cir. 1996). "In analyzing the factors, the court reviews the record as a whole". Toliver v. Commissioner of NYC D.O.C., 2011 WL 5242643, *3 (S.D.N.Y. 2011). "Generally, no one factor is dispositive." Nita v. Connecticut Dept. of Environmental Protection, 16 F. 3d 482, 485 (2d Cir. 1994).[7]

**A.     Duration**

In resolving this factor I must determine "(1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration." Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001). "For the purposes of this analysis, delays are viewed as being caused by plaintiff's 'side as a whole,' such that a plaintiff's failings are imputed to its attorney and vice versa." Europacific Asset Management Corp., 233 F.R.D. 344, 351 (S.D.N.Y. 2005) (*quoting* Drake, 375 F.3d at 255).

---

[7]     "[W]hile a district court is not required to expressly discuss these factors on the record, a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning". Hunter v. New York State Department of Correctional Services, 515 Fed.Appx. 40, 42, 2013 WL 1188950, *1 (2d Cir. 2013) (Summary Order).

Although defendants note that this action has currently been pending for approximately four years ([112], p. 9 of 10), much of this time has elapsed through no fault of plaintiff. For example, there was a 6-month delay from the time plaintiff filed his Amended Complaint to the time defendants moved to dismiss, there was an approximate 9-month delay to resolve defendants' initial motion to dismiss, and defendants' current motion to dismiss has been pending for approximately one year.

Nevertheless, plaintiff is responsible for the failure to prosecute that commenced when the Second Amended Complaint was not filed, thereby prompting defendants' motion to dismiss. Although the duration of this delay comprises months, rather than years, this factor weighs in favor of dismissal. *See* Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982) (a Rule 41 dismissal may be warranted "after merely a matter of months").

**B.    Notice**

Plaintiff was initially on "notice that his case risked dismissal when defendants filed the instant motion." Bridgeforth v. Mckeon, 2011 WL 3793967, *2 (W.D.N.Y. 2011) (Payson, M.J.). My subsequent Order to Show Cause [106] also placed both plaintiff and Mr. Greco on notice that their inaction could lead to dismissal of the action.

**C.    Prejudice to Defendants**

"There is no evidence that this delay has prejudiced the defendants in a manner that outweighs the interests of the plaintiff. There has been no discovery yet, and therefore the

costs of litigating this matter have been minimal. Therefore, this factor does not weigh in favor of dismissal." Grande v. Gristede's Food's, Inc., 2011 WL 4716339, *5 (S.D.N.Y. 2011).

**D.      Balancing of Calendar Congestion Against Plaintiff's Interests**

"There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court. No such evidence is present here." Lucas, 84 F.3d at 535-36. Therefore, this factor does not weigh in favor of dismissal.

**E.      Lesser Sanctions**

"[A]pportionment of blame between counsel and client . . . is best considered [under] the fifth factor-efficacy of lesser sanctions." Drake, 375 F.3d at 255. "[T]he more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal. Conversely, the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." Dodson v. Runyon, 86 F.3d 37, 40 (2d Cir. 1996), cert. denied, 520 U.S. 1156 (1997). *See* Walden v. Linc Systems, Inc., 2012 WL 3779210, * 2 (S.D.Ind.), adopted 2012 WL 3779208 (S.D.Ind. 2012) (denying motion to dismiss under, *inter alia*, Rule 41(b) where "the facts clearly demonstrate that [counsel] walked away from her clients and her law practice at some point without giving any notice to her clients"). However, even if a delay is attributable to counsel, "where opposing

parties are found to have been meaningfully prejudiced by a plaintiff's delay, this factor speaks strongly in favor of dismissal, and may well override the hardship to plaintiff." Id. at 41.

Defendants allege that "[o]ther than his request for counsel and several extensions, plaintiff has taken no action whatsoever to prosecute his case." Defendants' Memorandum of Law [102], p. 2. This is not accurate. At no point prior to Mr. Greco's appointment did plaintiff's conduct, as a *pro se* litigant, evidence a lack of diligence in pursuing his claims. Even if plaintiff's conduct in seeking repeated extensions of time to file his Amended Complaint while he attempted to obtain counsel can be characterized as not being sufficiently diligent, after filing the Amended Complaint he actively opposed defendants' motion to dismiss the Amended Complaint and to transfer venue [52, 64], and cross-moved for leave to amend the Amended Complaint [49]. When the case was transferred to this District, plaintiff continued his prosecution of this case by participating in the preliminary pretrial conference [81] and by attempting to amend the Amended Complaint [88].

It was only after Mr. Greco was appointed as his counsel that the deadline to file the Second Amended Complaint was missed and no response was filed to the motion to dismiss for failure to prosecute. Plaintiff is not to blame for this inaction. Even if plaintiff "refused his appointed attorney's advice when faced with [the Keitt v. Annetts decision] fatal to his action", as defendants' argue ([112], p. 8 of 10), that in no way makes him responsible for the failure to prosecute. While Mr. Greco alleges that his representation of plaintiff reached an impasse following the Keitt v. Annetts decision, both plaintiff's deadline [100] for amending the Amended Complaint and the filing of defendants' motion to dismiss for failure to prosecute [101] occurred *prior* to that decision.

Upon his discharge, it was Mr. Greco's obligation to withdraw as counsel, but he failed to do so. *See* Rule 1.16(b)(3) of the New York Rules of Professional Conduct (a lawyer "shall withdraw" as counsel when "the lawyer is discharged"). Nor did he make any effort to preserve plaintiff's ability to oppose the motion to dismiss.

Moreover, since becoming aware of Mr. Greco's abandonment through my Order of Show Cause, plaintiff has displayed a clear desire to actively proceed with the prosecution of his claims. *See* GCIU Employer Retirement Fund v. Chicago Tribune Co., 8 F.3d 1195, 1201 (7th Cir. 1993) ("an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence").

Under the these circumstances, this factor weighs heavily against imposing the harsh sanction of dismissal on plaintiff or making him the recipient of any lesser sanctions. *See* Dodson, 86. F.3d at 41 (remanding for consideration of possible lesser sanctions where "[t]he record strongly suggests that it was Dodson's lawyer, not Dodson, who was responsible for failing to advance the case. Furthermore, it appears that the attorney caused the delay in derogation of, rather than to benefit, his client's interests. Prior to Dodson's retention of an attorney, he had actively pursued his cause, first before the EEOC, and then in the district court. Only after counsel was hired did progress cease").

I am particularly reluctant to allow Mr. Greco's neglect to penalize plaintiff, since Mr. Greco was appointed by the court to represent plaintiff and not voluntarily chosen by him. *Compare with* Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his

representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent"); Nolan v. Primagency, Inc., 2008 WL 1758644, *5 (S.D.N.Y. 2008), aff'd 344 Fed. Appx. 693 (2d Cir. 2009) (Summary Order) ("Although it is without question that plaintiff's failures in this case are solely attributable to his counsel, Mr. Piccone, plaintiff himself was on notice of Mr. Piccone's shortcomings . . . . Plaintiff voluntarily chose Mr. Piccone to represent him in this action. Thus, while dismissal is an unfortunate result for plaintiff, it is not an unjust result").

**F.      Other Factors**

In seeking dismissal, defendants also attack the viability of plaintiff's Amended Complaint. Defendants' Memorandum of Law [112], pp. 2-3 of 10. "'[I]t is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute.'" Dosunmu v. United States, 361 F.Supp.2d 93, 100 (E.D.N.Y. 2005) (*quoting* Ball v. City of Chicago, 2 F.3d 752, 759 (7th Cir.1993)). However, any argument defendants may have for dismissal of the Amended Complaint based on the preclusive effect of Keitt v. Annetts, supra, should be tested in a separate motion to which plaintiff is given an opportunity to respond.[8]

On balance, I conclude that viewed in light of the pertinent factors, the record does not favor the sanction of dismissal or any lesser sanction. However, plaintiff is cautioned that any future failures to prosecute this case may result in dismissal.

---

[8] I express no opinion as to the merits of any motion that may be filed against the Amended Complaint.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss for failure to prosecute [101] be denied, without prejudice. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 25, 2013 (applying the time frames set forth Rules 6(a)(1)(c), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 8, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge