UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVIN KEITT, (#06A2122),                                    **REPORT AND**
                                                            **RECOMMENDATION**

                                    Plaintiff,

v.                                                          11-CV-00855(A)(M)

NYS DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, et al.,

                                    Defendants.
_____

        This action has been referred to me by Hon. Richard J. Arcara for supervision of

pretrial proceedings [105].[1]  Before me is defendants' motion [126] pursuant to Fed. R. Civ. P.

("Rule") 12(c) to dismiss the Amended Complaint, and plaintiff's cross-motion [128] for partial

summary judgment.  Oral argument was held on May 21, 2014 [133].  For the following reasons,

I recommend that defendants' motion be granted in part and denied in part, and that plaintiff's

cross-motion be denied.


                                        **BACKGROUND**

        This action was commenced in the Southern District of New York by *pro se*

Complaint filed October 7, 2009 [2].  Plaintiff commenced a similar action in the Northern

District of New York (Keitt v. Annetts, et al., (10-CV-157)) approximately four months after the

commencement of this action. In connection with being granted *in forma pauperis status* while

his case was venued in the Southern District of New York, plaintiff was directed to file an

Amended Complaint [3], which after several extensions was filed on July 8, 2010 [10].

_____

        [1]        Bracketed references are to the CM/ECF docket entries.

The Amended Complaint [10] alleges that in plaintiff's "third year of school . . . his mother took him to a clinical psychologist and he was diagnosed with dyslexia" (id., ¶33), and that while incarcerated at New York State Department of Corrections and Community Supervision ("DOCCS") he "has been trying to receive accommodations, and has been told that there is no proof he is dyslexic [and] denied accommodations" (id., ¶164).

Defendants moved for partial dismissal of the Amended Complaint, and to sever and transfer to this District the remaining claims arising from his incarceration at Elmira Correctional Facility [35].  Plaintiff opposed that motion [52] and cross-moved for leave to file a Second Amended Complaint [49].  By decision dated September 29, 2011 [74], District Judge George B. Daniels granted defendants' motion to dismiss in part, denied plaintiff's motion for leave to file a Second Amended Complaint, which sought to add claims arising from his incarceration at Attica Correctional Facility, without prejudice to renewal in this District, and transferred the following remaining  claims arising from his incarceration at Elmira to this District:

--      claims pursuant to 42 U.S.C. §§1983, 1985 and 1986 "arising out of his incarceration at Elmira  . . . to the extent he seeks damages, including punitive damages, from defendants Fischer, Fusco, Reynolds, Bradt, Livermore and Lepkowski, in their personal capacities"; and

--      claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and the Rehabilitation Act, 29 U.S.C. §§794 *et seq.*, arising out of his incarceration at Elmira . . . to the extent he seeks compensatory . . . damages, against the State of New York and DOCS, as well as defendants Fischer, Fusco, Reynolds, Bradt, Livermore and

Lepkowski, in their official capacities". Keitt v. New York City, 882 F.Supp.2d 412, 462

(S.D.N.Y. 2011) ("Keitt I").

  Upon the transfer of plaintiff's remaining claims to this District, I held a

preliminary pretrial conference on December 7, 2011 [81].  At that time, the parties agreed to the

deadlines of a Case Management Order [82], which required all motions to amend pleadings and

join other parties to be filed by January 23, 2012.  A day after the deadline to amend pleadings

expired, defendants moved to amend the caption of the Amended Complaint to include only

those defendants remaining in the case, and for an extension of time to respond to the Amended

Complaint [84].  On January 30, 2012, I received a proposed Second Amended Complaint from

plaintiff, and at the February 9, 2012 conference, I advised plaintiff that any amended pleading

must be accompanied by a motion for leave to amend.

  On March 22, 2012, I appointed James Greco, Esq. to represent plaintiff [90].  At

the May 2, 2012 conference defendants withdrew their motion to amend the caption [84], without

prejudice, and the parties agreed that plaintiff would file a Second Amended Complaint, with

defendants reserving their right to answer or otherwise move against it [94].  After several

extensions [95, 96, 98, 99, 100], the last of which lapsed without any request for an extension or

Second Amended Complaint being filed, defendants moved [101] to dismiss the Amended

Complaint for failure to prosecute.  My Report and Recommendation dated November 8, 2013

[115]  recommending that motion be denied, was adopted by Judge Arcara [117].  See Keitt v.

Doe, 2013 WL 6328147 (W.D.N.Y. 2013).  I also granted  Mr. Greco's motion to withdraw as

counsel [111].

Following the resolution of defendants' motion to dismiss for failure to prosecute, I held another conference with the parties on December 10, 2013, at which plaintiff stated that he intended to proceed with his Amended Complaint, rather than to seek leave to file a Second Amended Complaint [119]. At that conference, the parties disagreed as to the identity of the defendants. To resolve this issue, I issued the following Text Order on December 12, 2013 [120]:

> "From my review of Hon. George B. Daniels' September 29, 2011 Memorandum Decision and Order [74] addressing defendants' motions to dismiss the Amended Complaint [10], the current docket appears to correctly identify the remaining defendants in this case as being the New York State Department of Correctional Services (now known as the New York State Department of Corrections and Community Supervision), Brian Fischer, the State of New York, Mark Bradt, Douglas C. Reynolds, Denise Fusco, Virginia Livermore-Johnson, and Thomas E. Lepkowski. If either party disagrees, they may file an appropriate motion."

Neither party filed a motion, and these defendants filed an Answer to the Amended Complaint on December 31, 2013 [121]. At a conference with the parties on January 3, 2014, defendants advised that they would be moving to dismiss the Amended Complaint, and a briefing schedule was set requiring plaintiff's response and cross-motion for summary judgment (if any) to be filed and served by February 28, 2014. January 6, 2014 Text Order [122].

When no response to defendants' motion to dismiss was filed, I cancelled oral argument and advised the parties that I would deem defendants' motion [126] under advisement. However, on March 19, 2014 plaintiff's cross-motion for partial judgment [128] was docketed, which included his opposition to defendants' motion to dismiss, and I set a briefing schedule for that motion, including a deadline for defendants' reply in further support of their motion to dismiss. March 20, 2014 Text Order [129].

-4-

## ANALYSIS

### A.   Plaintiff's Cross-Motion for Summary Judgment

Although plaintiff's Notice of Motion states that it is a "motion for partial summary judgment", he does not identify which claims are the subject of his motion and his papers supporting the motion are directed at opposing defendants' motion to dismiss.  For example, he submits a "Statement of *Disputed* Factual Issues" ([128], p. 26 of 50 (emphasis added)) and a "Brief in *Opposition* to Defendants Summary Judgment" (id., p. 27 of 50 (emphasis added)).  Also, rather than seeking judgment in his favor, his supporting Declaration seeks to be "permitted to proceed" with his claims (id., p. 25 of 50, "Conclusion" paragraph).  Therefore, I recommend that the motion be denied.

### B.   Defendants' Motion for Dismissal

Rule 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings".  "Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b)(6)." Matwijko v. Board of Trustees of Global Concepts Charter School, 2006 WL 2466868, *2 (W.D.N.Y. 2006) (Arcara, J./Schroeder, M.J.).

Defendants first argue that plaintiff is collaterally estopped from re-litigating whether he is dyslexic, which is fatal to all of his claims.  Alternatively, defendants challenge the facial sufficiency of plaintiff's allegations.

**1.      Does Collateral Estoppel Bar Plaintiff from Litigating Any of his Claims?**

"Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a full and fair opportunity to litigate in a prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." Irish Lesbian and Gay Organization v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). "The doctrine represents a policy choice in favor of judicial efficiency sometimes at the expense of correctness." Tufamerica, Inc. v. Hammond, 2002 WL 1058059, *4 (S.D.N.Y. 2002) (*citing* Gelb v. Royal Globe Insurance Co., 798 F.2d 38, 44 (2d Cir. 1986)).

"Rule 12(b)(6) empowers courts to dismiss a claim if it is barred by . . . collateral estoppel". Careccia v. MacRae, 2005 WL 1711156, *2 (E.D.N.Y. 2005). "[E]ven though the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor, issue preclusion will nonetheless bar a plaintiff's claim when a plaintiff's factual allegations have been decided otherwise in a previous litigation." Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, __ F.Supp.2d__, 2014 WL 2481904, *12 (S.D.N.Y. 2014).

"Dismissal under [Rule] 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll International, 231 F.3d 82, 86 -87 (2d Cir. 2000). *See* Nealy v. Berger, 2009 WL 704804, *9 (E.D.N.Y. 2009) ("the relevant facts for this motion, namely the judgment in the Southern District of New York action, are public documents subject to judicial notice, and are not in dispute"); Gertskis v. U.S. E.E.O.C., 2013 WL 1148924, *1 (S.D.N.Y.

2013) ("A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits").

Defendants' Answer [121] raises collateral estoppel as an affirmative defense (id., ¶27, Sixteenth Defense).  Defendants argue that "[e]very claim raised by plaintiff . . .  if stated at all - has, at its core, plaintiff's assertion that he is dyslexic and that defendants failed to recognize and accommodate his purported dyslexia".  Defendants' Memorandum of Law [116-1], p. 17. Relying on the summary judgment decision in <u>Annetts</u>, they argue that plaintiff is collaterally estopped from litigating that he suffers from dyslexia, which prevents him from "sustain[ing] any of his claims" (<u>id.</u>).

Similar to the claims alleged here,  in <u>Annetts</u> plaintiff alleged "that, before the age of fourteen, he was diagnosed with dyslexia, which 'limits his ability to read, write, comprehend, work, or perform.'"  <u>Keitt v. Annetts</u>, 2012 WL 7151333, *1 (N.D.N.Y. 2012), <u>adopted</u> 2013 WL 599942 (N.D.N.Y. 2013), <u>appeal</u> <u>dismissed</u>, Mandate, No. 13-972 (2d Cir. August 7, 2013). While incarcerated at Clinton and Upstate Correctional Facilities he alleged that his "(1) ADA right to receive reasonable accommodation was violated when he was denied inmate assistants for his disciplinary hearings and (2) Fourteenth Amendment Due Process rights were violated when he was denied adequate assistance during the same disciplinary proceedings." <u>Id.</u>,*4.

In granting the defendants' motion for summary judgment in <u>Annetts</u>, the court concluded that a rational fact finder would not find that plaintiff has an impairment that substantially limits a major life activity:

>"The record belies Keitts assertion that his alleged impairments limit his ability to hear, read, think, or communicate in a substantial manner.  A number of witnesses testified at Keitt's disciplinary hearings that they never experienced difficulty in conversing with

> Keitt concerning orders, directions, and transfers. Morever, Keitt's hearing officer. . .  supported by witness testimony, observed the same when Keitt successfully engaged in a discussion concerning his level changes and personal property. Further, Keitt demonstrated throughout the disciplinary proceedings that he could hear, think, and communicate by selecting inmate assistants, requesting specific types of evidence, and asking and responding to questions . . . . Keitt conceded that he can read within a certain, though unknown, grade level. Finally, the record neither contains a documented history of Keitt's alleged impairments nor that Keitt was regarded by others as having such impairments . . . . In fact, during the time in question, Keitt's [Test of Adult Basic Education ("TABE")] scores indicate that he could read proficiently."  Annetts, 2012 WL 7151333 at *6.

In so holding, the court rejected plaintiff's allegations that he cheated on his TABE exams, which indicated that he could read proficiently, and disregarded his "low TABE score dated February 2011" since it "occurred subsequent to the nucleus of facts underlying this action". Id. at *6, n.9.  Plaintiff appealed this decision to the Second Circuit, which dismissed the appeal, concluding that it "lack[ed] an arguable basis in law or fact".  Mandate, No. 13-972 (2d Cir. August 7, 2013).

"The preclusive effect of a federal court's judgment issued pursuant to its federal - question jurisdiction is governed by the federal common law of preclusion." Wyly v. Weiss, 697 F.3d 131, 140 (2d Cir. 2012).  "Collateral estoppel, or issue preclusion, applies where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005).

Plaintiff's challenge appears to be whether he had a full and fair opportunity to litigate the issue of his alleged dyslexia in Annetts.  "Under federal law, the party moving for the

application of collateral estoppel bears the burden of demonstrating that the opposing party had a full and fair opportunity to litigate the issues". U.S. S.E.C. v. Steinberg, 2007 WL 922257, *4 (E.D.N.Y. 2007). "In the end, decision will necessarily rest on the trial courts' sense of justice and equity." Blonder-Tongue Laboratories, Inc. v. University of Illinois, 402 U.S. 313, 333-34 (1971). Among the considerations in making this determination is "whether without fault of his own the [plaintiff] was deprived of crucial evidence or witnesses in the first litigation." Blonder Tongue, 402 U.S. at 33. Moreover, while "[a] plaintiff's status as a *pro se* litigant does not, by itself, preclude barring a claim under the doctrine of collateral estoppel . . . it is relevant to a determination of the fairness of his prior opportunity to be heard." Bonilla v. Brancato, 2002 WL 31093614, *5 (S.D.N.Y. 2002) (citations omitted). Thus, "[i]f a *pro se* plaintiff is unfamiliar with the law and is unable to present evidence on his claim or if he fails to do so, collateral estoppel may be inappropriate." Id.

Here, plaintiff challenges whether he had a full and fair opportunity to litigate this issue in Annetts by arguing that "defendants denied documentary evidence concerning his Dyslexic report from John E. Jannes, PhD." Plaintiff's Declaration [128], ¶11. Dr. Jannes' Psychological Report, which was prepared when plaintiff was 13 years old, states that "it appears reasonable to conclude that a very strong element that negatively impacts upon Devin's capacity to read is difficulty he has visually processing letters. He clearly reverses individual letters. This deficit undermines his other abilities as he does not appear to actually see the letters that he is supposed to be reading . . . . Cognitive deficits appear to be attributable to a developmental reading disorder." [128], pp. 33-35 of 50.

Plaintiff alleges that this report was in DOCCS' possession since 2002. Plaintiff's Statement of Disputed Facts [128], p. 26 of 50, ¶5. At oral argument, plaintiff conceded that "I knew where my records was around 2011 when I found out they were in . . . my mental health folder".[2] However, plaintiff explained that he was only recently able to obtain Dr. Jannes' Report from DOCCS. Consistent with these  representations, plaintiff filed a motion in <u>Annetts</u> in October 2011 for  the "release of the mental health records pertaining to all educational records from a educational psychologist". Plaintiff's Affirmation [77], ¶2 (<u>Annetts</u>, 10-cv-000157 (N.D.N.Y)). In support of that motion, plaintiff  stated that he had "reviewed these records and they are in his mental health records". <u>Id</u>. That motion was denied by Magistrate Judge David Homer "based on defendants' letter response . . . whereby the defendants state that plaintiff has not served defendant with any discovery demands, and that defendants have complied with the obligations of the pretrial scheduling order. Further, plaintiff's motion failed to include copies or substantiation of any discovery demands purportedly served on defendants". Text Order dated November 7, 2011. The docket from <u>Annetts</u> does not indicate what other attempts, if any, plaintiff made to attempt to obtain these records before the defendants' motion for summary judgment was filed on August 6, 2012 [88].

In opposition to defendants' motion to dismiss, plaintiff also submits the undated Declaration of his father, Oneal Keitt ([132], p. 7 of 7), stating that he had a "lengthy discussion with Dr. John E. Jannes, Ph.D." and was informed that he diagnosed plaintiff with dyslexia (<u>id</u>., ¶¶1-2). At oral argument plaintiff stated that this was known since he was 13 years old. His

---

[2]     From the unofficial chambers' transcription from the audio recording of the May 21, 2014 oral argument.

father's Declaration also states that he spoke to Kimberly Cary, a psychologist at Coxsackie

Correctional Facility and that she informed him that "she was able to get the school psychologist

report from Dr. John E. Jannes by having [plaintiff] sign an Authorization for Release of

Information Form" (id., ¶3).  He also states, "I am in the process of obtaining my son's evaluation

report from Dr. John E. Jannes, Ph.D." (id., ¶5).

       "If significant new evidence is uncovered subsequent to the proceeding said to

result in an estoppel of the present action, then it cannot be found that a party was afforded a full

and fair opportunity to present his case in the absence of that evidence."  Khandhar v. Elfenbein,

943 F.2d 244, 249 (2d Cir. 1991).[3]  Rather than challenging whether Dr. Jannes report constitutes

new evidence, defendants argue that Dr. Jannes' report is not significant evidence since plaintiff

alleges that he suffers from dyslexia, rather than a developmental reading disorder.  Defendants'

Opposing Memorandum of Law [131, p. 3 n.6.  This argument is unavailing, since dyslexia is a

type of developmental reading disorder.  *See* Polesky v. Labor & Industry Review Commission,

1999 WL 308749, *1 (Wis.App. 1999); G.N. v. Board of Education of Township of Livingston,

309 Fed.Appx. 542, 543 (3d Cir.  2009).

       Although the record demonstrates that plaintiff was aware of the existence of Dr.

Jannes' report while he litigated the Annetts matter, if the report was in the defendants' possession,

properly requested by plaintiff, and the defendants denied the existence of the report  as plaintiff

appears to allege (all questions that cannot be determined at this stage), collateral estoppel would

---

    [3]      "While [Khandhar] construes New York law, there is no reason to suspect that federal
common law differs."  United States  v. United States Currency in Amount of $294,600,
1992 WL 170924, *6 (E.D.N.Y. 1992).

not bar plaintiff from litigating the issue of his alleged disability in this case.  *See* PenneCom B.V.

v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004) ("PenneCom must be allowed

discovery to collect evidence which might support a finding either that PenneCom was not

afforded a full and fair opportunity to prove its loss in the arbitration, or that Merrill Lynch should

be precluded by its own (alleged) misconduct from asserting the equitable doctrine of collateral

estoppel"); Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc., 882 F.Supp.2d 396,

398 (E.D.N.Y. 2012) ("[T]his Court denies summary judgment and finds that plaintiff did not have

a full and fair opportunity to litigate in the Newcomb case, and thus, plaintiff is not collaterally

estopped from bringing this action.  In particular, plaintiff was deprived of a full and fair

opportunity to litigate its claim in the Newcomb case because (1) crucial evidence supporting

plaintiff's claim was not produced by the defendant in the Newcomb case even though it was

responsive to plaintiff's discovery requests; (2) plaintiff did not learn of the failure to produce the

information until after the Newcomb trial; and (3) the evidence, if it had been produced by the

defendant in the Newcomb case, could have altered the outcome of that trial").  Therefore, I

recommend that defendants' motion to dismiss be denied to the extent it relies upon collateral

estoppel.


     **2.**     **42 U.S.C. §1983 Claims Against the Individual Defendants**

     The Amended  Complaint [10] alleges the following against the individual

defendants:

- -      **Defendant Douglas C. Reynolds,** the Deputy Superintendent of Program Services, is alleged to have denied plaintiff reasonable accommodations and failed to assist him in obtaining a dyslexia diagnosis or to do anything other than reviewing plaintiff's 1995 Individualized Education Plan ("IEP") in determining whether he was dyslexic.  Amended Complaint [10], ¶¶249-258.  The Amended Complaint attaches a February 2, 2010 Request for Reasonable Accommodation from plaintiff seeking large print books and other testing modifications (id., Ex. 2).[4]  By Memorandum dated February 9, 2010 defendant Reynolds responded to that request by stating that "Elmira . . . is unable to determine if you are dyslexia [*sic*] or not.   Your records indicate in 1995 your were determined   by IEP test to need special education.  After reaching the age of 21, you are no longer eligible for special education.  Your physical appearance and claimed condition of dyslexia are not evident to our Medical Department on your previous request for Reasonable Accommodations.  I would like to meet with you and discuss any options available to you and the procedure that you may take to resolve your issues" (id.).

- -      **Defendant T. Lepkowski**, the Educational Supervisor, is alleged to have failed to "adhere to the requirements of . . . § 136 which provides each inmate with the educational program which seem most likely to further the inmate's progress of socialization and rehabilitation".  Amended Complaint [10], ¶262.   The Amended Complaint attaches a November 2, 2009 Memorandum from defendant Lepkowski to plaintiff informing him that his request for accommodations was denied (id., Ex. 4).

---

[4]      "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference, and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." Atkins v. County of Orange, 251 F.Supp.2d 1225, 1232 n.5 (S.D.N.Y. 2003).

- -     **Defendant B. Fusco**, a teacher at Elmira, is alleged to have "instructed plaintiff

to quit requesting [auxiliary] aids and accommodations because the prison do[es] not provide such

to learning disabled (dyslexic) inmates" (id., ¶268). Plaintiff also alleges that "[w]hen [he] was

unable to complete/perform class assignments, defendant [Fusco] became upset.  Plaintiff again

stated he needed accommodations and the defendant threatened to issue him a misbehavior report

for not doing class assignments, disturbances, interruptions, and offenses he never committed" (id.,

¶269).

- -     **Defendant V. Livermore**, a member  of the Program Committee, is alleged to have

refused "to allow plaintiff to attend a strength and fitness class/program because he refuses to

attend school where he is denied reasonable accommodations" (id., ¶274).

- -     **Defendant Brian Fischer**, the Commissioner of DOCCS, is alleged to have been

aware of the various violations through his grievances and complaints (id.,  ¶¶192-95). In Keitt I,

the court  rejected the defendants' motion to dismiss defendant Fischer for lack of personal

involvement.  See Keitt, 882 F.Supp.2d at 424 ("Keitt alleges that (1) he repeatedly gave Fischer

complete details of the failures at Elmira to accommodate Keitt's disability; (2) Fischer had 'full

knowledge' of the refusal to accommodate from both grievances and disciplinary appeals; (3)

Fischer has upheld every decision denying plaintiff accommodation; and (4) Fischer failed to take

action to remedy the ongoing violation.  Thus, Keitt sufficiently pled that Fischer was personally

involved in the alleged ongoing violation of Keitt's constitutional rights").

- -     **Defendant Mark Bradt**, the Superintendent of Elmira Correctional Facility, is

alleged to have to have denied "every grievance plaintiff filed asking and complaining about

accommodations" (id., ¶229).

Plaintiff asserts  Eighth, and Fourteenth Amendment violations against each of the individual defendants.  (id., ¶¶187, 218, 249, 266, 273).  Additionally, plaintiff asserts a Fifth Amendment violation against defendant Bradt (id., ¶218) and First Amendment violations against all defendants other than defendants Lepkowski and Livermore (id., ¶¶260, 273).

### a.   Fourteenth Amendment: Due Process

### i.   Disciplinary Hearing

Plaintiff alleges that on May 28, 2010 he was issued a "false ticket", and at his disciplinary hearing on this ticket he objected to the hearing on the grounds that he was "dyslexic and could not defend himself without an assistant or accommodations".  Amended Complaint [10], ¶245.  He also alleges that the hearing officer "failed to consider his intellectual capacity as required by DOCCS' regulations (id.).  Attached to the Amended Complaint as an exhibit is the documentation from the June 2, 2010 disciplinary hearing (id., Ex. 3), which indicates that he received a sentence of 21 days of keeplock confinement, with 14 days of that penalty suspended, resulting in him serving seven days of  keeplock confinement  (id., Ex.  3, p. 6).

Defendants argue, *inter alia*, that plaintiff has "not pleaded facts suggesting that defendants denied him a property or liberty interest as a result of his Tier hearings".  Defendants' Memorandum of Law [126-1], p. 21.  "[T]o state a claim for a violation of due process, a prisoner first must identify a liberty interest protected by the Due Process Clause of which he was deprived".  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (*citing* Sandin v. Conner, 515 U.S. 472, 484 (1995)).  "[S]uch interests are generally limited to 'freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

Id. (*quoting* Sandin).  In determining  whether the plaintiff endured an "atypical and significant

hardship" factors include "the extent to which the conditions of the disciplinary segregation differ

from other routine prison conditions" and "the duration of the disciplinary segregation imposed

compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998).

Defendants argue that the seven days of keeplock confinement plaintiff served "is

neither atypical nor sufficient to state a claim".  Defendants' Memorandum of Law [126-1], p. 21.  I

agree.  "While there is no bright line below which the Court need not consider the circumstances of

the punishment, the decisions in the Second Circuit are unanimous that keeplock  of 30 days or less

in New York prisons is not 'atypical or significant hardship' under Sandin." Walsh v. Goord, 2007

WL 1572146, *4 (W.D.N.Y. 2007) (internal quotations omitted) (*citing* cases, including Garcia v.

Miller, 201 F.3d 431 (2d Cir.1999) (Summary Order) ("Since plaintiff's complaint contains no

allegation that would indicate that either his seven-day or thirty-day confinement was 'atypical' or

'significant,' he has failed to state a due process claim.  Accordingly, the district court properly

dismissed this claim under Rule 12(b)(6)")).  Even "[i]n the absence of a detailed factual record,

[the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of

time spent in SHU was exceedingly short - less than the 30 days that the Sandin plaintiff spent in

SHU - and there was no indication that the plaintiff endured unusual SHU conditions." Palmer v.

Richards, 364 F.3d 60, 65-66 (2d Cir. 2004).

The Amended Complaint contains no allegations suggesting that the seven days of

keeplock confinement plaintiff served was atypical or significant.  Therefore, I recommend that his

due process claim be dismissed.  *See* Delgado v. Dembar, 2014 WL 4792068, *3  (S.D.N.Y. 2014)

("[T]here is no indication in the limited amount of information plaintiff put forth in the pleading

that he endured unusual conditions during his nine days in the SHU.  His nine days in the SHU is less than that which was insufficient for a valid claim in Sandin, and does not create a liberty interest indicative of 'atypical and significant hardship'").

### ii.   New York Correction Law §136

Plaintiff alleges that defendant Lepkowski, as the Educational Supervisor, failed to "adhere to the requirements of . . . §136 which provides each inmate with the educational program which seem most likely to further the inmate's progress of socialization and rehabilitation". Amended Complaint [10], ¶262.  Keitt I characterized this claim as alleging that plaintiff's "right to procedural due process was violated because he received no education or one wholly unsuited to the goal of rehabilitation".  Keitt, 882 F.Supp.2d at 446.[5]

New York Correction Law §136 provides, in relevant part, that "each inmate shall be given a program of education which, on the basis of available data, seems most likely to further the process of socialization and rehabilitation".  "It is well-settled that public education is not a substantive fundamental right protected under the Fourteenth Amendment of the U.S. Constitution." Jouvert v. New York, 2012 WL 6964386, *7 (N.D.N.Y. 2012), adopted, 2013 WL 372331 (N.D.N.Y. 2013).  However, as defendants recognize, "a property interest is only triggered when there is 'no *education at all* or education that was *wholly unsuited* to the goals of a particular inmate's socialization and rehabilitation'." Defendants' Memorandum of Law [126-1], p. 22 (emphasis added) (*quoting* Handberry v. Thompson, 446 F.3d 335, 354 (2d Cir. 2006)). *Compare*

---

[5]     Defendants characterize this claim as alleging a violation of substantive due process, rather than procedural due process.  Defendants' Memorandum of Law [126-1], pp. 22, 31.

*with* Shaw v. New York State Department of Correctional Services, 2010 WL 2143672, *3 n.4 (S.D.N.Y. 2010), rev'd on other grounds, 451 Fed. Appx. 18 (2011) (Summary Order) ("Courts have 'uniformly rejected,' . . . 'arguments that section 136 gives rise to protected property interests'").

Pointing to the fact that "his pleadings and judicial admissions show that plaintiff admittedly dropped out of the program afforded him, allegedly cheated on the TABE to show that he could read at an Eighth Grade level, was told that he could request reasonable accommodations, was invited to meet with facility personnel to discuss his circumstances, and was also welcome to sign back into school", defendants argue that "plaintiffs claims that he was afforded no education or an unsuitable one because of his purported dyslexia are spurious". Defendants' Memorandum of Law [126-1], pp. 22-23.

While plaintiff concedes that he withdrew from adult basic education, he alleges that he was compelled to do so because the defendants were indifferent to his disability, and that he was being threatened with false misbehavior reports for requesting accommodations. Amended Complaint [10], ¶270. He also alleges that "because he is over the age of twenty-one, he is no longer eligible for special education, D.O.C.S. only offers Adult Basic Education . . . and G.E.D. programs" (id., ¶256). He further alleges that as a dyslexic, "[w]ithout accommodations he will never have a fair opportunity at a G.E.D" (id., ¶258), and that until the policy of denying dyslexics reasonable accommodations is corrected, the "goals of education, socialization and rehabilitation will not be reached" (id., ¶263).

At this stage, these allegations are sufficient to state a due process claim. *See* Clarkson v. Coughlin, 898 F.Supp. 1019, 1048 (S.D.N.Y. 1995) ("Although the submissions of the

parties indicate that some class members [who were hearing-impaired inmates] may have received

some education and vocational training, the record indicates that no qualified sign language

interpreters were made available to any class members for educational purposes.   Thus no class

member received educational programming sufficient to satisfy the state statutory mandate, that is

they effectively received no education or education grossly unsuited to the goals of socialization and

rehabilitation. No triable issue of fact is presented by this question and summary judgment will

issue in favor of Plaintiffs as to a violation of their due process rights regarding accommodations in

educational programs").

         Without identifying any specific defendants, defendants generally also argue that

"plaintiff has not stated a claim against each individual under th[is] theor[y]".  Defendants'

Memorandum of Law [126-1], p. 30.   This claim is only expressly alleged against defendant

Lepkowski, as the Education Supervisor,  and plaintiff alleges that he "voiced his needs to

Lepkowski to no avail".  Amended Complaint [10], ¶264. As recognized in Keitt I, "personal

involvement is sufficiently pled where the grievant alleges an ongoing constitutional violation such

that the supervisory official who reviews the grievance can remedy it directly." Keitt, 882 F.Supp.2d

at 424.  At this stage, this allegation  is sufficient to establish the personal involvement of defendant

Lepkowski.  See generally McKenna v. Wright, 386 F.3d 432, 438 (2d Cir. 2004) ("When

allegations of improperly denied medical treatment come to the attention of a supervisor of a

medical program, his adjudicating role concerning a grievance cannot insulate him from

responsibility for allowing the continuation of allegedly unlawful policies within his supervisory

responsibility").

Liberally interpreting the Amended Complaint, it can also be read as asserting this claim against defendants Fischer and Bradt in their supervisory capacities.  As discussed above, in Keitt I, the court rejected the defendants' motion to dismiss defendant Fischer for lack of personal involvement.  *See* Keitt, 882 F.Supp.2d at 424.  With respect to defendant Bradt, the Amended Complaint  attaches a grievance dated December 23, 2009 from plaintiff complaining of a variety of conduct related to the lack of accommodations, including that he "has been denied necessary accommodations to participate in Adult Basic Education . . . program.  As such he has been deprived of opportunity to acquire a GED".  Amended Complaint [10], Ex. 4.  That grievance has EL 36.600-10 handwritten on the top of the page.  Corresponding to this grievance number, the Amended Complaint attaches a response dated January 27, 2010 from defendant Bradt denying the grievance.  Id.  At this stage, defendant Bradt's response to the grievance, which demonstrates that he investigated plaintiff's claims, is also sufficient to establish Bradt's personal involvement.  "'The law is clear  . . . that a prison official's mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of §1983.' . . .  Nevertheless, '[a] supervisor's detailed, specific response to a plaintiff's complaint' may suffice to establish personal involvement." Watson v. Wright, 2013 WL 1791079, *9 (W.D.N.Y. 2013), adopted 2013 WL 1789578 (Arcara, J.);  Boddie v. Morgenthau, 342 F.Supp.2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint").

Moreover, liberally interpreting the Amended Complaint, to the extent it is alleges that defendants Reynolds'  and  Fusco's conduct may have contributed to the alleged deprivation of

an education, I likewise recommend that the claim against these defendants not be dismissed. However, since defendant Livermore's alleged conduct is unrelated to the education services provided to plaintiff, I recommend that this claim be dismissed as against him.

### b.    Fourteenth Amendment:  Equal Protection

Defendants argue that "it is unclear against who the claim is asserted or on what grounds".  Defendants' Memorandum of Law [126-1], p. 30.  Among his allegations against defendant Bradt, plaintiff  alleges that "he is not equally protected because other disabled individuals have accommodations".  Amended Complaint [10], ¶228.  Likewise, he alleges that defendant Fischer "knew or should have known . . . that severe learning disabilities such as dyslexia exist, and need more than the accommodations provided for [other disabilities]" (id., ¶193).  He further alleges that inmates are not permitted to attend a strength and fitness program if they do not have a GED or are not attending school, and that defendant Livermore "refuses to allow [him] to attend a strength and fitness class/program because he refuses to attend school where he is denied reasonable accommodations" (id., ¶¶274-75).  He alleges that this constitutes a "[c]lear Equal Protection . . . Violation[]" (id., ¶276).   Therefore, liberally, construing his Amended Complaint, I conclude that plaintiff alleges equal protection claims against defendants Bradt, Fischer and Livermore.

Defendants argue that plaintiff's equal protection claim fails because "dyslexia . . . is not a protected class".  Defendants' Memorandum of Law [126-1], p. 30.  However, this does not prevent plaintiff from alleging a "class of one" equal protection claim.  *See* Scruggs v. Meriden Board  of Education, 2006 WL 2715388, *3 (D.Conn. 2006) ("Because disabled students

are not a protected class and there is no fundamental right to education, Plaintiff must make a 'class of one' equal protection claim. To do so, Plaintiff must allege that J.D. was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); Nelson v. City of New York, 2013 WL 4437224, *14 (S.D.N.Y. 2013) ("because disabled persons - or persons who are perceived to be disabled - are not a protected class, Plaintiff must also show that this disparate treatment was not reasonably related to any legitimate government interest").

In a class of one equal protection claim it is alleged that the plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment".  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.  Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59-60 (2d Cir.), cert. denied, __ U.S.___ 131 S.Ct. 824 (2010).

Defendants argue that plaintiff does not allege that he was "treated differently from others similarly situated".  Defendants' Memorandum of Law [126-1], p. 30.  I agree.  Plaintiff does not allege that he is being singled out for differential treatment from other similarly situated dyslexic inmates, but rather that dyslexic inmates as a whole are not receiving the level of

accommodations or testing afforded to other disabled individuals.  *See, e.g.,* Amended Complaint

[10], ¶219 ("The defendant in discriminatory acts against plaintiff and individuals with learning

disability (i.e. dyslexia), fail to allow or provide reasonable accommodations"); ¶212 ("Plaintiff . . .

is being denied an adequate education because he is dyslexic and the State's Department of

Correctional Services fails to recognize that this condition . . . needs and should be accommodated

for.  Accommodations for the 'Severe' learning disabled, like the accommodations provided for

those with Sensorial Disabilities").  Plaintiff also  fails to identify any specific similarly situated

inmate.  *See* Camac v. Long Beach City School District, 2011 WL 3030345, *16 (E.D.N.Y. 2011)

("[T]here is no question that Plaintiffs have failed to allege the existence of similarly situated

comparators. After each allegation of wrongdoing done to Charles, the Complaint simply avers, in

wholly conclusory fashion, that 'similarly situated' non-disabled students and/or 'similarly situated'

students whose parents did not complain to the District about its failure to accommodate their

disabilities were not subjected to the same mistreatment.  Aside from assigning these unnamed

students the title of 'similarly situated,' the Complaint contains no other allegations showing how

'another person's circumstances . . . are prima facie identical' to Charles's").  Therefore I

recommend that plaintiff's equal protection claims be dismissed.


        c.      **First Amendment**

            i.      **Access to Courts**

        Plaintiff alleges that the denial of accommodations in receiving legal and library

assistance has led to a denial of access to courts.  Amended Complaint [10], ¶237.  Defendants

argue that "plaintiff's bare bones allegations that he was denied meaningful access to court fail to

state a claim against any defendant.  Other than concluding that he was denied access, plaintiff

provides no particularity of any deadline missed or any injury that resulted . . . . He fails to state

when he requested accommodations, when the alleged denials occurred, under what circumstances,

who was involved, and what, if any injury occurred".  Defendants' Memorandum of Law [126-1], p.

20.  I agree.

   To establish a First Amendment  access to courts claim, "a plaintiff must show that

the defendants (1) engaged in deliberate and malicious conduct that (2) resulted in actual injury, *i.e.*,

that hindered the plaintiff's effort to pursue a legal claim".  <u>DeMeo v. Tucker</u>, 509 Fed.Appx. 16, 18

(2d Cir. 2013) (Summary Order).  *See* <u>Pontervio v. Kaye</u>, 2007 WL 141053, *9 (S.D.N.Y.), <u>recon</u>.

<u>denied</u>, 2007 WL 1029901 (S.D.N.Y.2007), <u>aff'd</u>, 328 Fed.Appx. 671 (2d Cir. 2009) (Summary

Order) ("The essence of a denial of access claim is that a plaintiff must have effectively lost (or was

severely hampered in) the ability to file a lawsuit, typically by egregious or systemic violations of

due process").  "[T]he requirement of actual injury 'derives ultimately from the doctrine of

standing.'"  <u>Monsky v. Moraghan</u>, 127 F.3d 243, 247 (2d Cir.1997), <u>cert</u>. <u>denied</u>, 525 U.S. 823

(1998) (*quoting* <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996)).

   While plaintiff  alleges that his "attempts to present his case to the court has been

frustrated and/or impeded constantly" (Amended Complaint [10], ¶239), he fails to identify any

specific lawsuit or claim that was hindered by defendants' alleged conduct, which is fatal to this

claim.  *See* <u>Walker v. Snyder</u>, 2007 WL 2454194, *8  (N.D.N.Y. 2007) ("To the extent that plaintiff

is alleging a denial of access to courts in this claim, he has not specified one file or one case that

was actually affected by defendant Snyder's alleged actions.  Thus, plaintiff's access to courts claim

may be dismissed as against all defendants . . . for failure to establish actual injury to any of his pending lawsuits").[6]

Therefore I recommend that plaintiff's First Amendment access to courts claim be dismissed.

### ii.      Retaliation

Plaintiff alleges that defendant Fusco "instructed [him] to quit requesting . . . accommodations" (Amended Complaint [10], ¶268), and that when plaintiff again requested an accommodation, he "threatened to issue him a misbehavior report for not doing class assignments, disturbances, interruptions, and offenses he never committed" (id., ¶269).

"To pursue such a claim, a prisoner must adduce evidence of (1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." Bilal v. White, 494 Fed.Appx. 143, 146 (2d Cir. 2012) (Summary Order).[7] "[I]n the prison context [the Second Circuit has] defined 'adverse action' objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004). "[T]his objective test

---

[6]      In his opposition to defendants' motion, plaintiff states that "defendants' misconduct did cause inaction in . . . Annetts". Plaintiff's Declaration [128], ¶11. To the extent this can be construed as plaintiff's alleged injury supporting his access to courts claim, it is not alleged in the Amended Complaint, which was filed before defendants were granted summary judgment in Annetts.

[7]      Defendants recognize that a claim of retaliation may be asserted pursuant to Title V of the ADA. Defendants' Memorandum of Law [126-1], p. 29, n. 70. Nonetheless, as they argue, "District courts within the Second Circuit have consistently held that the Eleventh Amendment bars retaliation claims under Title V of the Americans with Disabilities Act". Morales v. New York,    F.Supp.2d   , 2014 WL 2158979, *7 (S.D.N.Y. 2014).

applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits".  Id.

Defendants argue that "plaintiff's allegation that Fusco *threatened* to issue misbehavior reports [do not] amount to adverse action because neither threats, nor threats of a false behavior report amount to adverse action".  Defendants' Memorandum of Law [126-1], p. 28 (emphasis in original).  Generally, "threats are . . .  held not to rise to the level of adverse action that will support a First Amendment retaliation claim".  Marrero v. Kirkpatrick, 2012 WL 2685143, *7 (W.D.N.Y. 2012).  However, "verbal threats may constitute an adverse action if they are sufficiently specific and direct".  Mateo v. Bristow, 2013 WL 3863865, *5 (S.D.N.Y. 2013). *See*  Hill v. Laird, 2014 WL 1315226, *8 (E.D.N.Y. 2014) ("Although non-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim, . . .  some verbal threats, depending on the specificity and context, can constitute an adverse action").  I conclude that the allegations of the Amended Complaint, which must be taken as true for purposes of this motion, plausibly establish that the threats would have deterred a similarly situated inmate of ordinary firmness from exercising his First Amendment right to request accommodations. *See* Pierce v. Monell, 2007 WL 2847317, *8 (N.D.N.Y. 2007).

Defendants also argue that these threats did not "quell his speech", as plaintiff filed a grievance and was directed to file a request for reasonable accommodations.  Defendants' Memorandum of Law [126-1], p. 28.  However, as discussed above, the test for an adverse action is based on an objective individual of ordinary firmness.  Thus, it "applies even where a particular plaintiff was not himself subjectively deterred".  Gill, 389 F.3d at 381.

Plaintiff also alleges First Amendment claims against defendants Fischer (Amended Complaint [10], ¶187), Reynolds (id., ¶249), and Bradt (id., ¶218).[8]   Defendants argue that these claims cannot be construed as "touching remotely on speech or alleged retaliation".  Defendants' Memorandum of Law [126-1], p. 27.  I agree with respect to defendants Reynolds, and recommend that the retaliation claims against him be dismissed, but disagree as to defendants Bradt and Fischer.

The Amended Complaint [10] alleges that in addition to being threatened with tier tickets for requesting accommodations, plaintiff has been "given false tier tickets because staff is aware that he is asking the court for redress, and hopes to install fear by the tactic of retaliation" (id., ¶244).  He also alleges that the fact that he is "being harassed, and being issued false misbehavior reports are well know by [defendant Bradt]" (id., ¶243).  Likewise, he alleges that defendant Fischer "knew or should have known that because of complaints, plaintiff suffered and suffers retaliation an on-going condition" (id., ¶195).   Therefore, I recommend that the retaliation claims against defendants Fischer and Bradt not be  dismissed.[9]

---

[8]     Although no First Amendment claims are alleged against defendant Livermore, defendants argue that to the extent plaintiff is alleging retaliation against him, that claim fails since he does not allege that he was denied strength and fitness classes because of his speech, but rather because he did not attend school. Defendants' Memorandum of Law [126-1], pp. 26-27.  I agree with defendants. *See* Amended Complaint [10], ¶274

[9]     The Amended Complaint can also be construed as alleging a claim against defendant Fusco for constructively discharging him from the adult basic education program by not providing him with accommodations and by threatening him with retaliation for requesting accommodations. Amended Complaint [10] ¶270.  However, as defendants argue (defendants' Opposing Memorandum of Law [131], p. 15), "[f]reedom from discrimination on the basis of disability is a right secured by statute not by the Constitution.  Thus, the plaintiff's claim that [he] was constructively discharged on the basis of [his] disability is not actionable under §1983".  Fierro v. New York City Department of Education, 994 F.Supp.2d 581, 590 (S.D.N.Y. 2014) (internal citations and quotations omitted).

### d. Eighth Amendment

Plaintiff alleges that all of the individual defendants violated his Eighth Amendment rights. Amended Complaint [10], ¶187, 218, 249, 260, 266, 273. These claims appear to arise from his allegation that these defendants "showe[ed] deliberate indifference . . . to his disability" (id., ¶¶258, 270). Defendants argue that these claims must dismissed because there is no Eighth Amendment right to educational opportunities for inmates. Defendants' Memorandum of Law [126-1], p. 29. I agree.

"Prisoners and detainees have constitutionally protected rights to receive adequate food, clothing, shelter, medical care, and security. However, Plaintiffs have no eighth amendment right to educational activities." Mallgren v. Burkholder, __ F.Supp.3d__, 2014 WL 5025900, *4 (E.D.N.Y. 2014) (internal quotations and citations omitted); Giano v. Cuomo, 1998 WL 760262, *6 (N.D.N.Y.1998) ("The lack of specialized educational and rehabilitative programs particularized to plaintiff's needs do not give rise to a deprivation of his Eighth Amendment rights"); Griffin v. Coughlin, 743 F.Supp. 1006, 1017 (N.D.N.Y. 1990) ("Plaintiffs have no eighth amendment right to . . . educational activities"). Therefore, I recommend that plaintiff's Eighth Amendment claims be dismissed.

### e. Fifth Amendment

Plaintiff alleges Fifth Amendment violations against defendant Bradt. Amended Complaint [10], ¶218. As defendants argue (defendants' Memorandum of Law [126-1], p. 26, n. 64), "the Fifth Amendment is applicable to federal actors, not state actors". Rosado v. Schneiderman, 2014 WL 2763622, *8 (N.D.N.Y. 2014). Since the claims here are only against

"state actors to whom the Fifth Amendment is applicable only through the Fourteenth Amendment",

I will construe plaintiff's claims as brought under the Fourteenth Amendment, and recommend that

the Fifth Amendment claims be dismissed.  <u>Dellate v. Great Neck Union Free School District</u>,

2010 WL 3924863, *5 (E.D.N.Y. 2010).

3.       **42 U.S.C. §§1985 and 1986**

In <u>Keitt</u> I, the court interpreted the Amended Complaint as alleging claims pursuant

to 42 U.S.C. §§1985 and 1986.  *See* <u>Keitt</u>, 882 F.Supp.2d at 44 ("The State Defendants do not seek

to dismiss, on the merits, the Section 1985 and 1986 claims against them").  However, as

defendants note and plaintiff does not dispute, the Amended Complaint states "plaintiff will not

renew conspiracy claims herein due to the high threshold". Amended Complaint [10], ¶233.

Moreover, no such claims are specifically alleged against the individual defendants.  Therefore, I

recommend that these claims be dismissed.

4.       **Plaintiff's ADA and Rehabilitation Act Claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of . . . a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.[10]  "The ADA

applies to inmates in state prisons." <u>Annetts</u>, 2012 WL 7151333, *6.

---

[10]       Although plaintiff devotes a portion of his opposition to arguing that Eleventh
Amendment immunity does not bar his claims under the ADA and Rehabilitation Act (plaintiff's
Declaration [128], ¶¶18-24), defendants did not argue in their initial motion that these claims were barred
by sovereign immunity.

"Similarly, the Rehabilitation Act, which has been similarly held to apply to state prisoners . . . protects a 'qualified individual with a disability' from exclusion of participation, denial of the benefits, or subjection to discrimination 'under any program or activity receiving Federal financial assistance,' because of the individual's disability." Harrington v. Vadlamudi, 2014 WL 4829483, *3 (N.D.N.Y. 2014) (quoting 29 U.S.C. §749(a)).

"In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are qualified individuals with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities. Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003), cert. denied, 541 U.S. 936 (2004).  Graham v. Watertown City School District, 2011 WL 1344149, *9 (N.D.N.Y. 2011) ("The ADA and Rehabilitation Act causes of action for failure to accommodate will be considered together"). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).[11]  It appears here that plaintiff is alleging ADA and Rehabilitation Act claims on the theories of disparate treatment and failure to make reasonable accommodations.

---

[11]     Although defendants interpret the Amended Complaint as alleging ADA and Rehabilitation Act claims based on due process violations (defendants' Memorandum of Law [126-1], pp. 20-23), plaintiff's theories under the ADA and Rehabilitation Act are limited to those set forth above.

      a.      **Claims against New York State**

Defendants argue that plaintiff's claims against New York State are "wholly redundant" of his claims against DOCCS and should be dismissed.  Defendants' Memorandum of Law [126-1], p. 24.   Plaintiff does not dispute this.  Therefore, I recommend that the claims against New York State be dismissed.

      b.      **Claims against the Individual Defendants**

To the extent plaintiff asserts violations of the ADA and Rehabilitation Act against the individual defendants for monetary damages, defendants argue that these claims must be dismissed.  Defendants' Opposing Memorandum of Law [131], p.12.

Courts  have held that "individual defendants may not be held personally liable for alleged violations of the ADA . . . or the Rehabilitation Act . . . . Nor can individuals be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities." Sutherland v. New York State Department of Law, 1999 WL 314186, *7 (S.D.N.Y. 1999).  *See* Carver v. Patterson, 11-cv-0032 (WMS)(HBS), January 14, 2014 Decision and Order [6], p. 7 ("It is well-established that Title ll of the ADA does not authorize suits against state officials in their individual or official capacities"); Maus v. Wappingers Central School District, 688 F.Supp.2d 282, 302 n. 10 (S.D.N.Y. 2010) ("[I]ndividuals cannot be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities"); Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007) ("[T]his Court and others have held that official capacity claims are not viable under the ADA"); Carrasquillo v. City of New York, 324 F.Supp.2d 428, 441 (S.D.N.Y.2004) ("Individuals cannot be named as defendants in ADA suits in either their official or

representative capacities."); <u>Myers v. New York-Department of Motor Vehicles</u>, 2013 WL 3990770, *9 (E.D.N.Y. 2013) ("numerous district courts in this circuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity"); <u>Ford v. Conway</u>, 2004 WL 1071171, *2 (W.D.N.Y. 2004) ("the ADA does not provide for liability against individual defendants in either their individual or official capacities"); <u>Kearney v. N.Y.S.</u>, 2011 WL 344755, *1 (W.D.N.Y. 2011) ("Claims for monetary damages under §1983 may only be brought against individuals based on their personal involvement, while claims under the ADA and The Rehabilitation Act may not generally be brought against individuals").

There is also contrary authority, including <u>Keitt I</u>, which held that "individuals can be sued in their official capacities under [the ADA and Rehabilitation Act]". <u>Keitt</u>, 882 F.Supp.2d at 456-57. However, even under that holding, the official capacity claims against the individual defendants would be redundant of the claims against DOCCS. *See* <u>Cabassa v. Oshier</u>, 2013 WL 1183296, *10 (N.D.N.Y. 2013) ("the Court grants Defendants' motion to dismiss Plaintiff's ADA and RA claims against Defendant Miller and Johnson in their official capacities as redundant of the claims against Defendant DOCCS"). Therefore, I recommend that the ADA and Rehabilitation Act claims against the individual defendants in their official capacities be dismissed.

### c.    Reasonable Accommodation

Plaintiff appears to characterize his ADA and Rehabilitation Act claims as alleging that he was denied accommodations in education, legal assistance, and at his disciplinary hearings. Amended Complaint [10], ¶237; Plaintiff's Declaration [128], ¶¶48, 51. "Under the ADA, public

entities are obligated to make reasonable accommodations for disabled individuals to ensure that they have meaningful access to public benefits. . . . Similarly, the Rehabilitation Act requires that qualified disabled individuals receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations.' . . . The purpose of these requirements is to ensure that services provided to non-disabled individuals are not denied to disabled individuals because of their disability". Maccharulo v. New York State Department of Correctional Services, 2010 WL 2899751, *3 (S.D.N.Y. 2010) (*quoting* Powell v. National Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004)). *See* Kearney v. N.Y.S. D.O.C.S., 2013 WL 5437372, *6 (N.D.N.Y. 2013) ("[A] defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services'"); Woods v. City of Utica, 902 F.Supp.2d 273, 280 (N.D.N.Y. 2012) ("A reasonable accommodation is one that gives the disabled person 'meaningful access' to the services sought"). "Despite the 'by reason of . . . disability' language, a plaintiff does not have to establish a 'disparate impact' to succeed on a reasonable accommodation claim under the ADA and Rehabilitation Act." Woods, 902 F.Supp.2d at 280 n. 9 (*citing* Henrietta D., 331 F.3d at 273 79).

Defendants challenge the second prong, arguing that "[p]laintiff's claims . . . fail because plaintiff is required to show that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability". Defendants' Memorandum of Law [126-1], p. 18.

### i.    Educational Services

In <u>Keitt I</u>, the court recognized that "[d]isabled individuals must be "provided meaningful access through reasonable accommodations . . . without otherwise fundamentally or substantially altering the underlying benefit or program." <u>Keitt</u>, 882 F.Supp.2d at 453 (*quoting* <u>Leocata v. Wilson  Coker</u>, 148 Fed.Appx. 64, 64 (2d Cir. 2005) (Summary Order). *See* <u>Maccharulo</u>, 2010 WL 2899751 at *3 ("a claim that challenges the adequacy . . . or the substance . . . of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act").  Although it noted that "[s]ome of the relief Keitt seeks in his Amended Complaint may substantively expand the scope of the adult basic education program", it did not  agree that "all of the accommodations that Keitt has requested at Elmira including allowing him to have more time to complete a test, to circle multiple choice answers rather than fill in a corresponding bubble, to have another prisoner read material to him or to listen to an audiobook to cover the same material being taught in the adult basic education class - would 'fundamentally alter' or 'substantially expand the scope' of the adult basic education classes." <u>Id</u>. at 454.

Defendants now argue that plaintiff's "judicial admissions . . . and his pleading in this case demonstrate that defendants never denied Keitt the opportunity to participate in educational services".  Defendants' Memorandum of Law [126-1], p. 19.  In support of this argument, they primarily point to the fact that plaintiff did not request accommodations for large print books, a reader, and extended testing times, until February 2010, *after* he had dropped out of school. (<u>id</u>., pp. 18-19).  Even if plaintiff did not make a written request for reasonable

accommodations until after he quit school,[12] he alleges that *while attending school*, his teacher, defendant Fusco, "refused to provide [him a] reasonable accommodation in the form of auxillary aids for educational purposes while attending class", but that defendant Fusco "instructed [him] to quit requesting such aids and accommodations because the prison do not provide such to learning disabled (dsylexic) inmates". Amended Complaint [10], ¶¶267-68. He further alleges that since defendants were "indifferent to his disability, willing to punish him because he could not keep up with other students, and cause him harm, [he] was compelled to sign out of [school]" (id., ¶270).

Defendants also note that in response to his January 1, 2010 grievance for failing to provide him with reasonable accommodations (Amended Complaint [10 ], Ex. 4, p. 1) and to his February 2, 2010 Request for a Reasonable Accommodation (id., Ex. 2, p. 2), he was invited to return to school. Defendants' Memorandum of Law [126-1], p. 19. However, none of these invitations to return to school reflect that defendants were willing to provide him with the reasonable accommodations he sought and allegedly required.

Defendants further argue throughout that plaintiff was not denied benefits "because of" the disability. Defendants' Memorandum of Law [126-1], p. 18. Although plaintiff alleges that defendants were deficient in diagnosing his dyslexia (*see, e.g.*, Amended Complaint [10], ¶253), liberally interpreting the Amended Complaint he also alleges that defendants knew or should have known of his dyslexia. *See, e.g.*, id., ¶197. Therefore, I recommend that this portion of defendants' motion be denied.

---

[12]     Plaintiff's February 2, 2010 Request for Reasonable Accommodation (Amended Complaint [10], Exhibit 2, p. 1), appears to have been made as a result of a response he received to his January 1, 2010 grievance based on the denial of reasonable accommodations, which "suggested the grievant file for 'reasonable accommodations'" (id., Exhibit 4, p. 1).

### ii.    Legal Assistance/Access to Courts

Plaintiff alleges that the denial of accommodations in receiving legal assistance has led to a denial of access to courts.  Amended Complaint [10], ¶237.  Defendants have construed this as asserting claims pursuant to the  ADA and Rehabilitation Act, and argue that these claims should be dismissed for the same reasons as his First Amendment access to courts claim.  Defendants' Memorandum of Law [126-1], p. 20.  I agree.

The requirement of an actual injury also applies to an access to courts claim under the ADA and Rehabilitation Act.  *See* McCauley v. Georgia, 466 Fed.Appx. 832, 837 (11 Cir. 2012),cert. denied, __ U.S.__, 133 S.Ct. 2814, rehearing denied, __ U.S__, 134 S.Ct. 46 (2013) ("Even accepting the allegations in McCauley's complaint as true, she fails to state an access to the courts claim because she did not allege actual injury . . . . Thus, . . . she has not . . . stated an access to the court claim under the ADA").  Therefore, for the same reasons I recommend denying plaintiff's First Amendment access to courts claim, I recommend dismissal of his ADA and Rehabilitation Act access to courts claims.

### iii.    Disciplinary Hearing

In addition to alleging that his Fourteenth Amendment due process rights were violated when he was denied adequate assistance during the June 2, 2010 disciplinary hearing, plaintiff also alleges that this violated his rights under the ADA and Rehabilitation Act.  In seeking dismissal of this claim, defendants repeat their argument that the absence of an atypical or significant hardship arising from plaintiff's seven days of keeplock confinement he served is fatal to this claim.  Defendants' Memorandum of Law [126-1], p. 21. However, defendants cite no authority

that only ADA and Rehabilitation Act  violations arising from the denial of accommodations at a

disciplinary hearing that meet <u>Sandin's</u> "atypical and significant hardship" standard are actionable.

Their remaining arguments also do not compel dismissal of plaintiff's ADA and Rehabilitation Act

claims.  They argue that he "does not indicate when, where, and how any defendant failed to

accommodate him and at which Tier hearings".  Defendants' Memorandum of Law [126-1], p. 20.

They argue that this claim is so lacking in detail that it is difficult to determine whether it is the

same claim he asserted in <u>Annetts</u> (<u>id.</u>, pp. 20-21).  These arguments ignore that plaintiff's due

process allegations are based on Exhibit 3 of the Amended Complaint ([10], ¶245), which includes

the relevant documentation concerning the June 2, 2010 disciplinary hearing, including his June 4,

2010 appeal to defendant Bradt stating that he asked for accommodations during the hearing

because of his dyslexia and was unable to defend himself, but "wasn't even afforded an assistant".

This documentation sufficiently details plaintiff's claim.  Therefore, I recommend that defendants'

motion to dismiss plaintiff's ADA and Rehabilitation Act claim arising from the denial of

accommodations during his disciplinary hearing be denied.


      **c.**     **Disparate Treatment**

      Defendants characterize plaintiff as alleging ADA and Rehabilitation Act claims

"based on an equal rights violation".  Defendants' Memorandum of Law [126-1], p. 23. Since, as

discussed above, the available  theories under the ADA and Rehabilitation Act are limited to

intentional discrimination (disparate treatment), disparate impact, or denial of reasonable

accommodations, I will interpret this argument as challenging plaintiff's ADA claim to the extent it

is based on a theory of disparate treatment.

In seeking dismissal of this claim, defendants make a number of arguments directed at a Fourteenth Amendment class of one equal protection claim. For example, they argue that "the disabled are not a suspect class for purposes of the Fourteenth Amendment" (id). They also argue that plaintiff must establish that "his treatment was not reasonably related to any legitimate penological interests" (id). However, "[c]laims under the ADA are unambiguously not subject to the same rational basis review as those brought under the 14th Amendment". Disability Rights New Jersey, Inc. v. Velez, 2011 WL 2976849, *17 (D.N.J. 2011).

The only argument defendants raise that addresses an ADA claim is that "plaintiff's allegations make clear that defendants did not discriminate against plaintiff *because* of his dyslexia". Defendants' Memorandum of Law [126-1], p. 23. In support of this argument they point to the fact that "those defendants who had even limited involvement with this issue said there was no evidence that plaintiff had dyslexia, but would check with Albany, meet with plaintiff to discuss available options, and recommended that plaintiff file for accommodations and re-enlist in school after he quit" (id., pp. 23-24). As discussed above, plaintiff alleges that defendants knew or should have known that he was dyslexic and failed to provide him with accommodations for that disability, which are sufficient at this stage to support this portion of his claim. Therefore, I recommend that this portion of defendants' motion be denied.

### 5.    Qualified Immunity

Defendants argue that the individual defendants are entitled to qualified immunity since "different federal court judges reached different result in addressing the legal issues raised here . . . . it can hardly be said that the constitutional and statutory rights at issue were well settled"

and "plaintiff's judicial admission, his pleadings, and the decision in <u>Annetts</u> demonstrate that none of the defendant[s] could have had fair warning that their respective conduct violated Keitt's rights".  Defendants' Memorandum of Law [126-1], pp. 32-35.

       "Qualified immunity is the doctrine that shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1039 (2d Cir. 1990) (*quoting* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied:  (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 211 (2d Cir.), <u>cert. denied</u>, 552 U.S. 818 (2007).

       "Usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted".  <u>Green v. Maraio</u>, 722 F.2d 1013, 1018 (2d Cir. 1983).  In order to succeed at the pleading stage, "[t]he defense must be based on facts appearing on the face of the complaint."  <u>Rivera v. Fischer</u>, 655 F.Supp.2d 235, 239 (W.D.N.Y.2009) (internal citations omitted).  *See* <u>Taylor v. Vermont Department  of Education</u>, 313 F.3d 768, 794 (2d Cir. 2002) ("[A] ruling on the availability of a qualified immunity defense would be premature.  The qualified immunity issue in this case turns on factual questions that cannot be resolved at this stage of the proceedings").  Therefore, "a qualified immunity defense . . . faces a formidable hurdle when advanced on such a motion  and is usually not successful."  <u>Field Day, LLC v. County of Suffolk</u>, 463 F.3d 167, 192 (2d Cir. 2006).  *See* <u>Ramirez v. Hempstead Union Free</u>

School District Board of Education, ___ F.Supp.2d ___, 2014 WL 3547374, *13 (E.D.N.Y. 2014) ("[A] 12(b)(6) motion is a mismatch for a qualified immunity defense and almost always a improper basis for dismissal"). This case is no exception.

The contours of plaintiff's Fourteenth Amendment due process and First Amendment right against retaliation were well settled at the time of the alleged occurrences and accepting the allegations of the Amended Complaint as true, I am unable to conclude as a matter of law that defendants' conduct was objectively reasonable.

**CONCLUSION**

For these reasons, I recommend that defendants' motion to dismiss [126] be granted to  the extent it seeks dismissal of:

- - all claims pursuant to 42 U.S.C. §§1985 and 1986;

- - the following claims pursuant to 42 U.S.C.  §1983:   Fifth and Eighth Amendment violations, denial of access to courts in violation of the  First Amendment, retaliation in violation of the First Amendment against defendant Reynolds,  Fourteenth Amendment due process violations arising from his May 2010 disciplinary hearing, Fourteenth Amendment due process violations against defendant Livermore arising from the alleged violation of New York Correction Law §136, and Fourteenth Amendment equal protection violation; and

- - all claims against New York State and the individual defendants in their official  capacities under the ADA and Rehabilitation Act, as well as plaintiff's reasonable accommodation claims arising from the alleged denial of access to courts.

In all other respects, I recommend that defendants' motion to dismiss [126] be denied and that plaintiff's cross-motion for partial summary judgment [128] be denied in its entirety.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by January 23, 2015 (applying the time frames set forth in Rules  6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 6, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge