UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVIN KEITT,                                    11-CV-855-LJV-MJR
                                                REPORT AND RECOMMENDATION
                    Plaintiff,

          -v-

NYS DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, *et al.*,

                    Defendants.
_____

          This case has been referred to the undersigned for all pre-trial matters, including

preparation of a report and recommendation on dispositive motions.  (Dkt. No. 151).

Before the Court is Defendants' motion for summary judgment (Dkt. No. 154) dismissing

plaintiff Devin Keitt's Amended Complaint.   For the following reasons, it is

recommended that the motion be granted.

## **BACKGROUND**

          *Pro se* plaintiff Devin Keitt is an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").   His surviving

claims arise out of his incarceration at the Elmira Correctional Facility ("Elmira")

between October 2009 and July 2010.  The remaining defendants are the New York

State Department of Correctional Services (now known as DOCCS), Denise Fusco, a

teacher in the Education Department at Elmira, Thomas Lepkowski, the Educational

Supervisor at Elmira, Douglas C. Reynolds, who at all relevant times served as the

Deputy Superintendent of Program Services at Elmira, Mark Bradt, who at all relevant

times served as Superintendent of Elmira, and Brian Fischer, who at all relevant times served as the Commissioner of DOCCS.

Keitt alleges that he is dyslexic.  At Elmira, he asked DOCCS to accommodate his alleged impairment while he attended adult basic education classes, but Fusco advised him that DOCCS does not accommodate dyslexic inmates.  (Dkt. No. 10 (Am. Compl.) ¶¶148-50; 164; 268).  Not having received accommodations for his alleged impairment, Keitt could not complete his classwork, leading his teacher, Fusco, to "threaten[ ] to issue him a misbehavior report for not doing class assignments, disturbances, interruptions, and offenses he never committed."  (*Id.* ¶269).

Keitt further contends that he requested reasonable accommodations for a disciplinary hearing regarding a misbehavior report he received in May 2010.  (*Id.* ¶245).  At the hearing, Keitt advised the hearing officer that he could barely read and write and that he could not defend himself without some type of accommodation, such as an inmate assistant.  (*Id.*).  Despite Keitt's complaints, he did not receive any accommodation, and the hearing officer found him guilty of the charges in the misbehavior report.  (*Id.*).

Finally, Keitt alleges that he was retaliated against for requesting reasonable accommodations.  He seeks to hold Fischer and Bradt liable for the retaliation based on their alleged knowledge of grievances and disciplinary appeals concerning the retaliation.  (*Id.* ¶¶194-95; 243-45).

### The Annetts and Hawk Actions

This is not the only action Keitt has brought alleging that DOCCS officials mistreated him on account of his dyslexia.  In 2010, after Keitt had commenced the

instant action, he brought suit in the Northern District of New York alleging, among other claims, that his "ADA [Americans With Disabilities Act] right to receive reasonable accommodation was violated when he was denied inmate assistants for his disciplinary hearings" at Clinton and Upstate Correctional Facilities in 2007 and 2008. *See Keitt v. Annetts*, No. 10-CV-157(TJM/CFH), 2012 WL 7151333, at *4 (N.D.N.Y. Dec. 3, 2012), *report and recommendation adopted*, 2013 WL 599942 (N.D.N.Y. Feb. 15, 2013). The *Annetts* Court granted summary judgment dismissing Keitt's ADA claim, concluding that a rational fact finder could not find that his alleged impairment, dyslexia, substantially limits one or more of his major life activities:

> The record belies Keitt's assertion that his alleged impairments limit his ability to hear, read, think, or communicate in a substantial manner. A number of witnesses testified at Keitt's disciplinary hearings that they never experienced difficulty in conversing with Keitt concerning orders, directions, and transfers. Moreover, Keitt's hearing officer, . . . supported by witness testimony, observed the same when Keitt successfully engaged in a discussion concerning his level changes and personal property. Further, Keitt demonstrated throughout the disciplinary proceedings that he could hear, think, and communicate by selecting inmate assistants, requesting specific types of evidence, and asking and responding to questions. . . . Keitt conceded that he can read within a certain, though unknown, grade level.

*Id.* at *6. The *Annetts* Court also found that "the record neither contains a documented history of Keitt's alleged impairments nor that Keitt was regarded by others as having such impairments." *Id.* Keitt appealed this decision to the Second Circuit, which dismissed the appeal as "lack[ing] an arguable basis in law or fact." *Keitt v. Annetts*, Case No. 13-972 (2d Cir. Aug. 7, 2013 Mandate).

In 2012, Keitt commenced another action against DOCCS officials, this time alleging in relevant part that a Muslim Chaplain at Coxsackie Correctional Facility failed to accommodate his alleged impairment by denying him religious books on tape and auxiliary aids when he attended religious classes. *See Keitt v. Hawk*, No. 9:13-cv-850(GLS/ATB), 2015 WL 1246058, at *5 (N.D.N.Y. Mar. 18, 2015). In moving for summary judgment, the *Hawk* defendants argued that *Annetts* collaterally estops Keitt from asserting his ADA claim. *Id.* at *17. The *Hawk* Court agreed and dismissed Keitt's claim, ruling that "[t]he issue of [Keitt's] dyslexia was finally litigated" in *Annetts* and Keitt "cannot base another ADA claim on his alleged dyslexia." *Id.* at *18.

_Relevant Procedural History_

Keitt commenced this action in the Southern District of New York in 2009. (Dkt. No. 2).[1] His original complaint named more than one hundred defendants and asserted claims arising in sixteen different facilities. (*See* Dkt. No. 70 at 10).[2] It did not, however, contain any allegations regarding his incarceration at Elmira, as he had not yet been transferred to that facility. After Keitt filed suit, the Southern District directed him to file an amended complaint. (Dkt. No. 9 at 5). On July 8, 2010, Keitt filed his Amended Complaint alleging, *inter alia*, that Defendants mistreated him at Elmira because he is dyslexic. (*See* Dkt. No. 10 (Am. Compl.)). Defendants thereafter moved for partial dismissal of the Amended Complaint and to sever and transfer to this District any remaining claims relating to Keitt's incarceration at Elmira. (Dkt. No. 35). Keitt opposed the motion and cross-moved for leave to file a second amended complaint.

---

[1]     The docket indicates that Keitt filed his complaint on October 7, 2009 (*see* Dkt. No. 2), but Defendants point out that an order filed in this case in March 2010 shows that he filed the complaint in June 2009. (Dkt. No. 8 at 4). Whether Keitt commenced this action in June or October 2009 is not relevant to the Court's recommendation on Defendants' motion.

[2]     Page number citations for docketed items refer to the page number(s) assigned by CM/ECF.

(Dkt. Nos. 49, 52). The Southern District granted Defendants' motion to dismiss in part, denied Keitt's motion for leave to file a second amended complaint without prejudice to renewal in this District, and transferred the surviving claims arising from Keitt's incarceration at Elmira to this District. (Dkt. No. 74).

After the case was transferred, the Hon. Jeremiah J. McCarthy, the Magistrate Judge to whom this case was initially assigned, issued a case management order requiring all motions to amend the pleadings and join other parties to be filed on or before January 23, 2012. (Dkt. No. 82 ¶2). A day after this deadline expired, Defendants moved for an extension of time to respond to the Amended Complaint. (Dkt. No. 84). On March 22, 2012, Judge McCarthy appointed counsel to represent Keitt. (Dkt. No. 90). The parties then agreed that Keitt may file a second amended complaint, with Defendants reserving their right to answer or otherwise move against the pleading. (Dkt. No. 94). After several extensions (Dkt. Nos. 96; 97; 99; 100), the last of which lapsed without any request for an extension or a second amended complaint being filed, Defendants moved to dismiss the Amended Complaint for failure to prosecute. (Dkt. No. 101). On November 8, 2013, Judge McCarthy issued a Report and Recommendation, later adopted by the Hon. Richard J. Arcara (the District Judge initially assigned to this action), recommending that the motion be denied. (Dkt. Nos. 115; 117). Judge McCarthy also granted Keitt's counsel's request to withdraw his representation. (Dkt. No. 114).

Following the resolution of Defendants' motion to dismiss for failure to prosecute, Keitt advised the Court that he would proceed with his Amended Complaint rather than

file a second amended complaint. (Dkt. No. 119). Defendants then answered the Amended Complaint. (Dkt. No. 121).

On February 6, 2014, Defendants moved pursuant to Fed. R. Civ. P. ("Rule") 12(c) to dismiss the Amended Complaint in its entirety. (Dkt. No. 126). Defendants' motion argued in part that the *Annetts* Court's dismissal of Keitt's ADA claim is collateral estoppel and precludes him from arguing in this action that he is disabled. In opposition to the motion, Keitt argued that he did not have a full and fair opportunity to litigate his disability in *Annetts* because the defendants in that action denied him access to a psychological report prepared by Dr. John E. Jannes (the "Jannes Report"). (Dkt. No. 128). The Report, which has not been submitted to the Court on the instant motion, was prepared by Jannes when Keitt was thirteen years old and states that Keitt suffers from cognitive deficits attributable to a developmental reading disorder. (*See* Dkt. No. 134 at 9). Judge McCarthy found it unclear whether the Jannes Report was in DOCCS' possession during the pendency of *Annetts*, whether Keitt properly requested the Report in that action, and whether the *Annetts* Defendants improperly denied the existence of the Report. (Dkt. No. 134 at 11-12). He therefore concluded for purposes of Defendants' Rule 12(c) motion that Keitt might not have had a full and fair opportunity to litigate his disability in *Annetts* and that Defendants' collateral estoppel defense should be denied. (*Id.*). Judge Arcara adopted Judge McCarthy's recommendation, agreeing with him that the full and fair opportunity to litigate question could not be decided on Defendants' Rule 12(c) motion because "there appears to be a number of issues of fact with respect to the discovery conducted in [*Annetts*] including whether [Keitt] had access to the [Jannes] [R]eport, whether it was properly requested by [Keitt]

and, if so, whether [Keitt's] requests were properly denied by [the *Annetts*] defendants." (Dkt. No. 143 at 9).  Judge Arcara did note, however, that Defendants could ultimately prevail on their collateral estoppel defense if it is shown that Keitt's failure to obtain the Jannes Report in *Annetts* was his own fault.  (*Id.*).

Although Judge McCarthy recommended that Defendants' collateral estoppel argument be rejected, he did recommend that several of Keitt's claims be dismissed for failure to state a cause of action, and Judge Arcara adopted this recommendation.  (*See* Dkt. Nos. 134; 143).  As a result, only the following claims remain in this action:  (1) claims against DOCCS under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §794 *et seq.*, alleging failure to accommodate and disparate treatment with respect to Keitt's attendance at adult basic education classes and the disciplinary hearing held on the May 2010 misbehavior report; (2) a 42 U.S.C. §1983 Fourteenth Amendment Due Process claim alleging that Fischer, Bradt, Lepkowski, Fusco, and Reynolds failed to provide Keitt with any education, or provided him with an education wholly unsuited to the goal of rehabilitation, in violation of New York Correction Law §136; (3) a §1983 First Amendment retaliation claim alleging that Fusco threatened Keitt with a false misbehavior report "for not doing class assignments, disturbances, interruptions, and offenses he never committed"; and (4) a §1983 First Amendment retaliation claim alleging that Fischer and Bradt knew that Keitt was retaliated against for requesting reasonable accommodations.  (*See* Dkt. Nos. 134; 143).  Defendants now move for summary judgment on each of these claims.  (Dkt. No. 154).

## DISCUSSION

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). While "[a]ll reasonable inferences and any ambiguities are drawn in favor of the nonmoving party," *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must read his opposition papers "liberally and interpret them to raise the strongest arguments that they suggest." *Morrison v. Parmele,* 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (quoting *Corcoran v. N.Y. Power Auth.,* 202 F.3d 530, 536 (2d Cir. 1999)), *aff'd*, 523 F. App'x 51 (2d Cir. 2013). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a

motion for summary judgment." *Singh v. N.Y. State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 233 (W.D.N.Y. 2012) (quoting *Cole v. Artuz,* No. 93 Civ. 5981(WHP)JCF, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

Under Local Rule of Civil Procedure ("Local Rule") 56, the party moving for summary judgment must submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56(a)(1). "Each such statement must be followed by citation to admissible evidence . . . ." *Id.* The party opposing the motion must then respond to each numbered paragraph and, if necessary, provide additional paragraphs containing additional facts as to which he contends there exists a genuine issue to be tried. Local Rule 56(a)(2). "Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." *Id.*

Pursuant to Local Rule 56, Defendants submitted a Statement of Undisputed Facts in support of their motion. (Dkt. No. 154-1 (Defs.' SOF)). After Defendants filed their motion, Keitt requested an extension of time to file response papers (Dkt. Nos. 157-60; 162), and the Court set a briefing schedule giving him until June 27, 2016 to respond and Defendants until July 11, 2016 to reply. (*See* May 13, 2016 Scheduling Notice). On July 8, 2016, Keitt filed his own, unsworn Statement of Undisputed Facts, paragraphs 1-71. (Dkt. No. 168 (Pl.'s SOF)).[3] The Court accepted Keitt's untimely

---

[3]    This submission contains separate typewritten and handwritten sections. The typewritten section is comprised of facts 1-42, while the handwritten section is comprised of facts 32-71. Typewritten facts 32-42 are the same as handwritten facts 32-42. Adding to the confusion is that Keitt's supplemental

submission and extended Defendants time to file reply papers to August 19, 2016. (Dkt. No. 169). On August 12, 2016, Keitt submitted a supplemental, unsworn Statement of Undisputed Facts, paragraphs 60-79. (Dkt. No. 177 (Pl.'s Supp. SOF)). Given Keitt's status as a *pro se* litigant, the Court accepted this document for filing and again extended Defendants time to file reply papers. (Dkt. No. 176). Defendants filed their reply on August 31, 2016.[4] (Dkt. No. 178). To date, Keitt has not filed a response to Defendants' Statement of Undisputed Facts.

The Court will not excuse Keitt's failure to comply with Local Rule 56. Pursuant to Local Rule 56(b), Defendants clearly warned him of the consequences of not complying with the Rule:

> [A]ll of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is no genuine issue to be tried) will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue requiring a trial.

(Dkt. No. 154 at 3). Keitt received the same warning in *Keitt v. Schunh*, an action he filed in this Court in 2011 in which summary judgment was granted dismissing his complaint. *See Keitt v. Schunh*, 1:11-cv-438-RJA-JJM (W.D.N.Y. Dec. 31, 2014 motion for summary judgment). "[Rule] 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute" where, as here, the plaintiff fails to properly respond to the defendants' Local Rule 56 statement.

---

Statement of Undisputed Facts is numbered 60-79. Facts 60-71 in Keitt's supplemental Statement of Undisputed Facts do not match facts 60-71 in his initial Statement of Undisputed Facts.

[4]    After Defendants filed their reply, the Court received multiple documents from Keitt concerning a memorandum of law he claims to have filed. (Dkt. Nos. 179-80; 182-84). Despite having sent Keitt status update and copy request forms which, if completed and returned by Keitt, would allow him to see what has been docketed in this action (Dkt. No. 182), the Court never received a memorandum of law from Keitt.

*See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  Thus, to the extent the facts within Defendants' Statement of Undisputed Facts are supported by evidence in the record, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005), the Court will deem each fact to have been admitted by Keitt.  *See* Local Rule 56(a)(2); *Pettus v. McGinnis*, 533 F. Supp. 2d 337, 339 (W.D.N.Y. 2008) ("There is no question that plaintiff has been adequately advised of the pendency of the motion, of the need for him to respond and the form in which he should do so, and of the consequences of not responding to defendants' arguments and factual allegations.  Since plaintiff has not done so, the Court may accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment.").[5]

As for Keitt's own Statement of Undisputed Facts (Dkt. No. 168) and his supplemental Statement of Undisputed Facts (Dkt. No. 177), the Court finds both documents to lack any evidentiary value because they are unsworn and do not cite admissible evidence in the record.  The Court has, however, carefully reviewed both documents and will liberally construe them as argument in opposition to Defendants' motion.

## I.   *Exhaustion of Administrative Remedies*

Defendants first argue that Keitt failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA").  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility

---

[5]   The Court has confirmed that Defendants' proposed facts cited herein are supported by evidence in the record.

until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The word 'brought' means *commenced*." *Prescott v. Annetts*, No. 09 Civ. 4435(CM)(LMS), 2010 WL 3020023, at *4 (S.D.N.Y. July 22, 2010). Thus, exhausting administrative remedies after filing suit but before filing an amended complaint does not satisfy the PLRA. *Id.* ("Plaintiff 'brought' this action when he filed his initial complaint on May 8, 2009, and was assigned a docket number. He did not 'commence' or 'institute' this action when he subsequently amended his complaint."); *Hawk*, 2015 WL 1246058, at *16 ("Subsequent exhaustion after suit is filed is insufficient to satisfy the PLRA requirement."). The PLRA applies to each of Keitt's surviving claims. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Crichlow v. Crowley*, No. 13-CV-6624CJS, 2015 WL 1808626, at *5 (W.D.N.Y. Apr. 20, 2015) ("As the exhaustion statute indicates, it applies to §1983 claims and claims under any other Federal law, including the ADA and §504.") (internal quotation marks and citations omitted).

In New York, an inmate exhausts his administrative remedies by following a three-step grievance and appeal procedure: "(1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"), which is comprised of inmates and DOCCS employees; (2) if appealed, review of the IGRC's determination by the superintendent of the facility; and (3) if the superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC")." *Robinson v. Viscuso*, No. 10-CV-326, 2013 WL 5470013, at *12 (W.D.N.Y.

Sept. 30, 2013) (citing 7 N.Y.C.R.R. §701.5).  "In general, it is only upon completion of

all three levels of review that a prisoner may seek relief in federal court . . . ."  *Crenshaw*

*v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010).

Here, it is undisputed that Keitt exhausted three grievances concerning

Defendants' alleged misconduct at Elmira:

- Grievance EL-3660-10, filed on January 1, 2010, in which Keitt complains of difficulties with an educational instructor at Elmira and the alleged denial of reasonable accommodations in education.  The CORC resolved the grievance on April 14, 2010.  (Dkt. No. 154-1 (Defs.' SOF) ¶12; Dkt. No. 154-7 (Hale Dec.) ¶9 & Ex. A).

- Grievance EL-37240-10, filed on June 23, 2010, in which Keitt claims that he was denied legal assistance at Elmira.  The CORC resolved the grievance on October 6, 2010.  (*Id.*).

- Grievance EL-37324-10, filed on July 22, 2010, in which Keitt complains of the denial of property.  The CORC resolved the grievance on October 27, 2010.  (*Id.*).

Defendants argue, however, that Keitt improperly "brought" this suit before he

exhausted each grievance.  The Court agrees.  The CORC did not issue decisions on

the three grievances until 2010, after Keitt commenced this action in 2009.  Although

DOCCS did not even transfer Keitt to Elmira until after he commenced this action,

making it impossible for him to have timely exhausted his administrative remedies

before bringing this suit, the PLRA unambiguously requires claims to be exhausted

before suit is brought.  "'[B]rought' means *commenced*."  *Prescott*, 2010 WL 3020023, at

*4.  Thus, the fact that Keitt filed his Amended Complaint in July 2010 after having fully

exhausted the first of his three grievances does not defeat dismissal under the PLRA.

Keitt should have instead commenced a new action after he had completely exhausted

his Elmira grievances. This may seem like a harsh result, but it is compelled by the plain language of the PLRA.

Contrary to Keitt's argument (Dkt. No. 168 (Pl.'s SOF) ¶¶3; 6), the grievances he filed at Upstate Correctional Facility in 2008 and 2009 do not satisfy the exhaustion requirement. "The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (alteration in original) (quoting *Porter,* 534 U.S. at 524-25). Keitt's Upstate grievances do not meet this requirement because he had not yet been transferred into Elmira when he filed the grievances. (*See* Dkt. No. 154-7 (Hale Dec.) Ex. A). Thus, the grievances did not alert DOCCS to any wrongdoing at Elmira, nor did they afford corrections officials any opportunity to remedy the alleged wrongdoing there. Accordingly, it is recommended that Keitt's claims be dismissed under the PLRA for failure to exhaust administrative remedies. Even assuming, however, that Keitt did properly exhaust his claims, the Court agrees with Defendants that each claim fails on the merits. The Court will discuss the merits of Keitt's ADA and RA claims before turning to his §1983 claims.

II.    *ADA and RA Claims*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Similarly, §504 of the Rehabilitation Act, 29 U.S.C. §794(a), provides in relevant part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  "In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding."  *Id.*

Defendants argue that Keitt's ADA and RA claims should be dismissed because he is not disabled within the meaning of either act.  "The term 'disability' means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. §12102(1); *Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 748 F.3d 471, 472 (2d Cir. 2014) ("[T]he definition of 'disability' in Section 12102 of the ADA applies to all Titles of the ADA."); *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 159 (2d Cir. 2016) ("Section 504 expressly incorporates, with certain qualifications not applicable here, the ADA's definition [of disability].").  In *Annetts*, the Court ruled that Keitt is not disabled because his alleged impairment, dyslexia, does not substantially limit a major life activity of his. That finding is collateral estoppel here and compels dismissal of Keitt's claims.

Collateral estoppel applies where:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146 (2d. Cir. 2005) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). "[T]he party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d. Cir. 1991).

The first, second, and fourth elements of the collateral estoppel test are met here because *Annetts* concerned the identical question of whether Keitt's alleged impairment, dyslexia, substantially limits one or more of his major life activities, and that question was litigated and decided against Keitt when the *Annetts* Court dismissed his ADA claim.[6]  That leaves the third element — whether Keitt had a full and fair opportunity to litigate his disability in *Annetts*.  In declining to rule for Defendants on that issue earlier in this litigation, the Court found it unclear whether Keitt had access to the Jannes Report in *Annetts*, whether he properly requested the Report, and, if so, whether the *Annetts* defendants properly denied his requests for the Report.  (Dkt. No. 143 at 9).  The Court did rule, however, that if Keitt is found responsible for having failed to obtain the Report in *Annetts*, then collateral estoppel should apply.  (*Id.*).

In *Annetts*, Keitt moved to compel the production "of the mental health recoreds pertaining to all educational recoreds from a educational psycoligist [sic]."  *Annetts*, Case No. 10-cv-157 (N.D.N.Y. Nov. 3, 2011 motion to compel).  This request plainly

---

[6]    Although Keitt does not appear to argue that there is a "record" of his alleged impairment or that he was "regarded" by others as having such an impairment, §12102(1)(B), (C), the *Annetts* Court ruled against him on these issues as well.  *See Annetts*, 2012 WL 7151333, at *6.

encompasses the Jannes Report.  The *Annetts* defendants opposed Keitt's motion, arguing *inter alia* that he failed to serve discovery demands for the requested documents.  *Id.* (Nov. 4, 2011 opposition to motion to compel).  The *Annetts* Court agreed and denied Keitt's motion:

> Plaintiff's motion seeking an order compelling defendants to comply with discovery is DENIED based on defendants' letter response [ ] whereby the defendants state that plaintiff has not served defendant[s] with any discovery demands, and that defendants have complied with the obligations of the pretrial scheduling order.  Further, plaintiff's motion failed to include copies or substantiation of any discovery demands purportedly served on defendants.

*Id.* (Nov. 7, 2011 Text Order).

By demonstrating that Keitt failed to properly request the Jannes Report in *Annetts*, Defendants have established that Keitt was not wrongfully deprived of the Report in that action.  Keitt has not come forward with any evidence to raise an issue of fact for trial on this point.  At his deposition in the instant action, he testified that he did not know whether he served discovery demands in *Annetts*.  (Dkt. No. 154-1 (Defs.' SOF) ¶62).  When defense counsel asked Keitt if he had any documents reflecting that he served discovery demands in *Annetts*, Keitt testified that he could not recall, and that many of his litigation materials were destroyed in a fire at his prior correctional facility.  (Dkt. No. 154-9 (Keitt Dep. Tr.) at 23).  Accordingly, Keitt's failure to obtain the Jannes Report in *Annetts* must be deemed to be his own fault, and he cannot meet his burden of showing that he did not have a full and fair opportunity to litigate his disability in that action.

That Keitt was *pro se* in *Annetts* does not mean he lacked a full and fair opportunity to litigate his disability.  *See Cruz v. Root*, 932 F. Supp. 66, 69 (W.D.N.Y.

1996) (finding plaintiff's status as a *pro se* litigant important to, but not dispositive of, whether or not he had a full and fair opportunity to litigate in the prior proceeding). There is no evidence suggesting that Keitt was barred from serving discovery demands in *Annetts* or that he was somehow precluded from fully litigating his claims in that action.  Indeed, the *Hawk* Court found that Keitt had a full and fair opportunity to litigate his disability in *Annetts*.  *Hawk*, 2015 WL 1246058, at *18 ("The issue of plaintiff's dyslexia was finally litigated in [*Annetts*].  Although plaintiff claims that he did not have a full and fair opportunity to litigate the issue, even a cursory reading of Magistrate Judge Hummel's Report-Recommendation refutes this allegation.").  The *Hawk* Court went so far as to rule that Keitt "cannot base another ADA claim on his alleged dyslexia."  *Id.* This Court is not inclined to depart from *Annetts* and *Hawk* and afford Keitt a third opportunity to litigate whether he is disabled within the meaning of the ADA and RA. Accordingly, the *Annetts* Court's finding that Keitt is not disabled is collateral estoppel and operates as a complete bar to his ADA and RA claims.

In addition to their collateral estoppel defense, Defendants argue that Keitt's ADA and RA claims may be dismissed because no reasonable juror could find that he is disabled.   The Court agrees with Defendants and finds that both claims may be dismissed on this alternative basis.[7]

An individual is disabled within the meaning of the ADA and RA if he has "(A) a physical or mental impairment that substantially limits one or more [of his] major life

---

[7]    Defendants argue in the alternative that Keitt was not discriminated against or excluded from participation in services, programs, or activities at Elmira, and even if he was, it was not because of his alleged disability; that DOCCS had legitimate, nondiscriminatory reasons for its actions; and that DOCCS' actions were not motivated by discriminatory animus or ill will.  (Dkt. No. 154-2 (Defendants' Memo. of Law)).  Given the Court's finding that Keitt is not disabled within the meaning of the ADA and RA, it need not reach the merits of these other arguments.

activities . . .; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment."   42 U.S.C. §12102(1).   Keitt's alleged impairment, dyslexia, has been defined as "a brain-based type of learning disability that specifically impairs a person's ability to read." *Frank v. Plaza Constr. Corp.*, 186 F. Supp. 2d 420, 434 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).   Thus, the Court will construe Keitt's ADA and RA claims as alleging that his dyslexia substantially limits his major life activities of reading and learning.

Keitt's ADA and RA claims fail because Defendants have shown that his alleged impairment does not limit his ability to read or learn in a substantial manner.   Keitt's TABE[8] results show that he can read proficiently.   (Dkt. No. 154-1 (Defs.' SOF) ¶33).   He tested at an 8.7 grade reading level on the TABE administered to him in April 2006, and when he took a more difficult TABE in September 2007, the results showed that he could read at nearly a sixth grade level.   (*Id.* ¶¶28-31).   Keitt acknowledges that he can read, estimating that he reads at a fifth grade level.   (*Id.* ¶36).   That Keitt might read slower than others does not mean he is disabled.   *Teachout v. N.Y.C. Dep't of Educ.*, No. 04 Civ. 945(GEL), 2006 WL 452022, at *5 (S.D.N.Y. Feb. 22, 2006) ("Completing work at a slower pace due to dyslexia does not ordinarily qualify as a disability under the ADA.").

In *Annetts*, Keitt claimed that he cheated on the TABEs by having another inmate take the tests for him.   *Annetts*, 2012 WL 7151333, at *2.   The *Annetts* Court found Keitt's claim to be "unsupported" in light of the "safeguards and precautions" used by DOCCS in administering the tests.   *Id.* at *6 n.9.   Keitt now contends that he cheated on

---

[8]    TABE stands for Test of Adult Basic Education.   (Dkt. No. 154-1 (Defs.' SOF) ¶21).   It is a standardized test used for assessment in many adult education programs.   (*Id.* ¶22).   It is a timed test and contains subtests for reading, math, and language arts.   (*Id.* ¶23).

the 2006 TABE by having another inmate give him the answers.  (Dkt. No. 154-9 (Keitt Dep. Tr.) at 16.[9]  However, according to Linda Hollmen, the Director of Education for DOCCS, inmates are administered different versions of the TABE, meaning it would have been impossible for Keitt to have copied the answers for his TABE from another inmate.  (Dkt. No. 154-8 (Hollmen Dec.) ¶14).  Given Hollmen's testimony and Keitt's contradictory testimony in *Annetts*, his claim that he cheated on the TABEs is simply implausible and would not be credited by a reasonable juror.[10]

Keitt has not come forward with any evidence to raise a genuine issue of fact as to whether he is disabled.  Although he suggests that the Jannes Report indicates that he is disabled (Dkt. No. 168 (Pl.'s SOF) ¶15), he did not submit the report in opposition to Defendants' motion.[11]  In any event, it is doubtful that the Report supports Keitt's contention that he is disabled.  As Defendants point out, Jannes prepared the Report when Keitt was thirteen years old.  It offers no insight into Keitt's reading and learning abilities as a twenty-nine-year-old inmate at Elmira, nor does it account for the education, training, and counseling he received since the age of thirteen.  *See Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 989 (D. Ariz. 2004) (finding plaintiff's high school records from more than twenty years ago insufficient to establish that he presently suffers from a learning disability).  Keitt also refers to an individualized education program ("IEP") that purportedly shows he is disabled.  (Dkt. No. 177 (Pl.'s

---

[9]    Keitt testified that he did not recall whether he cheated on the 2007 TABE.  (Dkt. No. 154-9 (Keitt Dep. Tr.) at 20-21).

[10]    Keitt does not appear to make the argument, but Defendants have also shown that he does not have a "record" of an impairment that substantially limits one or more of his major life activities or that he was "regarded as having such an impairment" as further described in the statute.  §12102(1)(B), (C).  In particular, Keitt's inmate records do not contain a dyslexia diagnosis, and Defendants did not believe that he was dyslexic.  (Dkt. No. 154-1 (Defs.' SOF) ¶134; Dkt. No. 154-11 (Reynolds Dec.) ¶14).

[11]    Keitt received a copy of the Jannes Report before Defendants moved for summary judgment in this action.  (*See* Dkt. No. 134 at 10).

Supp. SOF) ¶70). Like the Jannes Report, the IEP is not in the record, and even if it were, by Keitt's own admission it does not state that he is dyslexic. (Dkt. No. 168 (Pl.'s SOF) ¶¶20; 28).

Keitt devotes a substantial portion of his summary judgment opposition to arguing that DOCCS should have evaluated him for dyslexia and reading and learning disabilities, and that diagnosing these disabilities requires clinical judgment. (*See id.* ¶¶16; 19; 30; 42; 59). Contrary to Keitt's argument, DOCCS was not obligated to screen him for a disability. *See Keitt v. Annetts*, No. 10-CV-157(TJM/DRH), 2011 WL 4436191, at *9 (N.D.N.Y. July 25, 2011), *report and recommendation adopted in relevant part*, 2011 WL 4443027 (N.D.N.Y. Sept. 22, 2011). Keitt's request for an evaluation further goes to show that he does not presently have any evidence that he is dyslexic or that he suffers from a reading or learning disability. Accordingly, for these reasons, a reasonable juror could not find that Keitt is disabled. His ADA and RA claims may be dismissed on this basis as well.

III.     <u>*Section 1983 Claims*</u>

A.   <u>*Due Process Claim*</u>

Keitt's due process claim requires him to show that Defendants provided him with "no education at all or education that was wholly unsuited to the goals of [his] socialization and rehabilitation." *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1041 (S.D.N.Y. 1995) (citing N.Y. Correction Law §136). Keitt appears to allege here that Defendants denied him an education by refusing to accommodate his alleged disability while he attended school at Elmira. (Dkt. No. 10 (Am. Compl.) ¶¶260-64). This claim is without merit because, as already discussed, Keitt is not disabled. Assuming for the sake of argument that Keitt is in fact disabled, DOCCS attempted to accommodate his

alleged disability so that he could fully participate in its educational programs. When Keitt attended classroom study at Elmira, DOCCS provided him with one-on-one tutoring and a teaching assistant. (Dkt. No. 154-1 (Defs.' SOF) ¶¶103; 110). Keitt was also offered a peer tutor, which he refused. (*Id.* ¶102). Fusco offered Keitt a magnifying sheet, overlays for reading, and enlarged course materials, but Keitt turned down these accommodations as well and requested a laptop computer, which DOCCS declined to give to him. (*Id.* ¶¶80; 112; 117). Keitt then signed out of classroom study and began participating in the cell study program before dropping out of that program as well. (Dkt. No. 154-10 (Lepkowski Dec.) ¶11; Dkt. No. 154-8 (Hollmen Dec.) ¶20). Given the foregoing accommodations and Keitt's decision to drop out of classroom and cell study, no reasonable juror could conclude that he was provided with no education at all or an education that was wholly unsuited to the goals of socialization and rehabilitation. His due process claim should therefore be dismissed.

      B. *Retaliation Claims*

           1. *Fusco*

Keitt's First Amendment retaliation claim requires him to show (1) that his speech or conduct was protected; (2) that Fusco took an adverse action against him; and (3) a causal connection between his protected speech or conduct and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Defendants challenge the second requirement, arguing that Fusco's alleged threat to issue Keitt a misbehavior report for not completing his school work is not an adverse action.

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse

action for a claim of retaliation." *Id.* at 493. A verbal threat generally does not meet this requirement. *See Kemp v. LeClaire*, No. 03-CV-844S, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) ("Even assuming that Defendants insulted and threatened Plaintiff as he alleges, threats made to an inmate, without more, do not rise to the level of a constitutional violation.") (internal quotation marks and citation omitted). While repeatedly threatening an inmate or making a specific threat of bodily harm may constitute an adverse action, *see Tirado v. Shutt*, No. 13CV2848-LTS-AJP, 2015 WL 4476027, at *5 (S.D.N.Y. July 22, 2015), Fusco's alleged threat does not rise to that level. That Fusco never carried out her alleged threat to issue Keitt a misbehavior report also supports a finding of no adverse action. (Dkt. No. 154-1 (Defs.' SOF) ¶122); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010). Accordingly, Keitt's retaliation claim should be dismissed as against Fusco.

### 2. *Fischer*

Keitt alleges that he was retaliated against for requesting accommodations at Elmira and that Fischer knew or should have known of the retaliation. (Dkt. No. 10 (Am. Compl.) ¶195). Fischer seeks dismissal of this claim on the basis that he did not take part in the alleged retaliation.

Personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages under §1983. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). A defendant cannot be held liable simply because he holds a position of authority, *Ramey v. Perez*, No. 1:13 Civ. 00017(CM), 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014) ("Commissioner Fischer's position as commissioner is patently insufficient to establish his personal involvement for the purposes of a section 1983

action."), but he may be found liable if he learned of the alleged misconduct and did nothing to remedy it, *Colon*, 58 F.3d at 873.[12]  Keitt appears to argue that Fischer knew of the alleged retaliation because he denied Keitt's grievance appeals complaining about it.  (Dkt. No. 168 (Pl.'s SOF) ¶67).   Defendants have shown, however, that Fischer neither personally reviewed Keitt's grievance appeals nor signed the decisions deciding the appeals.  (Dkt. No. 154-5 (Fischer Dec.) ¶5); *see Keitt v. Schun*, No. 11-CV-438, 2014 WL 347053, at *8 (W.D.N.Y. Jan. 30, 2014) ("[T]he receipt of a prisoner's letter of grievance by a DOCS Commissioner who delegates to other prison officials the task of responding to such complaints is insufficient to establish the Commissioner's personal involvement.") (quoting *Spavone v. Fischer*, No. 10 Civ. 9427(RJH)(THK), 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012)).   Further, Fischer was unaware that Keitt might be dyslexic or that he was allegedly discriminated against.  (Dkt. No. 154-5 (Fischer Dec.) ¶5).  Keitt has not come forward with any evidence to the contrary. Accordingly, Keitt's retaliation claim should be dismissed as against Fischer.

### 3.  *Bradt*

Keitt also alleges that Bradt knew or should have known of the alleged retaliation at Elmira.  (Dkt. No. 10 (Am. Compl.) ¶¶243-45).  Keitt appears to contend that Bradt's knowledge arises from:  (1) his denial of Keitt's appeal of the May 2010 misbehavior report; and (2) his denial of Keitt's January 1, 2010 grievance appeal (Grievance EL-3660-10) complaining of retaliation at Elmira.  (*Id.* ¶¶220-23; 229; 243-45).  Bradt seeks dismissal of this claim for lack of personal involvement.

---

[12]     Although the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) may have heightened the *Colon* factors for establishing personal involvement of a supervisor, the Court need not reach *Iqbal's* impact on this case because Keitt cannot establish personal involvement even under *Colon*.

Bradt's alleged denial of Keitt's appeal of the misbehavior report does not establish his personal involvement in the retaliation because the evidence shows that Bradt delegated the handling of the appeal to a subordinate. (Dkt. No. 154-3 (Bradt Dec.) ¶25; *id.* at 47); *Schun*, 2014 WL 347053, at *8. Bradt delegated the investigation of Keitt's grievance appeal to his subordinates as well. (Dkt. No. 154-3 (Bradt Dec.) ¶9). Although Bradt signed the decision denying the grievance appeal, a generalized response to a grievance appeal, without more, is insufficient to establish personal involvement. *See Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006). For there to be personal involvement, the response must have been "detailed and specific." *See id.* (internal quotation marks and citation omitted). Bradt's response to Keitt's grievance appeal falls well short of this requirement. The response, which is a modest seven sentences, does not go into any detail regarding the alleged retaliation. (Dkt. No. 154-3 (Bradt Dec.) at 23). It merely summarizes Keitt's grievance and suggests that he request a reasonable accommodation for his alleged disability. A generalized response of this nature is insufficient to establish Bradt's personal involvement. *See Watson v. Wright*, No. 08-cv-960(A)(M), 2013 WL 1791079, at *9 (W.D.N.Y. Mar. 26, 2013), *report and recommendation adopted*, 2013 WL 1789578 (W.D.N.Y. Apr. 26, 2013); *Mateo*, 682 F. Supp. 2d at 430-31. Accordingly, Keitt's retaliation claim should be dismissed as against Bradt.[13]

## **CONCLUSION**

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment (Dkt. No. 154) dismissing Keitt's Amended Complaint be granted.

---

[13]     Given the Court's recommended dismissal of Keitt's §1983 claims, it need not address Defendants' alternative argument that they are protected by qualified immunity.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by the Hon. Lawrence J. Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection***.

**SO ORDERED**.

Dated:      January 3, 2017
            Buffalo, New York

                                    /s/ Michael J. Roemer
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge